## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

|  |  |
|---|---|
| VocalSpace, LLC, | |
| *Plaintiff,* | Case No. 4:09-CV-350 |
| v. | |
| Daniel D. Lorenso, and Larkspark Corporation | |
| *Defendants.* | |

## DARREN DITTRICH AND SELL.COM'S MOTION TO RECONSIDER ORDER DENYING MOTION TO QUASH SUBPOENA

Non-parties Darren Dittrich and Sell.com by and through its attorneys, respectfully request that this Court reconsider its September 9, 2010 Order Denying Motion to Quash Subpoena or, in the alternative, modify the method of obtaining Sell.com source code as per Subpoena.

The grounds in support of this motion are set forth in the accompanying Brief in Support of the Motion to Reconsider Order Denying Motion to Quash Subpoena.

Dated: September 17, 2010

Respectfully submitted,

/s/ Michael F. Pezzulli
Michael F. Pezzulli
Attorney & Counselor
Pezzulli Barnes LLP
17300 Preston Road, Suite 220
Dallas, TX 75252
Tel: (972) 713-1300
Fax: (972) 713-1333

ATTORNEY FOR MOVANTS
Darren Dittrich and Sell.com

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**

VocalSpace, LLC,

*Plaintiff,*

v.

Daniel D. Lorenso, and Larkspark Corporation

*Defendants.*

Case No. 4:09-CV-350

**BRIEF IN SUPPORT OF THE MOTION TO RECONSIDER ORDER DENYING
MOTION TO QUASH SUBPOENA**

**I. Introduction**

Non-parties Darren Dittrich and Sell.com (collectively "Sell.com") respectfully

ask this Court to reconsider its recent Order Denying Motion to Quash Subpoena (filed

September 9, 2010) (doc 89) (the "Order").  At the least, Sell.com asks for an evidentiary

hearing or telephone hearing on these issues so that the parties may more fully discuss

these issues with the Court.

As Darren Dittrich declaration (Tab 1) shows, contrary to VocalSpace's

assertions, its subpoena requires a disclosure of a significant amount of privileged or

otherwise protected information and imposes an undue burden on Sell.com. Thus, the

Court should quash it.  Alternatively, there are less burdensome ways of obtaining the

information requested, and the Court should direct VocalSpace to provide Sell.com with

the relevant portions of its pirated code and Sell.com will search its code for these

segments and report to the Court and VocalSpace.  This methold will protect the interests

of Sell.com and its customers while allowing VocalSpace to search for evidence of

infringement.  As a second but more costly alternative, the Court should direct Sell.com to install a copy of its source code on an independent server in a secure location at Sell.com's facilities and to permit VocalSpace's representatives or programmers to examine the code by computer searches with Dittrich and a Sell.com representative or other programmer on hand to protect Sell.com's and its customers' interests.  In any event, Sell.com respectfully asks the Court to reconsider its September 9, 2010 Order.

## II. Background

### A.      VocalSpace's Subpoena

On June 28, 2010, VocalSpace served its subpoena (Tab 2) on Sell.com, seeking six categories of information.  In response, Sell.com told VocalSpace when Daniel "Dante" Lorenso worked for Sell.com (he worked for Sell.com for about three months in 2006), stated that it had no communications to or from Lorenso, which it maintained in the usual course of its business,[1] and stated that it hadn't offered Lorenso an ownership interest in Sell.com and had no complaints against Lorenso.[2]  Sell.com declined to produce records reflecting Lorenso's salary or its entire source code.[3]

Most importantly, Sell.com objects to this portion of the subpoena:

All source code, including, but not limited to, the source code under version control (SVN, CVS, etc.), version control system files, and backup files for any software developed by Daniel D. Lorenso for you including, but not limited to, website PHP and HTML, code, framework, libraries, configuration files, biller, transcoders, logger, database code, daily report generator, post by email, mailer daemon, autoresponder, and scripts for management, wpush, and build.[4]

---

[1] *See* Fed. R. Civ. P. 34(b)(2)(E)(i).

[2] *See* Subpoena, item nos. 1, 3, 5, and 6, Tab 2.

[3] *See* Subpoena, item nos. 2 & 4, Tab 2.

[4] Subpoena at Exhibit A, Paragraph 2.

