IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION

| | | |
|---|---|---|
| **VOCALSPACE, LLC,** § | | |
| § | | |
| **Plaintiff,** § | | |
| § | | |
| vs. § | Civil Action No: 4-09 CV 00350 | |
| § | | |
| **DANIEL D. LORENSO and** § | | |
| **LARKSPARK CORPORATION,** § | | |
| § | | |
| **Defendants.** § | | |

**VOCALSPACE'S MOTION FOR SANCTIONS
FOR DEFENDANTS' SPOLIATION OF EVIDENCE**

COMES NOW Plaintiff VocalSpace and files this Motion for Sanctions Due to Defendants' Spoliation of Evidence and, in support thereof, respectfully shows the following:

**I.    INTRODUCTION**

Sanctions—including "death penalty" sanctions—are warranted in this matter because Defendants, by their own admission, have destroyed essential, highly relevant evidence that they were obligated to preserve. Defendant Daniel Lorenso, testifying on behalf of himself and as a corporate representative of Defendant LarkSpark, admitted that he destroyed critical data on LarkSpark servers that could prove (and are at least highly relevant to) VocalSpace's claims of copyright infringement, misappropriation of trade secrets, computer fraud and abuse, breach of fiduciary duty, fraud, and unfair competition. This deletion occurred after Defendants were well aware of their duty to preserve relevant information. In fact, Defendants have admitted that this destruction occurred after the parties entered their discovery/case management plan, after Plaintiff had transmitted a specific request in writing for that source code, after Plaintiff sought the destroyed information in a motion to compel, and after Defendants were put on explicit notice of their duty to preserve the information. By destroying this evidence, Defendants have ensured that

what may have been the most damning evidence against them is out of VocalSpace's reach, as it has been irretrievably destroyed. Death penalty sanctions should, therefore, be awarded against Defendants.

## II. RELEVANT FACTS

Plaintiff filed its complaint on July 23, 2009. (Doc. No. 1). On October 7, 2009, the parties entered their Joint Discovery/Case Management Plan pursuant to the Court's Order. (Doc. No. 18). The Plan states, in part, as follows:

> (4) The steps already taken or that will be taken for preserving discoverable information, including ESI.
>
> Plaintiff has placed a litigation hold on its electronically stored information and is preserving any evidence and all electronic data that may be pertinent to this matter. Defendants have suspended their ordinary and customary document retention practices, and ***will preserve computer hard drives that might contain relevant evidence.***

*Id.*, at p.8.

In the following months, Plaintiff served several discovery requests on Defendants. *See, e.g.,* Plaintiff's Request for Production dated May 4, 2010, attached hereto as Exhibit 1. Plaintiffs, sought, among other things, Defendants' source code, the version control system files (Subversion or SVN), backup and timestamp history. Plaintiff, in its May 4, 2010 Request for Production specifically requested:

> 57. All source code, version control system files (e.g., version control system files (Subversion or SVN), CVS, git, etc.), and backup files for the PubClip website including but not limited to the website PHP and HTML code, framework, libraries, configuration files, biller, transcoders, logger, database code, daily report generator, post by email, mailer daemon, autoresponder, and scripts for management, wpush, and build.

Exhibit 1 at 57.

Furthermore, on March 18, 2009, Plaintiff's counsel sent Defendants a document retention letter specifically informing Defendants of their duty to preserve evidence, including evidence such as the exact LarkSpark servers destroyed by Defendants. The letter states:

> "[P]lease be advised that we expect Mr. Lorenso and LarkSpark to continue to honor their obligations to preserve any and all materials that relate to this dispute. We intend to refile the

present lawsuit and want to insure that evidence is maintained for discovery. Please note that this obligation to preserve includes any and all materials, of whatever form, including, but not limited to, files, emails, communications, notes, drafts, documents and recordings, and other electronically stored materials (including materials stored in hard-drives and/or shared network servers), concerning or relating to this lawsuit and the events described in VS's current Petition including, without limitation, any and all materials relating to the creation of LarkSpark or PubClip, any of the products offered or in development by LarkSpark, or source code created by Mr. Lorenso, as well as to any other matter relevant to this dispute.