VocalSpace's subpoena—apparently looking for "*all source code*"—seeks to force Sell.com to disclose literally a decade of work involving over 25 programmers and hundreds of thousands of programmer hours of labor.[5]  Significantly, the information that VocalSpace seeks to obtain from Sell.com is virtually identical to the information it has already sought to obtain from Lorenso and Larkspace.[6]

## B.      VocalSpace and Sell.com's Businesses

On the one hand, the businesses of Sell.com and VocalSpace are dissimilar. VocalSpace was founded in 2003 for the purpose of "developing and launching dynamic web-based internet marketing and streaming media systems."[7]  In contrast, Sell.com is not engaged in the business of streaming media systems, but rather, runs "an online buying and selling marketplace, much like eBay, but with a newspaper classifieds approach."[8]  This means that a core part of Sell.com's source code is unlike VocalSpace's source code and that there's no reason to suspect that Vocal Space's allegedly pirated code would be found there.

On the other hand, Sell.com's source code does contain proprietary programming routines that many online businesses or businesses with online sales outlets, even dissimilar ones like VocalSpace, would find valuable.[9]  These routines include ones for taking an internet customer's personal and financial information, such as credit-card data,

---

[5] See Declaration of Darren Dittrich at Page 2, Tab 1.

[6] Vocal Space Motion to Compel Source Code From Defendants and Motion for Sanctions, (filed July 15, 2010) (doc 64).

[7] *See* Plaintiff VocalSpace, LLC's Original Complaint, ¶ 6 (filed July 23, 2009) (doc 1).

[8] Declaration of Darren Dittrich, ¶3, Tab 1.

[9] *See* Declaration of Darren Dittrich, ¶¶ 6-7, Tab 1.

for encrypting such information, and for performing routine computer tasks common to many online-business operations.[10]  So not only are the unique core parts of Sell.com's source code proprietary trade secrets, these other portions of, or routines in, Sell.com's code are also highly confidential and are trade secrets.[11]

### C.  Sell.com's Source Code and Dante Lorenso

Sell.com runs an online market place, which is similar to eBay.[12]  It uses its source code to run its website and business.[13]  Sell.com has developed its code base continuously between 2000 and September 2010.[14]  It is over 200,000 lines long, and over 25 programmers have worked on it.[15]  Sell.com employed Lorenso as a contract programmer for about three months in 2006.[16]  Lorenso worked with other programmers on Sell.com's code.[17]  By no means was Lorenso the chief author of the code.[18]

### D.  The Unknown:  What Allegedly Pirated Code from VocalSpace?

VocalSpace states that Lorenso's theft of its source code was "flagrant"[19] and that it must prove its claims against Lorenso and Larkspace by setting out one or more pieces

---

[10] *See* Declaration of Darren Dittrich, ¶¶ 6-7, Tab 1.

[11] *See* Declaration of Darren Dittrich, ¶¶ 6-7, Tab 1.

[12] *See* Declaration of Darren Dittrich, ¶ 3, Tab 1.

[13] *See* Declaration of Darren Dittrich, ¶ 4, Tab 1.

[14] *See* Declaration of Darren Dittrich, ¶ 4, Tab 1.

[15] *See* Declaration of Darren Dittrich, ¶ 4, Tab 1.

[16] *See* Declaration of Darren Dittrich, ¶ 5, Tab 1.

[17] *See* Declaration of Darren Dittrich, ¶ 5, Tab 1.

[18] *See* Declaration of Darren Dittrich, ¶ 5, Tab 1.

[19] *See* VocalSpace's Supplemental Response to Darren Dittrich and Sell.com's Motion to Quash, 1 (filed Sept. 7, 2010) (doc 87).

of its code, which it can prove Lorenso misappropriated, beside a piece of code belonging to Sell.com or someone else.[20]  Thus, VocalSpace admits that it knows what pieces of its code it can show that Lorenso misappropriated.  But VocalSpace has failed or refused to identify this part or parts of its code, and this, in turn, magnifies the potential burden on Sell.com and complicates this Court's analysis as section IV(D)(2), below, discusses.

**E.  Procedural History**

    **1.    General**

On July 23, 2009, VocalSpace filed this lawsuit against Daniel "Dante" Lorenso and Larkspace Corporation, alleging that Lorenso took portions of its copyrighted and trade-secret source code.  VocalSpace sought evidence of allegedly stolen code from Lorenso and Larkspace and filed a motion to compel against them on July 15, 2010. VocalSpace also reportedly sought evidence of code theft from several non-parties, including Sell.com.  Initially, Sell.com tried to work with VocalSpace on a reasonable production of information.  But when VocalSpace insisted on a complete copy of Sell.com's source code or code base—an online business' lifeblood and chief operating asset—Sell.com filed a motion to quash its subpoena on June 23, 2010.