Please advise Mr. Lorenso ***not to delete, discard, destroy*** or alter any records of any nature whatsoever, including email and other electronically stored material, that may be relevant to the events described in the Petition. This preservation instruction encompasses any and all materials that Mr. Lorenso may have transferred to archives or to an assistant. If Mr. Lorenso has any materials related to the subject matter of this lawsuit outside of his work area – at home, in other office, *on a laptop*, palm pilot, or other storage medium, on a Blackberry or other communication device or anywhere else – Mr. Lorenso must preserve those materials, in addition to the materials outlined above. Mr. Lorenso should also take steps to freeze any policy maintained by LarkSpark or Mr. Lorenso that provides for the automatic destruction of materials upon the occurrence of a triggering event or the passage of time.

March 18, 2009, Letter from Brian A. Colao to Michael Collins, attached hereto as <u>Exhibit 2</u>.

Thereafter, on July 16, 2010, Plaintiff filed a motion to compel the production of source code sought in its May 4, 2010 Request for Production No. 57 described above. (Doc. No. 64). Further, on August 20, 2010, in its Reply to Defendants' Response to the Motion to Compel, Plaintiff again reiterated to Defendants their obligation and duty to preserve the destroyed evidence. (Doc. No. 82) (referring to and attaching as an exhibit Plaintiff's March 18, 2009 document retention letter).

Despite these admonitions and their own agreement not to do so, Defendants have destroyed relevant and critical evidence, as late as August of this year. By Defendants' own admission, Defendants have blatantly not complied with this Court's order and their duty to preserve evidence relevant to this case:

Q: Okay. Does LarkSpark have all of the corporate records that have been generated from its existence to the present time?

A: …--the servers which I sold. They don't exist anymore.

Q: Ok.

> A: If you consider everything that was on them to be a corporate record, then the answer would be no, ***I have not preserved it all***.

Deposition of Daniel Lorenso, October 20, 2010 (Lorenso Depo.) at 65:24-25; 66:1-8, excerpts attached as Exhibit 3. Specifically, Defendants unequivocally admitted as follows:

> Q: Okay. Are there are any other locations that I missed where there could be some LarkSpark –
>
> A. Well –
>
> Q: --records located?
>
> A: -- the – the servers which LarkSpark used to control we're no longer in possession of. And ***all data has been destroyed on those devices***.

*Id.* at 68:16-22. Moreover, Defendants have clearly admitted that this destruction occurred in recent months, but after the parties entered their discovery/case management plan, after Plaintiff had transmitted a specific request in writing for that source code, after Plaintiff sought the destroyed information in a motion to compel, and after Defendants were put on repeated notice of their duty to preserve the information.

> Q: And you ran DBAN on each of these seven servers to wipe them clean sometime in the June or July of 2010 time frame?
>
> A: Maybe August.
>
> Q: Okay. So just so we're clear, sometime in the June, July, August 2010 time frame, you – you ran the DBAN program on each of these seven servers to wipe them clean?
>
> A: Yes.
>
> ---
>
> Q: Okay. Well, I guess what I'm asking for, was – was any information on those seven servers lost?
>
> A: I'm sure there was data lost.

*Id.* at 70:18-25; 71:1; 71:9-12. In other words, the deletion occurred well after Defendants were explicitly made aware that they had an obligation ***not*** to delete relevant information. Defendants further admitted

**VOCALSPACE'S MOTION FOR SANCTIONS** **PAGE 4**
**FOR DEFENDANTS' SPOLIATION OF EVIDENCE**

DALLAS\106169.1
ID\MRSAI - 106446/0003

that the types of data permanently destroyed were exactly the type sought by Plaintiff in its Request for Production and Motion to Compel (i.e. source code, timestamp and backup information):

> Q: There – so it's fair to say that there was some data that was contained on those seven servers that is now gone forever?
>
> A: Yes.
>
> Q: Okay. What type of data?
>
> A: Log files. You know, any events that occurred on the machine between, you know, the times that it was in operation.

*Id.* at 71:15-22; *see also id.* at 76:23-24 (A: "There are log files that are gone forever"). Not only did Defendants destroy the data, they did so in a manner which ensured that the data was lost forever. Defendants admitted that they did this through a "wipe and delete" software called DBAN, which wiped clean and permanently deleted all data from seven LarkSpark servers. According to Defendant Lorenso, DBAN is so destructive that it meets the United States federal government standards for permanent deletion:

> Q: Okay. Now what happened to the information stored on the servers? Is that something that you would wipe clean before you sold them?
>
> A: Before I sell a computer, I run a software on it called DBAN. It's freely downloadable from the internet. And the purpose is to perform a series of steps on the machine to wipe it clean according to the Department of Justice standards.