Afterwards, Sell.com again tried to work with VocalSpace on a reasonable production.  But VocalSpace still insisted on an entire copy of Sell.com's source code. On September 7, VocalSpace filed a supplemental response and made three key arguments:  (1) Sell.com's source code is "highly relevant" to VocalSpace's claims against Lorenso and Larkspace; (2) Sell.com's source code is not proprietary, a trade secret, or confidential; and (3) VocalSpace's subpoena—which seeks production of

---

[20] VocalSpace's Supplemental Response to Darren Dittrich and Sell.com's Motion to Quash, 3-4 (filed Sept. 7, 2010) (doc 87).

Sell.com's entire source code—is not unduly burdensome and that "producing source code is a simple task."  Apparently agreeing with these arguments, the Court denied Sell.com's motion to quash on September 9.

### 2.    Sell.com's Reply or this Motion to Reconsider

As it had before filing its motion to quash, Sell.com tried to work with VocalSpace on a reasonable production after filing its motion to quash.[21]  In fact, counsel agreed to permit the principals of both companies to discuss directly whether there was any way to resolve the dispute.[22]  When they could not reach an agreement, Sell.com agreed to allow VocalSpace to file a supplemental response to its motion to quash.[23]  As a condition for its agreement, however, Sell.com insisted on the right to file a reply to VocalSpace's supplemental response.[24]  Sell.com intended for the certificate of conference on the agreed motion (doc 86) to reflect this condition.[25]  Unfortunately, the certificate didn't do so, and this Court denied Sell.com's motion to quash on September 9—before Sell.com filed a reply.  Therefore, Sell.com files this motion to reconsider.

---

[21] *See, e.g.*, Plaintiffs' Response to Darren Dittrich and Sell.com's Motion to Quash Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, 1 (filed Aug. 19, 2010) (doc 80).

[22] Declaration of Michael Pezzulli, ¶7 (emailed exchanged between Michael Pezzulli and Neal Massand, September 1, 2010) Tab 3.

[23] *See* VocalSpace's Notice of Failure to Resolve Differences and Agreed Motion for Leave to File Supplemental Response to Dittrich and Sell.com's Motion to Quash, 1-2 (filed Sept. 3, 2010) (doc 86).

[24] *See* Declaration of Michael Pezzulli, ¶ 4, Tab 3.

[25] *See* Declaration of Michael Pezzulli, ¶ 4, Tab 3.

## III.  Standards

### A.      Reconsideration

Under Rule 54(b), a district court may revise any of its orders before final judgment at any time.[26]  For example, a court might reconsider an order if it became convinced that it was based on a mistaken view of the relevant facts or law.

### B.      Evaluation of VocalSpace's Subpoena

As a general rule, "the factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena."[27]

## IV. The Court should quash the subpoena.

### A.      VocalSpace has little chance of finding pirated code.

As a threshold matter, VocalSpace has little chance of finding evidence of allegedly stolen code in an inspection of Sell.com's source code.  Sell.com started creating it source code in 2000 and has continually modified it ever since; it now is comprised of over 200,000 lines of code.[28]  "During that period approximately 25 'for hire' programmers have worked on the codebase, many of them for the entire 10 years."[29] Sell.com employed Dante Lorenso as a contract programmer for around 3 months in

---

[26] *See* Fed. R. Civ. P. 54(b) ("Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before entry [of final judgment].").

[27] *Heat & Control, Inc. v. Hester Industries, Inc.,* 785 F.2d 1017, 1024 (Fed. Cir. 1986) (citing *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 560, 564 (7th Cir. 1984)).

[28] *See* Declaration of Darren Dittrich, ¶ 4, Tab 1.

[29] *Id.* ¶ 5, Tab 1.

2006.[30] Since then, many other programmers have worked on the same codebase, modifying or rewriting the code that Dante Lorenso may have worked on.[31] This means that there is only a remote chance that the source code created by Dante Lorenso, if any, still exists in its original form for any comparison purposes that might be useful to VocalSpace. This fact compromises VocalSpace's subpoena's potential evidentiary value and undermines the propriety of VocalSpace's demand for a copy of Sell.com's entire source code. It also justifies the Court in limiting the scope and circumstances of any production by Sell.com, or inspection allowed by Sell.com, and providing protections to Sell.com and its customers.