*Id.* at 69:24-25; 70:1-6; *see also* **Exhibit 4** (Declaration of John Otken (Otken Dec.) at ¶ 5) (DBAN is a program known for its function to permanently delete data, including time stamps and backup history, from computers); *see also* www.dban.org ("DBAN will automatically and completely delete the contents of any hard disk that it can detect, which makes it an appropriate utility for bulk or emergency data destruction.").

As if Defendants' flagrant destruction of what could have been the most damning evidence in favor of VocalSpace was not enough, when asked for an explanation as to why Defendants did not preserve the

information through a mechanism, such as imaging, Defendants were left clammed up and even admitted that preservation of the evidence would have been possible:

> Q: All right. And you made no attempt to preserve any – other than the stuff that was transferred – what you've just told me was actually transferred to the new machines, you made no attempt in July or August of 2010 to preserve any information on those seven servers?
>
> A: …I can't say yes, I would have made any attempts [to preserve information on the seven servers].

*Id.* at 75:17-25. He also stated:

> Q: So it's technologically possible to image everything that's on those servers the last day they're in existence?
>
> A: It may be possible. There may be somebody who is capable of doing that, yes.

*Id.* at 76:12-16. Defendants also admitted that, even on the day of the deposition, Defendants were not following their obligation to preserve the evidence and that counsel for Plaintiff was not given the opportunity to preserve the destroyed evidence:

> Q: Okay. All right. And just to – just to make clear at least with respect to those seven servers, the log files are now likely gone forever?
>
> A: Yes.
>
> A: However, that would be the case regardless.
>
> Q: Why would – what – what – what do you mean by "that would be the case regardless?"
> A: The servers that I use, the Linux servers automatically purge logs after perhaps a month of usage, anyway. They keep a log – maybe four logs at most for most services, one for each week…

---

> Q: Okay. I guess my question is just after March 18th of 2009, you allowed these Linux servers to continue to automatically purge logs at whatever interval they were doing it at?
>
> A: Yeah. I made no changes to the servers.

*Id.* at 74:25-75:4.

**VOCALSPACE'S MOTION FOR SANCTIONS**                                                     **PAGE 6**
**FOR DEFENDANTS' SPOLIATION OF EVIDENCE**

DALLAS\106169.1
ID\MRSAI - 106446/0003

> Q: Are you aware of any specific communication between your attorney and us, meaning my law firm, where we were given the opportunity to preserve any information on those seven servers before they were wiped clean?
>
> A: I'm not aware of any specific –
>
> Q: Alright.
>
> A: --conversations.
>
> Q: Are you, as we sit here today, are you taking any steps to preserve any information on the lease servers at The Planet or are they continued – continuing to be purged on some sort of periodic basis?
>
> A: Yeah. They still continue to operate as the other ones had.
>
> Q: So that would mean, if I understood you correctly, the servers that you have at The Planet right now are still periodically purging information, correct?
>
> A: I believe they probably are.

*Id.* at 78:8-25.

The deletion of the information is especially egregious in light of the fact that imaging each computer would only cost approximately $28.00 and is a simple and easy process. *See* Otken Dec. at ¶ 8. Further, analysis of an imaged copy of a hard drive could reveal files that had been deleted (purposely or otherwise) but not otherwise erased completely from the hard drive. *Id.* Therefore, even though Defendants could have easily created a ghost copy of the data, Defendants chose not to do so and intentionally used the DBAN program to ensure that VocalSpace could never find what was, potentially, the best evidence to prove its case.

### III.     ARGUMENT AND AUTHORITIES

Defendants should be sanctioned for flagrantly spoliating critical evidence that they were obligated to preserve. The evidence of destruction in this case is direct, substantial, and incontrovertible. Defendant Lorenso has, by his own admission, destroyed and permanently deleted relevant data. Lorenso Depo. at 69:21-23, 70:22-25-71:1, 71:15-22. With respect to Plaintiff's copyright infringement claims, Defendants

knew that the source code contained on the destroyed LarkSpark servers could have provided the most damning evidence of infringement in this case. With respect to VocalSpace's trade secret claim and computer fraud and abuse claims, this evidence was important to show that Defendants removed proprietary code from VocalSpace's servers and placed it on their own. In fact, Defendants make the outlandish claim that all of their source code was independently derived. The destroyed evidence would conclusively disprove that claim. Although the full extent of Defendants' misconduct is impossible to determine, Plaintiff has been severely prejudiced by this destruction of evidence. Plaintiff is simply unable to obtain the original infringing source code and other deleted information from any place other than Defendants' servers.