## B.   VocalSpace hasn't shown relevance.

VocalSpace asserts that Sell.com's source code is "highly relevant to the claims and defenses in this case"[32] and that the "non-parties' source code will permit a determination of the appropriate damages."[33] Because VocalSpace is the party seeking discovery from a non-party, VocalSpace has the burden of proof and burden of persuasion on these matters. But VocalSpace provides no evidence to support these assertions, and it doesn't even attempt to explain them. Sell.com isn't VocalSpace, and they don't compete for the same business. Sell.com operates an online marketplace with classified advertisements, similar to eBay.[34] VocalSpace apparently operates online

---

[30] *Id.* ¶ 5, Tab 1.

[31] *Id.* ¶ 5, Tab 1.

[32] VocalSpace's Supplemental Response to Darren Dittrich and Sell.com's Motion to Quash, 4 (filed Sept. 7, 2010) (doc 87).

[33] *Id.*

[34] *See* Declaration of Darren Dittrich, ¶ 3, Tab 1.

products, like ones that help senior citizens select the most beneficial Medicare prescription-drug programs and audio and video blogging products.[35]

In addition, VocalSpace's argument really boils down to its contention that it must have evidence that Lorenso misappropriated its code in order to pursue its copyright-infringement and trade-secret-theft claims against him and Larkspace. But even if this is accurate, it doesn't justify requiring Sell.com to turn its entire source code over to VocalSpace. Sell.com—with approximately 25 programmers—developed its source code over ten years, and Lorenso worked at Sell.com only for about three months in 2006.

In short, the Court should quash VocalSpace's subpoena on this ground alone. Alternatively, it should modify the subpoena as section V, below, discusses.

**C.   Requiring Sell.com to produce its source code would require it to disclose trade secrets and information, which would give access to customers' financial or credit-card information.**

**1.    Sell.com's source code is a trade secret.**

Under Rule 45, a court "must quash or modify a subpoena [to a non-party] that… requires disclosure of privileged or other protected matter."[36] And Rule 26(c) allows a court for good cause to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; ... (G) requiring that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way."

---

[35] *See* Plaintiff VocalSpace, LLC's Original Complaint, ¶ 6 (filed July 23, 2009) (doc 1).

[36] FED. R. CIV. P. 45(c)(3)(A)(iii).

VocalSpace argues that Sell.com's source code requested is not protected information and is not a trade secret.[37]  But the Court should reject this argument.

First, VocalSpace offers no argument or authority that Sell.com's code base is not confidential and is not a trade secret.  And VocalSpace's underlying lawsuit against its former employee for alleged theft of parts of its own computer program show that VocalSpace acknowledges that a company's computer code is confidential and is a trade secret.[38]

Second, Sell.com's code base is a trade secret under Texas law.[39]  Sell.com treats it as a trade secret; the code isn't available outside the business; only four people have access to the entire code; Sell.com takes expensive measures to protect it; and it is the company's most valuable operating asset.[40]  Sell.com handles over 1 million transactions per year, and it has around 400,000 active listings on Sell.com's website at any time.[41]

---

[37] *See* VocalSpace's Supplemental Response to Darren Dittrich and Sell.com's Motion to Quash, 5 (filed Sept. 7, 2010) (doc 87).

[38] *See, e.g.*, Plaintiff VocalSpace, LLC's Original Complaint, 1 (filed July 23, 2009) (doc 1) ("In that capacity, VocalSpace expended more than a million dollars developing a software code base to support these proprietary products (the 'Code'), which is the subject of an Application for Copyright Registration."); *id.* ¶ 14 ("Generally speaking, a computer program's 'source code' is the underlying collection of files and algorithms needed to convert computer processes from human-readable to computer-executible form.  Source code is complex and expensive to create.  The development of source code typically requires a massive monetary investment and the expertise and knowledge of someone with extensive computer programming experience.  For this and other reasons, computer programs and their underlying source code are recognized as:  (i) protectable (i.e., copyrightable) expression, (ii) trade secrets, and/or (iii) legally protected assets of a company that are not available for distribution in the public domain."); *id.* ¶ 79 ("VocalSpace's confidential, proprietary, and trade secret information includes, without limitation . . . the Code (and its various pre-, and post-Product versions) and information relating to the Code, information on VocalSpace's servers, . . . .").

[39] *See Triple Tee Golf, Inc. v. Nike Inc.*, 485 F.3d 253, 267 (5th Cir. 2007); *In re Bass*, 113 S.W.3d 735, 739 (Tex. 2003).

[40] *See* Declaration of Darren Dittrich, ¶ 6, Tab 1.

[41] *See* Declaration of Darren Dittrich, ¶ 3, Tab 1.