### A. DEFENDANTS HAVE DESTROYED WHAT IS LIKELY THE MOST UNFAVORABLE EVIDENCE AGAINST THEM.

#### (1) The Destroyed Evidence Was Likely The Best Evidence Of Copyright Infringement.

The evidence Defendants destroyed contained, likely, the best evidence to establish Plaintiff's copyright infringement claims. This evidence would have provided source code as it existed closest to when it was misappropriated. *See* Otken Dec. at ¶ 11. The code would have shown Defendants' infringement was even more prevalent prior to Lorenso making changes to the code. *Id.* Furthermore, through timestamps and backups, the deleted information would have revealed how and when the code was changed (in the instances where it was changed). *Id.* The information was, likely, the best information to establish Plaintiff's copyright infringement claims, but Defendants' flagrant disregard for their preservation obligations, Plaintiff has been deprived of the opportunity to discover the information.

#### (2) The Destroyed Evidence Was Likely The Best Evidence Of Theft Of Trade Secrets And Computer Fraud And Abuse.

Without access to the information on the LarkSpark servers, which was permanently deleted by Defendants, Plaintiff has been deprived of, likely, the best evidence of theft of trade secrets and computer

fraud and abuse. To prove misappropriation of trade secrets under Texas law, a plaintiff must show that defendants have incorporated trade secrets into their own competitive products. *M-I LLC v. Stelly*, --- F.Supp.2d ----, No. 4:09-cv-1552, 2010 WL 3257972 (S.D. Tex. Aug. 17, 2010). Specifically, the plaintiff must show (1) the existence of a trade secret, (2) a breach of a confidential relationship or improper discovery of the trade secret, and (3) use of the trade secret without authorization. *See Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 840 n. 3 (5th Cir. 2004). Defendants' egregious deletion of relevant information has destroyed what is, likely, the best evidence that Defendants used Plaintiff's trade secrets because it would have shown the code that was most similar to when it was misappropriated. Defendants have ensured that Plaintiff will never discover this possibly damning evidence.

Similar to the requirements for proof of misappropriation of trade secrets, to prove a civil claim based on alleged violation of Computer Fraud and Abuse Act's (CFAA), a plaintiff must show: (1) knowing transmission; (2) to a protected computer; (3) that causes intentional damage without authorization. *Thurmond v. Compaq Computer Corp.*, 171 F.Supp.2d 667 (E.D. Tex. 2001) (citing 18 U.S.C.A. § 1030(a)(5)(A), (g)). Defendants' egregious deletion of relevant information has destroyed what is, likely, the best evidence that Defendants engaged in computer fraud and abuse because it would have shown Defendants' transmission of information, which caused intentional damage, without VocalSpace's authorization.

**(3)     The Destroyed Evidence Was Likely The Best Evidence of Breach of Fiduciary Duty.**

Without access to the destroyed data on the LarkSpark servers, which was permanently deleted by Defendants, Plaintiff has been deprived of what may likely have been the best evidence of breach of fiduciary duty. Defendant was placed in a position of trust in Plaintiff's organization. Otken Dec. at ¶ 13. Defendant was even a Vice President of the company. *Id.* In his trusted position, he owed Plaintiff a fiduciary duty, including a duty not to misappropriate VocalSpace's confidential information. By

destroying the information on Defendants' servers, Defendants have effectively eliminated what could have been the best evidence that a fiduciary duty was breached through the misappropriation of Plaintiff's confidential information.