Sell.com uses its code base or source code to handle these transactions.[42]  Also, the code base contains proprietary program segments, which accomplish specific business tasks, such as detecting potentially fraudulent transactions, identifying and tracking customers, and screening prospective advertisements.[43]  Other businesses, who want to accomplish similar tasks, would find these program segments valuable.   In addition, Sell.com maintains sensitive and confidential end-user data that includes birth dates, shipping addresses, and credit-card information.[44]  Sell.com's code base contains routines, which allow access to this information, including routines that show how Sell.com obtains credit-card information from customers (*e.g.*, how they enter it while buying an advertisement) and how Sell.com encrypts such data.   These segments are also highly confidential and are trade secrets.   In short, the only evidence on the issue is that Sell.com's code base is confidential and is a trade secret.

Because Sell.com is a non-party here and its source code is confidential and is a trade secret, the Court should quash VocalSpace's subpoena under Rule 45.[45] Alternatively, the Court should modify the subpoena as section V below, discusses under Rule 26.

---

[42] *See* Declaration of Darren Dittrich, ¶ 4, Tab 1.

[43] *See* Declaration of Darren Dittrich, ¶¶ 4, 6, Tab 1.

[44] *Id.* Declaration of Darren Dittrich, ¶ 6, Tab 1.

[45] *In re Chronotek Sys.*, Misc. No. 07-0279, No. SACV 06-374 ODW, 2007 WL 2177013, *1-3 (S.D. Tex. July 27, 2007) (denying the requesting party's request for the entire copy of the non-party's source code and ordering only a limited production).

**2.      Sell.com's source code contains routines, which allow access to sensitive customer data.**

Again, Sell.com has sensitive and confidential end-user data that includes birth dates, shipping addresses, and credit-card information.[46]  Sell.com's source code contains routines, which allow access to this information, including routines that show how Sell.com obtains credit-card information from customers (*e.g.*, how they enter it while buying an advertisement) and how Sell.com encrypts such data.  A person with access to this information could use it to write a program to infiltrate Sell.com's website and obtain clients' credit-card or other payment information.  It would be virtually impossible to determine whether someone used such a program to obtain Sell.com's customers' information until a customer complained to Sell.com of unauthorized credit-card charges.[47]  Sell.com's business depends on customers having confidence that the company will protect their personal and financial information.  Its business would evaporate if its customers believed that Sell.com allowed an outside company like VocalSpace to have access to its source code, which in turn, may have compromised the safety of their information.[48]  This also justifies quashing or modifying VocalSpace's subpoena.

**3.      VocalSpace hasn't shown that its protective order is sufficient.**

VocalSpace argues that the Agreed Amended Protective Order (doc 75) filed on August 10, 2010 renders Darren Dittrich and Sell.com's concerns moot.[49]  The Protective

---

[46] *See* Declaration of Darren Dittrich, ¶¶ 6-7, Tab 1.

[47] *See* Declaration of Darren Dittrich, ¶ 7, Tab 1.

[48] *See* Declaration of Darren Dittrich, ¶ 7, Tab 1.

[49] *See* VocalSpace's Supplemental Response to Darren Dittrich and Sell.com's Motion to Quash, 5-6 (filed Sept. 7, 2010) (doc 87); Agreed Amended Protective Order (filed Aug. 10, 2010) (doc 75).

MOTION TO RECONSIDER ORDER                                              Page **13**

Order allows a producing party to label any discovery response as "confidential" and "highly confidential," such a label triggers certain protections.[50] But VocalSpace hasn't shown that the Order will protect Sell.com and its customers.

First, Sell.com and Darren Dittrich aren't parties to the Order.  The Order protects "producing *parties*,"[51] and doesn't purport to protect non-parties.  Although section 3.1.8 addresses paper discovery obtained from non-parties and section 3.1.9 addresses depositions obtained from non-parties, VocalSpace seeks access to Sell.com's computer source code, and these provisions wouldn't apply.  Even if section 4.3—which purports to apply to "copies" of a "confidential response" on an electronic storage device—applied to the production of a copy of Sell.com's source code, nothing shows that the Protective Order would sufficiently protect Sell.com if it had to produce an entire copy of its source code.  Again, Sell.com is solely an online business and it uses its source code to conduct all of its business.[52]  The code is its chief operating asset.[53]  Putting a copy of the source code on a disk or other storage device and turning it over to another company like VocalSpace would be to *risk Sell.com's entire business*.[54]  If anything went wrong, if anyone made a copy, if anyone posted the code to the internet, then this would essentially end Sell.com.  The Protective Order just doesn't protect against this risk.