B.     SANCTIONS—INCLUDING DEATH PENALTY SANCTIONS—ARE APPROPRIATE.

This Court is authorized, pursuant to Rule 37(b)(2) of the Federal Rules of Civil Procedure, to make orders for sanctions as are just, including "an order striking out pleadings…or dismissing the action or proceeding or any part thereof, or rendering judgment by default against the disobedient party." FED. R. CIV. P. 37(b)(2)(C); *FDIC v. Connor*, 20 F.3d 1376, 1380 n. 2 (5th Cir. 1994); *Tandycrafts, Inc. v. Bublitz*, No. 3:97-CV-1074-T, 2002 WL 324290 (N.D. Tex. Feb. 27, 2002) (quoting *Connor*, 20 F.3d at 1380). If the abuses are egregious, dismissal is an available and appropriate sanction. *Connor*, 20 F.3d at 1380 n. 2; *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 96 S. Ct. 2778, 2781 (1976). Courts have exercised their inherent power on numerous occasions to dismiss claims or enter a default judgment as punishment for a party's willful destruction of evidence. *See, e.g., id.; Computer Assocs. Int'l, Inc. v. American Fundware, Inc.*, 133 F.R.D. 166, 170 (D. Colo. 1990); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107 (S.D. Fla. 1987). In fact, in cases where the willful destruction of evidence has occurred, default judgment "has been deemed the ***only*** appropriate sanction under Rule 37." *Telectron*, 116 F.R.D. at 130 (emphasis added); *Atlantic Recording Corp. v. Howell*, No. CV-06-02076-PHX-NVW, 2008 WL 2080008 (D. Ariz. Aug. 29, 2008) ("no lesser sanction will adequately deter"). "A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006). And, when it is a defendant who has made the evidence unavailable, default judgment ***should*** be entered. *Arista Records, LLC v. Tschirhart*, 241 F.R.D. 462, 465 (W.D. Tex. 2006); *Computer Assocs.*, 133 F.R.D. at 171 (emphasis added).

Furthermore, the Fifth Circuit permits an adverse inference against the destroyer of evidence upon a showing of "bad faith" or "bad conduct." *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005). The test is whether the court, "from the fact that a party has destroyed evidence," could draw an inference "that the party did so in bad faith." *Super Future Equities, Inc. v. Wells Fargo Bank of Minn.*, No. 3:06-CV-0271-B, 2008 WL 3261095 (N.D. Tex. Aug. 8, 2008). In addition, the Court may impose sanctions for spoliation through its inherent power. *Chambers v. NASCO Inc.*, 501 U.S. 32, 111 S. Ct. 2123 (1991). "The Supreme Court recognizes the 'well acknowledged' inherent power of a district court to levy sanctions in response to abusive litigation tactics." *Tandycrafts*, at *5 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S. Ct. 2455 (1980)). A court may invoke its inherent powers even if procedural rules exist which sanction the same conduct. *Chambers*, 111 S. Ct. at 2135.

### (2) Defendants' Conduct Merits Serious "Death Penalty" Sanctions.

Defendants' conduct merits "death penalty" sanctions, and the Court should enter an Order taking as established the existence of copyright infringement, misappropriation of trade secrets, violation of the Computer Fraud and Abuse Act, and breach of fiduciary duty, and grant default judgment against Defendants on each count. *See, e.g., Arista Records*, 241 F.R.D. 462 (imposing death penalty sanctions even where the destroyed evidence could have been pieced together from the hard drive); *Howell*, 2008 WL 2080008, at *3 ("no lesser sanction will adequately deter the repetition of this kind of easily accomplished and highly prejudicial destruction of evidence"). Indeed, numerous cases have dismissed cases or granted default judgment for willful discovery abuses even though the concealed or destroyed evidence was eventually produced or reconstructed. *See, e.g., Anheuser-Busch, Inc. v. Natural Beverage Dists.*, 151 F.R.D. 346 (N.D. Cal. 1993) *aff'd* 69 F.3d 337 (9th Cir. 1995). In a motion for sanctions based on spoliation of evidence, in addition to proving that the party with control over the evidence had an obligation to preserve it, the party seeking sanctions must also establish (1) that evidence was destroyed

with a culpable state of mind and (2) that the non-destroying party has suffered prejudice from the destruction of evidence. *See Rimkus*, 688 F.Supp. at 615-16 (defendants acted intentionally and in bad faith when they destroyed computer files relevant to setting up and operating a competitor company).