---

[50] *Id.*

[51] *See* Order, ¶ 1.4 (doc 75).

[52] *See* Declaration of Darren Dittrich, ¶ 2, Tab 1.

[53] *See* Declaration of Darren Dittrich, ¶ 2, Tab 1.

[54] *See* Declaration of Darren Dittrich, ¶ 4, Tab 1.

Second, even if the Order applied to a non-party like Sell.com, the Order doesn't address the fact that access to Sell.com's code base would allow an outsider access to routines, which relate to Sell.com's customers' credit-card and purchasing information. Again, there would be virtually no way for Sell.com to detect improper access to this information until a customer complained of unauthorized computer charges; that is, when it's too late.

### D.   Requiring Sell.com to produce its source code would subject it to an undue burden.

A court should quash or modify a subpoena that would subject a non-party to an undue burden.[55]   Thus, VocalSpace asserts, without authority or evidence, that it "is without merit" for Sell.com to object that the production of the source code is unduly burdensome.[56] VocalSpace believes that "producing source code is a simple task."[57] But the evidence and law show that VocalSpace's subpoena would impose an undue burden on Sell.com.

### 1.   A facially overbroad subpoena creates an undue burden, and VocalSpace's subpoena appears to request all of Sell.com's source code.

A facially overbroad subpoena is unduly burdensome,[58] especially one aimed at a non-party.[59]   Here, VocalSpace's subpoena apparently demands "all source code" from

---

[55] *See* Fed. R. Civ. P. 45(c)(3)(A)(iv) (stating that a court "must quash or modify a subpoena that" "subjects a person to undue burden").

[56] *See* VocalSpace's Supplemental Response to Darren Dittrich and Sell.com's Motion to Quash, 6 (filed Sept. 7, 2010) (doc 87).

[57] *Id.*

[58] *See Williams v. City of Dallas*, 178 F.R.D. 103, 109 (N.D. Tex. 1998) (citations omitted).

Sell.com.[60]  If this is an accurate reading, VocalSpace's request could not be broader. Again, production of its entire source code would risk Sell.com's business.[61]  Given that Sell.com has continuously developed and revised its source code between 2000 and September 2010 and that Lorenso worked on the code only for three months in 2006,[62] a request for Sell.com's entire code is overbroad and alone justifies quashing the subpoena.

### 2.     Or VocalSpace's subpoena is ambiguous ("developed by Lorenso").

Sell.com could be misreading VocalSpace's subpoena.  Request no. 2 reads,

> *All source code*, including, but not limited to, the source code under version control (SVN, CVS, etc.), version control system files, and backup files for any software *developed by Daniel D. Lorenso* for you including, but not limited to, website PHP and HTML, code, framework, libraries, configuration files, biller, transcoders, logger, database code, daily report generator, post by email, mailer daemon, autoresponder, and scripts for management, wpush, and build.[63]

If the correct reading is not "all source code" but "all source code developed by Daniel D. Lorenso"—such that VocalSpace seeks only all source code developed by Lorenso—then VocalSpace's subpoena may merely be ambiguous and not overbroad.

If this latter reading is correct, then the problem is identifying code, which Lorenso developed.   As Dittrich explains, Sell.com and 25 programmers have continuously developed and revised Sell.com's source code between 2000 and the present

---

[59] *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003) ("One factor to be considered is assessing the burden of complying with a subpoena is whether the moving party is a non-party to the litigation.  *Truswal Systems Corp. [v. Hydro-Air Engineering, Inc.,]* 813 F.2d [1207,] 1210 [(Fed.Cir.1987)].").

[60] *See* Subpoena, Tab 2.

[61] *See* Declaration of Darren Dittrich, ¶ 4, Tab 1.

[62] *See* Declaration of Darren Dittrich, ¶¶ 4-5, Tab 1.

[63] Subpoena, ¶ 2, Tab 2 (emphases added).

and Lorenso worked on Sell.com's code only for three months in 2006.[64]  This means that there is little chance that any code developed by Lorenso is still intact and unmodified in Sell.com's code.[65]  Also, it would be expensive to identify just the code, which Lorenso programmed.[66]  Given that VocalSpace states that Lorenso's misappropriation of its code was "flagrant"[67] and that VocalSpace nonetheless waited until late July 2010, when Lorenso stopped working for Sell.com *in 2006*, to search for evidence of stolen code, VocalSpace should bear the risk that Sell.com can no longer identify or pull out the parts of its source code, which Lorenso programmed, and it should quash VocalSpace's subpoena on this ground alone.