      **(a)    Defendants Destroyed the Evidence With a Culpable State of Mind.**

In the present case it is clear that Defendants destroyed evidence they were obligated to preserve with a culpable state of mind. This lawsuit was brought against Defendants on July 23, 2009. At that time, Defendants were undoubtedly on notice of their duty to preserve evidence. Defendants, clearly, acknowledged that the LarkSpark servers were evidence relevant to this litigation that was subject to the duty to preserve. (Doc. No. 18). They were also unequivocally put on notice of this duty. *See*, *e.g.*, Ex. 2; *see also* Doc. Nos. 64 and 82. Yet, in a flagrant violation of this duty, Defendants erased highly relevant information from their servers. *See* Ex. 2 at 69:21-23, 70:22-25-71:1, 71:15-22. Here, Defendant Lorenso took specific, intentional, and calculated steps to permanently delete important evidence, including source code and revision history. Lorenso downloaded a program called DBAN, and, by his own admission, ran this software on the servers "to wipe [them] clean." Lorenso Depo. at 70:5. This egregious discovery violation occurred sometime in the June, July, or August 2010 time frame. *Id.* at 70:22-25; 71:1 ("Q: Okay. Just so we're clear sometime in the June, July, or August 2010 time frame you – you ran the DBAN program on each of these seven servers to wipe them clean? A: Yes."). Lorenso further admitted that he made no attempt to preserve any information on the seven LarkSpark servers. *Id.* at 75:17-25. However, Lorenso had the means to preserve the evidence. The timing and character of Lorenso's actions show that they were deliberately calculated to conceal the truth and that he willfully destroyed evidence in his favor.

      The facts of this case are similar to *Howell* and *Arista*. In *Howell*, the court held that the defendant who was sued for copyright infringement deserved death penalty sanctions, including the striking of his pleading and default judgment, where the defendant used a "wipe and delete" program to permanently

delete all traces of certain files from his computer. *Howell*, 2008 WL 2080008, at *3. The court found that because the defendant "testified to facts that could not be disproved because he had destroyed the pertinent evidence," the circumstances "demanded the imposition of a default judgment against" the defendant. *Id.* Similarly, here, death penalty sanctions should be imposed because Defendant intentionally destroyed what may have been the most egregious evidence ***after*** the parties entered their discovery/case management plan, after Plaintiff had transmitted a specific request in writing for that source code, after Plaintiff sought the destroyed information in a motion to compel, and after Defendants were put on repeated notice of their duty to preserve the information. These facts leave no doubt that Defendants destruction of evidence was completed with a culpable state of mind.

**(b)** **Plaintiff Has Suffered Prejudice.**

Even though some courts have held that prejudice is "purely optional" or is "not required,"[1] it is clear that Plaintiff has suffered and will continue to suffer severe prejudice based on Defendants' destruction of evidence. Destruction of relevant evidence gives rise to a strong inference that production would have been unfavorable to the party responsible for the destruction. *See, e.g., Computer Assocs.*, 133 F.R.D. at 170. Even for severe sanctions, relevant and prejudice may be presumed when the spoliating party acts in a grossly negligent manner. *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec. LLC*, 685 F.Supp.2d 456, 467-68 (S.D.N.Y. 2010). Prejudice is present where, as here, the destroyed evidence "goes to the very heart of plaintiff's case" and "its destruction prevents plaintiffs from offering the best proof available for their case." *Arista Records*, 241 F.R.D. at 465 (finding prejudice warranting death penalty sanctions even where the destroyed evidence could have been pieced together from the hard drive). And courts repeatedly stress that the time and money spent probing document

---

[1] *See, e.g, Halaco Engineering Co. v. Costle*, 843 F.3d 376, 382 (9th Cir. 1988) (purely optional); *United States v. Nat'l Medical Enters. Inc.*, 792 F.2d 906, 912-913 (9th Cir. 1986) (not required).

destruction and pursuing sanctions are primary sources of prejudice. *See, e.g, Brady v. United States*, 877 F.Supp. 444, 452 (party prejudiced by spending valuable time and money on destruction allegations).

Here, this Court will never know what was on the computers purposefully erased by Defendants – this information could have included original VocalSpace source code, backups, and file transfer logs. This is highly prejudicial to Plaintiff. It is also impossible to determine what other evidence Defendants might have destroyed. There could have been additional indicia of infringement and misappropriation if the data was available for inspection. VocalSpace has been prejudiced because the destroyed data goes to the very heart of Plaintiff's claims. Finally, Plaintiff has been prejudiced by the substantial and direct costs it has incurred associated with bringing the instant sanctions motion. Therefore, because Defendants' conduct was willful and done in bad faith and because Plaintiff has been highly prejudiced by Defendants' interference with the rightful decision of this case and the delay and expense caused by Defendants' misconduct, the Court should impose sanctions in the form of entering a default judgment against Defendants.