Moreover—as section II(D)(3) suggests—VocalSpace's failure or refusal to identify what portion or portions of its computer code Lorenso allegedly misappropriated magnifies the burden on Sell.com and complicates this Court's analysis.  If the second reading of the subpoena is correct, then the Court should require VocalSpace to provide Sell.com with a copy of the parts of its code, which Lorenso misappropriated, and Sell.com will compare the parts to its own code and report back to the Court and VocalSpace on what it finds, if anything.

### 3.       In any event, VocalSpace's subpoena is unduly burdensome.

"Among the factors that the court may consider in determining whether there is an undue burden are 'relevance, the need of the party for the documents, the breadth of the

---

[64] *See* Declaration of Darren Dittrich, ¶¶ 4-5, Tab 1.

[65] *See* Declaration of Darren Dittrich, ¶ 5, Tab 1.

[66] *See* Declaration of Darren Dittrich, ¶ 5, Tab 1.

[67] *See* VocalSpace's Supplemental Response to Darren Dittrich and Sell.com's Motion to Quash, 1 (filed Sept. 7, 2010) (doc 87).

document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."[68]  A court should "balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice or burden to the other party."[69] And a court should weigh the benefit and burden in complying with subpoena.[70]

First, VocalSpace hasn't shown relevance.  Again, Sell.com's and VocalSpace's businesses are dissimilar, and there is no reason to believe that the core of Sell.com's base code would contain any elements stolen from VocalSpace.  Even if VocalSpace believes that Lorenso may have incorporated parts of VocalSpace's code into Sell.com's computer routines, which have broader appeal (*e.g.*, code on how to take customer information, how to take customer credit-card information, or how to encrypt information), VocalSpace has failed or refused to identify such program routines, which it contends Lorenso misappropriated.  As an independent point on relevance, it's undisputed that Sell.com has continually modified its source code for the last 10 years and that Lorenso only worked on it for about three months four years ago.  So not only is there little chance that any of his work remains in unmodified form in Sell.com's source code, but VocalSpace can't show that it has a meaningful chance of discovering any relevant information in an examination of Sell.com's code.

Second, VocalSpace has asserted that it needs discovery from Sell.com, but it has offered no evidence of this.  In fact, VocalSpace has already acknowledged that

---

[68] *Hussey v. State Farm Lloyds Ins. Co.*, 216 F.R.D. 591, 595 (E.D. Tex. 2003) (citations omitted).

[69] *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D.Tex.2003) (citing *Truswal Systems Corp. v. Hydro-Air Engineering, Inc.,* 813 F.2d 1207, 1210 (Fed.Cir.1987)).

[70] *Northwestern Memorial Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004).

Lorenso's theft of its code was "flagrant" and, thus, admitted that it needs no discovery from Sell.com on this point.  Moreover, VocalSpace's motion to compel against Lorenso and Larkspace shows that should have already obtained relevant discovery directly from the defendants.  Lastly, VocalSpace has reportedly obtained discovery from other non-parties besides Sell.com, although Sell.com does not know about the nature or extent of such discovery, if any.

Third, VocalSpace's subpoena either asks for (1) all of Sell.com's source code or (2) all of its source code developed by Lorenso.  Again, the first is overly broad, and the second is ambiguous or fails to describe what it seeks with particularity (because it would be difficult and expensive to identify Lorenso's work four years later).  Thus, this factor also weighs for quashing VocalSpace's subpoena or modifying it as section V, below, discusses.

Fourth, VocalSpace's subpoena effectively covers four years.  Lorenso worked for Sell.com for about three months in 2006 and Sell.com has continued to modify its code until the present in mid-September 2010.  This also shows the burdensomeness of Sell.com's subpoena.

Fifth, VocalSpace's subpoena is burdensome in that it either requires Sell.com to produce an entire copy of its code base or to somehow scour its code to identify segments, which Lorenso developed.  Again, there's little chance that any of Lorenso's work is in the code in unmodified form.  In sum, these factors show that VocalSpace's subpoena is unduly burdensome.

## V.  Or the Court should modify the subpoena.

If the Court doesn't quash VocalSpace's subpoena, then it should modify it in one of two ways.

**A.      The Court should require VocalSpace to give Sell.com the allegedly stolen parts of its code, and Sell.com will examine its code and report.**

As the first and better alternative, the Court should direct VocalSpace to give Sell.com the parts of its source code, which it contends that Lorenso misappropriated. Sell.com will then search and examine its code for these segments and will report back to the Court and VocalSpace.[71]

First, this procedure will protect VocalSpace's rights, if any, to discovery against Sell.com for evidence to use against Lorenso and Larkspace.