## C. ALTERNATIVELY, THE COURT SHOULD PROHIBIT DEFENDANTS FROM OPPOSING PLAINTIFF'S CLAIMS.

In the event the Court does not grant Plaintiff default judgment on its claims against Defendants, the Court should alternatively prohibit Defendants from opposing Plaintiff's claims in this case. The deterrent effect in the present case is not that a lesser sanction would dissuade Defendants from destroying further evidence on the LarkSpark servers. *See Arista Records*, 241 F.R.D. at 465. That evidence is already gone. The sanction in this case should be to deter other defendants in similar cases from attempting to destroy or conceal evidence of their wrongdoing. *Id*. However, if for some reason, this Court does not agree with this position, the Court should alternatively bar Defendants from opposing Plaintiff's claims, as authorized by FED. R. CIV. P. 37(b).

**D. ALTERNATIVELY, THE COURT SHOULD IMPOSE AN ADVERSE SPOLIATION INFERENCE SANCTION AGAINST DEFENDANTS.**

At a minimum, the Court should impose a spoliation inference sanction against Defendants such that the jurors are instructed that they may infer that the destroyed data contained material adverse to Defendants' interests. Various courts have imposed such sanctions in cases somewhat similar, yet involving less egregious conduct than that present here. *See, e.g., Rimkus*, 688 F.Supp. 2d 598; *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102 (E.D. Pa. 2005) (copyright infringement defendant's act of wiping his computer's memory clean after learning of copyright infringement suit warranted application of spoliation inference). In fact, the only plausible inference that can be made from Defendants' flagrant destruction of evidence is that the evidence would have supported Plaintiff's claims.

**E. ADDITIONALLY, THE COURT SHOULD IMPOSE MONETARY SANCTIONS.**

At the very least, and regardless of the other sanctions imposed, the Court should impose monetary sanctions for Plaintiff's attorneys' fees and costs incurred in attempting to discover the destroyed evidence and in bringing this Motion. The imposition of monetary sanctions in addition to the dismissal of suit is necessary to fully compensate the innocent party. *See Arista Records*, at 466; *Telectron*, at 135, 137 (award of attorneys' fees and costs is primarily a "step toward" compensating the wronged party); *see also Illinois Tool Works, Inc. v. Metro Mark Products, Ltd.*, 43 F.Supp.2d 951 (N.D. Ill. 1999) (granting costs and fees as sanctions against defendants in a misappropriate of trade secrets action where defendants tampered with, but did not entirely destroy, computer ordered to be produced). Therefore, at the very least, and regardless of the other sanctions imposed, the Court should impose monetary sanctions for Plaintiff's attorneys' fees and costs incurred in attempting to discover the destroyed evidence and in bringing this Motion.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter default judgment against Defendants on all of Plaintiff's claims and against Defendants on all of Defendants' counterclaims.

In the alternative, Plaintiff requests that Defendants be barred and prohibited from opposing Plaintiff's claims and damages calculation. In the alternative, Plaintiff requests that the jury be instructed that they may infer that the deleted source code and other data included information adverse to Defendants' interests, including evidence of Defendants having infringed on Plaintiff's source code. In addition, Plaintiff requests that Defendants pay, as a sanction, whatever amount of damages that Plaintiff calculates it sustained by reason of Defendants' acts, so long as the amount is arguably reasonable and that Defendants pay all of Plaintiff's costs and attorneys' fees associated with Plaintiff's Motion for Sanctions. Further, Plaintiff requests that the Court grant any other and further relief to which Plaintiff may be entitled.

Respectfully submitted,

/s/ Brian A. Colao
Brian A. Colao
Texas Bar No. 00793528
bcolao@dykema.com
Neal Massand
Texas Bar. No. 24039038
nmassand@dykema.com
Mina R. Saifi
Texas Bar No. 24066801
msaifi@dykema.com
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 2400
Dallas Texas 75201
(214) 462-6400 - Telephone
(214) 462-6401 – Facsimile
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

Counsel has complied with the meet and confer requirement in Local Rule CV-7(h), and (2). The personal conference required by this rule was attempted on November 5, 2010 by lead counsel, Brian A. Colao, attempting to participate in the conference(s) with counsel for Defendants. Counsel for Defendants did not answer, and counsel for Plaintiff left a voice mail message. Therefore, the discovery-related matters in this Motion are left as an open issue for the court to resolve.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 5, 2010. Any other counsel of record will be served by First Class U.S. Mail on this same date.

/s/ Brian A. Colao