Second, VocalSpace has no valid objection to this procedure, because it acknowledges that Lorenso's theft was "flagrant"—which means that it's easy for VocalSpace to identify what he took—and that it ultimately must prove its claim against Lorenso and Larkspace by setting its code portions "side-by-side" with portions from Sell.com's code.

Third, this procedure would be less risky, costly, and burdensome to Sell.com. This procedure would not involve Sell.com releasing a downloaded copy of its chief operating asset to VocalSpace and, thus, risking the company's future.  It would likewise protect Sell.com's trade secrets and programming codes or routines that would permit an outsider to gain access to Sell.com's customers' information.  It would also save Sell.com the time and cost of putting its source code onto a separate server and allowing VocalSpace's representatives and programmers access to search and examine it.  It would

---

[71] Declaration of Darren Dittrich, ¶ 10, Tab 1.

also save Sell.com the costs of Sell.com's corresponding representatives and programmers to police VocalSpace.

Fourth, this procedure would be consistent with VocalSpace's obligation to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[72]

## B.  Alternatively, the Court should permit VocalSpace to examine Sell.com's source code only at Sell.com's facility and under Sell.com's watch.

As a less-attractive and more-expensive alternative, the Court should order Sell.com to install a copy of its source code on an independent server at its facility and then permit VocalSpace's representatives or programmers to conduct a reasonable search or examination over a reasonable time, such as one or two working days, for evidence of allegedly misappropriated code.[73]  The Court should also permit Sell.com to have representatives and programmers present to police VocalSpace and to protect its and its customers' interests.

To emphasize, this alternative is less attractive and more expensive.  Sell.com's code base is a proprietary database, and it is the principal asset of the company.[74] Examination of the entire Sell.com codebase would be highly disruptive.[75] It will require at least 8 hours of preparatory time to setup an offline server with the latest version of Sell.com's codebase, and the utilities necessary to examine the codebase.[76] Moreover, it

---

[72] Fed. R. Civ. P. 45(c)(1).

[73] *See* Declaration of Darren Dittrich, ¶ 11, Tab 1.

[74] *See* Declaration of Darren Dittrich, ¶¶ 4, 6, Tab 1.

[75] *Id.*, at ¶ 9, Tab 1.

[76] *Id.* at ¶ 10, Tab 1.

will take at least one Sell.com programmer and Darren Dittrich to be present while source code is examined.[77]

## VI. Conclusion

Because they believe that the Court has the inaccurate impression that Sell.com's source code is not a trade secret and doesn't involve confidential consumer information, such as credit-card data, and that production of the source code would be simple, risk-free, and inexpensive, non-parties Darren Dittrich and Sell.com ask the Court to consider Dittrich's declaration (Tab 2) and its additional explanation of the issues here and either quash or modify VocalSpace's subpoena.  Even better, Sell.com asks the Court to hold an evidentiary hearing or telephone hearing on these issues.  If it doesn't quash the subpoena, then the Court should direct VocalSpace to provide Sell.com with the relevant portions of its pirated code and Sell.com will search its code for these segments and report to the Court and VocalSpace.  As a second but more costly alternative, the Court should direct Sell.com to install a copy of its source code on an independent server in a secure location at Sell.com's facilities and to permit VocalSpace's representatives or programmers to examine the code by computer searches with Dittrich and a Sell.com representative or other programmer on hand to protect Sell.com's and its customers' interests.  In any event, Sell.com respectfully asks the Court to reconsider its September 9, 2010 Order.

---

[77] Declaration of Darren Dittrich, ¶ 10, Tab 1.

Dated: September 17, 2010

Respectfully submitted,

/s/ Michael F. Pezzulli
Michael F. Pezzulli
Attorney & Counselor
Pezzulli Barnes LLP
17300 Preston Road, Suite 220
Dallas, TX 75252
Tel: (972) 713-1300
Fax: (972) 713-1333

ATTORNEY FOR MOVANT
Darren Dittrich and Sell.com

## CERTIFICATE OF CONFERENCE

Earlier this week, Michael F. Pezzulli personally conferred with Neil Massand, Counsel for VocalSpace.   VocalSpace does not oppose the filing of this Motion but opposes the relief requested.

/s/ Michael F. Pezzulli
Michael F. Pezzulli

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 17, 2010, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.   The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

    /s/ Michael F. Pezzulli
Michael F. Pezzulli