**In the United States District Court**
**For the Eastern District of Texas**
**Sherman Division**

| | | |
|---|---|---|
| **VocalSpace LLC,** | § | **Civil Action: 4:09cv350** |
| **Plaintiff,** | § | |
| | § | **(Jury Demand)** |
| **v.** | § | |
| | § | **Judge: Amos L. Mazzant** |
| **Daniel D. Lorenso and Larkspark** | § | |
| **Corporation,** | § | |
| **Defendants.** | § | |

<u>**Plaintiff's Motion for Partial Summary Judgment on Plaintiff's Claims**</u>


<u>**FILED UNDER SEAL**</u>

# Table of Contents

I. Statement of the Issues ...................................................................................................1

II. Statement of Undisputed Material Facts ........................................................................1

III. Legal Standards...............................................................................................................4

      A.      Legal Standard for Summary Judgment ................................................................4

      B.      Legal Standard for Copyright Infringement .........................................................5

      C.      Legal Standard for Misappropriation of Trade Secrets.........................................6

IV. Argument ........................................................................................................................7

      A.      Copyright Infringement .........................................................................................7

      B.      Misappropriation of Trade Secrets.......................................................................13

      C.      Lorenso Knowingly Transmitted A Program To A Protected Computer .............18

      D.      The Transmission Caused Intentional Damage Without Authorization ..............18

      E.      Theft Liability Act ...............................................................................................18

V. Summary Judgment Evidence.......................................................................................19

VI. Request for Relief..........................................................................................................19

DALLAS\107957.1
ID\BAC - 106446/0003

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*American Derringer Corp. v. Bond,*
    924 S.W.2d 773 (Tex. App.—Waco 1996, no writ)..........................................................13, 16

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 106 S.Ct. 2505 (1986)......................................................................................5

*Celotex Corp. v. Catrett,*
    477 U.S. 317, 106 S.Ct. 2548 (1986)......................................................................................4

*Chlorine Inst., Inc. v. California Highway Patrol,*
    29 F.3d 495 (9th Cir. 1994) .....................................................................................................5

*Controversy Music v. Down Under Pub Tyler Inc.,*
    488 F.Supp.2d 572 (E.D.Tex. 2007)......................................................................................6

*Duffy v. Leading Edge Products, Inc.,*
    44 F.3d 308 (5th Cir. 1995) .....................................................................................................5

*Feist Publications Inc. v. Rural Tel. Serv. Co.,*
    111 S.Ct, 1296 (1991)..............................................................................................................5

*Fontenot v. Upjohn Co.*
    780 F.2d 1190 (5th Cir. 1986) ................................................................................................4

*General Universal Systems Inc. v. Lee,*
    379 F.3d 131 (5th Cir. 2004) .......................................................................................5, 6, 7, 12

*IBP Inc. v. Klumpe,*
    101 S.W.3d 461 (Tex.App.—Amarillo 2001) ....................................................................6, 7

*In re Bass,*
    113 S.W.3d 735 (Tex. 2003)....................................................................................................7

*Johnson v. Brewer & Pritchard, P.C.,*
    73 S.W. 3d 193 (Tex. 2002)...................................................................................................16

*K & G Oil Tools & Serv. v. G & G Fishing Tool Serv.,*
    314 S.W. 2d 782 (Tex. 1958).................................................................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
    475 U.S. 574, 106 S.Ct 1348 .................................................................................................4

i

(Contains References to Highly Confidential Material)

*Spectrum Creations L.P. v. Carolyn Kinder Intern. LLC*,
  514 F.Supp.2d 934 (W.D.Tex. 2007).........................................................................7

*Trilogy Software Inc. v. Callidus Software, Inc.*,
  143 S.W.3d 452 (Tex. App.—Austin 2004, pet. denied)..........................................13

*U.S. v. John*,
  597 F.3d 263 (5th Cir. 2010) ..................................................................................18


RULES

FED. R. CIV. P. 56(c) ..........................................................................................................4


STATUTES

17 U.S.C. §101 ....................................................................................................................6

17 U.S.C. §106 ...............................................................................................................5, 7

17 U.S.C. §301(b) ...............................................................................................................7

18 U.S.C. § 1030(a)(5)(A) (2000) ....................................................................................18

Decl. Laws §2.2, §4.1.1 .....................................................................................................11

Decl. Laws ¶4 ......................................................................................................................2

TEX. CIV. PRAC. & REM. CODE § 134.003-134.004 (Vernon 1997)......................................18

DALLAS\107957.1
ID\BAC - 106446/0003

**(Contains References to Highly Confidential Material)**

VocalSpace LLC ("VocalSpace") files this Motion for Partial Summary Judgment on Plaintiff's Claims and shows as follows:

## I.  Statement of the Issues

VocalSpace contends, inter alia, that Defendants Daniel D. Lorenso and Larkspark Corporation ("Defendants") have and are infringing its copyrighted work in VocalSpace's copyrighted computer source code (the "Copyrighted Code") through Defendants' computer source code (the "Accused Code"). VocalSpace further contends that Defendants have misappropriated VocalSpace trade secrets. VocalSpace also contends that Defendants have breached a fiduciary duty, violated the Computer Fraud and Abuse Act, and violated the Texas Theft Liability Act.  VocalSpace seeks partial summary judgment against Defendants. More particularly, there is sufficient summary judgment evidence to conclude, as a matter of law, that:

(1)     Defendants willfully infringed the Copyrighted Code.

(2)     Defendants misappropriated the trade secrets of VocalSpace.

(3)     Defendants breached a fiduciary duty owed to VocalSpace.

(4)     Defendants violated the Computer Fraud and Abuse Act.

(5)     Defendants violated the Texas Theft Liability Act.

Therefore, VocalSpace is entitled to a summary judgment on these issues.

## II.  Statement of Undisputed Material Facts

The following material facts are not in dispute:

(1)     On or about July 14, 2009, VocalSpace filed an application for a copyright registration. This application included deposit material consisting of the first 25 and last 25 pages of a concatenation of the Copyrighted Code. Exhibit B1 is a true and correct copy of this application and deposit material. Declaration of Randy Dryburgh "Decl. Dryburgh" ¶ 3, attached hereto as Exhibit B.

**(Contains References to Highly Confidential Material)**

(2)     Thereafter, the Copyright Office issued evidence of registration of the Copyright Registration Certificate TXu001607950. Exhibit B2 is a true and correct copy of this evidence. Decl. Dryburgh ¶ 4.

(3)     Defendant Daniel D. Lorenso was an employee of VocalSpace (or its predecessor) from March of 2003 through August of 2006. Deposition of Dante Lorenso ("Dep. Lorenso") 11:23-12:1, attached hereto as Exhibit D. Mr. Lorenso was an independent contractor of VocalSpace from January 2007 through June of 2008. Dep. Lorenso 36:7-14. During both of these time frames, Defendant Lorenso had access to proprietary VocalSpace source code. Dep. Lorenso 100:11-19, 162:23-163:13; 36:7-19; Original Answer ¶110; Decl. Dryburgh ¶ 5. During the later time frame, this proprietary VocalSpace source code included the Copyrighted Code. Decl. Dryburgh ¶ 5.

(4)     Exhibit C1 is a true and correct copy of a printout of the file "UserDir.php" found on a DVD of source code produced by Defendants. Decl. Dryburgh ¶ 6.

(5)     Exhibit C2 is a true and correct copy of a printout of the file "UserDir.php" found in the Copyrighted Code. Decl. Dryburgh ¶ 7.

(6)     On October 4, 2010, VocalSpace served the expert report of Dr. Ben Laws on Defendants. Exhibit A1 is a true and correct copy of this expert report. Decl. Laws ¶4. Defendants' rebuttal expert report was due on October 18, 2010, but Defendants chose not to serve any rebuttal expert report.

(7)     During Defendant Lorenso's relationship with VocalSpace, its confidential, trade secret information, including it proprietary source code, was not known to any persons outside of the company. Decl. Dryburgh ¶ 8.

**(Contains References to Highly Confidential Material)**

(8)     Access to the confidential, trade secret information was restricted to only those necessary to maintain the operations of the business, and those employees who do not need access to the information to maintain business operations are excluded. Decl. Dryburgh ¶ 9.

(9)     VocalSpace kept its servers containing the confidential, trade secret information in a locked cage in a secure facility, and access to the servers was restricted by a firewall.   Decl. Dryburgh ¶ 10.

(10)    VocalSpace's server logins were password protected, and server communications were encrypted.  Decl. Dryburgh ¶ 11.

(11)    The VocalSpace office housing confidential information has a monitored alarm system.  Decl. Dryburgh ¶ 11.

(12)    Lorenso had access to a substantial amount of VocalSpace's confidential, proprietary, and trade secret information in his position as a lead programmer. Decl. Dryburgh ¶ 20.  Lorenso occupied positions of extreme sensitivity within VocalSpace and VocalSpace reposed significant trust and confidence in Lorenso. Decl. Dryburgh ¶ 20.

(13)    VocalSpace's confidential, proprietary, and trade secret information that Lorenso had access to is not generally known outside of VocalSpace, and because this information has great value to VocalSpace and its competitors, measures must be taken to insure that such information remains confidential.  Decl. Dryburgh ¶ 21. Lorenso was treated as a fiduciary, and a great deal of trust was placed in him. Decl. Dryburgh ¶ 21.

**(Contains References to Highly Confidential Material)**

(14)     VocalSpace invested over $1 Million to develop its confidential, trade secret

information, including paying Defendant Lorenso over $600,000 to assist in

building the working code for VocalSpace's products.   Decl. Dryburgh ¶ 13.

(15)     VocalSpace requires its employees to acknowledge "Conflict of Interest

Guidelines," which, among other things, state:

Revealing confidential information to outsiders or misusing confidential
information.  Unauthorized divulging of information is a violation of this
policy whether or not for personal gain and whether or not harm to the
Company is intended.

Decl. Dryburgh ¶ 14.

(16)     These guidelines were provided to Defendant Lorenso by VocalSpace's

predecessor-in-interest, Direct2Prospect.  Decl. Dryburgh ¶ 15.

## III.  Legal Standards

A.     **Legal Standard for Summary Judgment**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in

order to see whether there is a genuine need for trial". *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct 1348, 1356 (1986. Summary judgment procedure is

designed to isolate and dispose of factually-unsupported claims or defenses, and so a court may

properly grant summary judgment in any case where the pleadings, discovery products on file,

and affidavits show that there is no genuine issue of material fact. FED. R. CIV. P. 56(c); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

A plaintiff that seeks summary judgment must show that there are no genuine issues of

material fact and establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co*.

780 F.2d 1190, 1194 (5th Cir. 1986). The court should grant the plaintiff's motion only if,

viewing the evidence in the light most favorable to the defendant, there are no genuine issues of

**(Contains References to Highly Confidential Material)**

material fact and no jury could find in favor of the defendant. *Chlorine Inst., Inc. v. California Highway Patrol*, 29 F.3d 495, 496 (9th Cir. 1994). A plaintiff may also show that there are no genuine issues for trial regarding a defendant's defenses by pointing out the absence of evidence supporting those defenses. *See Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir. 1995). Once the plaintiff meets this burden, the defendant must come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the defendant. *Id.*

Although this Court considers the evidence in the light most favorable to the nonmoving party, conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment. *Id*. The mere existence of some disputed fact will not defeat an otherwise properly-supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2510-11 (1986).

B.      **Legal Standard for Copyright Infringement**

The Copyright Act gives the owner of a copyright a number of exclusive rights to the copyrighted work, including the right to reproduce the work, to prepare derivative works, to distribute copies of the work, and to perform the work publically. 17 U.S.C. §106. To establish a prima facie case of copyright infringement, a copyright owner must prove (1) ownership of a valid copyright, and (2) copying by the defendant of constituent elements of the work that are original. *Feist Publications Inc. v. Rural Tel. Serv. Co*., 111 S.Ct, 1296 (1991). A certificate of registration, if timely obtained, is *prima facie* evidence both that a copyright is valid and that the registrant owns the copyright. *General Universal Systems Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004). To prove actionable copying under the second prong, a plaintiff must prove that the defendant actually used the copyrighted material to create his own work. *Id*. A plaintiff may

**(Contains References to Highly Confidential Material)**

make this showing either with proof of direct evidence of copying or through circumstantial

evidence demonstrating both (1) that the defendant had access to the copyrighted work and (2)

that the two works are probatively similar. *Id.* The access element is satisfied if the defendant

had a reasonable opportunity to view the copyrighted work, and the probative similarity element

requires a showing that the works, when compared as a whole, are adequately similar to establish

appropriation. *Id.* Infringement is willful if the Defendant had knowledge that his conduct

represented infringement or recklessly disregarded the possibility that his conduct might

constitute infringement. *Controversy Music v. Down Under Pub Tyler Inc.*, 488 F.Supp.2d 572,

578 (E.D.Tex. 2007).

The Copyrighted Code is described on the face of the copyright registration as a

"computer program." Exh. B2. Under the Copyright Act, a "computer program" is defined as a

"set of statements or instructions to be used directly or indirectly in a computer in order to bring

about a certain result." 17 U.S.C. §101. It is settled that computer programs are entitled to

copyright protection. *General Universal Systems Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004).

This protection applies both to the literal elements of the source code as well as the non-literal

elements, including structure, sequence, organization, user interface, screen displays, and menu

structures. *Id.* at 142. Copyright protection extends only to the expression within the source code,

not the abstract ideas, processes, facts, elements dictated by considerations of efficiency,

elements required by factors external to the program itself, or items taken from the public

domain. *Id.* at 142-143.

C.    **Legal Standard for Misappropriation of Trade Secrets**

Trade secrets are rights in the nature of property rights which the law protects through

both tort and contract principles. *IBP Inc. v. Klumpe,* 101 S.W.3d 461, 472 (Tex.App.—Amarillo

2001). Generally, such principles provide that one who either discloses or uses another's trade

**(Contains References to Highly Confidential Material)**

secret, without a privilege to do so, is liable for such disclosure or use if the disclosure or use constitutes a breach of confidence reposed in the party disclosing or using the trade secret by the owner of the trade secret. *Id.* To be actionable, the disclosure or use of the trade secret ordinarily must be to the competitive disadvantage of the owner of the trade secret. *Id.* To determine the existence of a trade secret, the court should consider six relevant but nonexclusive criteria: (1) the extent to which the information is known outside the business, (2) the extent to which it is known by employees and others involved in the business, (3) the extent of measures taken to safeguard the secrecy of the information, (4) the value of the information to him and to his competitors, (5) the amount of effort or money expended in developing the information, and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *In re Bass,* 113 S.W.3d 735, 739-40 (Tex. 2003). A trade secret action is not preempted by the Copyright Act as the former requires a breach of trust or confidence not found in the cause of action for copyright infringement. *See* 17 U.S.C. §301(b) ("Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any state with respect to ... (3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by sec. 106."); *Spectrum Creations L.P. v. Carolyn Kinder Intern. LLC*, 514 F.Supp.2d 934 (W.D.Tex. 2007) (trade secret cause of action not preempted by Copyright Act because of additional requirements of trade secret claim).

## IV.  Argument

### A.    Copyright Infringement

While granting summary judgment of copyright infringement based on substantial similarity is typically viewed as something to be left to the ultimate factfinder, *e.g., General Universal Systems,* 379 F.3d 142, here, there remain no unresolved questions of any material fact, including the question of substantial similarity. Specifically, Defendants have admitted that

---

**(Contains References to Highly Confidential Material)**

the Accused Code contains elements of the Copyrighted Code, and the Defendants have admitted

that these elements represent the creative expression of the author. Further, in the report of

VocalSpace's expert Dr. Ben Laws, which has been incorporated into Dr. Laws declaration (Exh.

A1), Dr. Laws, a 45+ year veteran of software design and development, listed a plethora of

examples where the Accused Code contained similar creative expression found in the

Copyrighted Code.

> **1.    Defendants have admitted substantial similarity between the Accused Code and the Copyrighted Code.**

During his deposition (individually and as corporate representative), Mr. Lorenso was

questioned regarding source code generally and comparisons between the Accused Code and

Copyrighted Code in particular. Mr. Lorenso unequivocally testified that source code may

contain creative expression that goes beyond mere idea or process. This creative expression

includes the choice of text used in non-functional program comments:

> Q.    Do you see the two slashes at the beginning of that line?
> A.    Yes.
> Q.    Okay.  That indicates a comment, right?
> A.    Correct.
> Q.    And the rest of that line is a string of dashes, correct?
> A.    Uh-huh.
> Q.    Now, what's the purpose of the string of dashes?
> A.    I like them.
> Q.    Okay.  ***So is it fair to say that's another programmer's choice thing, you like them, so that's why they're there?***
> A.    ***Yes***.
> Q.    Okay.  Now, so if we look at Lines 49, 59, 69, 13:42 24  89, and 127, we see lines beginning with the two slashes followed by a string of dashes, right?
> A.    That is correct.
> Q.    And are they also there because you like them?
> A.    That's true.
> Q.    Okay.  And is there any other purpose?
> A.    No.
> Q.    ***That's just kind of your artistic expression*** --
> A.    ***Uh-huh.***
> …
> Q.    Okay.  Now, does the PHP Interpreter execute comments like Line 16?

**(Contains References to Highly Confidential Material)**

A.   It should not execute them, no.

Q.   Right. Does it do any error checking to make sure that the comments are accurate, like the one on Line 16?

A.   There can be characters in the comments that would cause the PHP Interpreter to fail, but it doesn't necessarily scan them normally, no.

Q.   Right. So -- so that comment could read something like try to erase the user subdirectory, right, and the program could still run the same?

A.   Yes.

Q.   Okay.  ***And it wouldn't make a bit of difference to the PHP Interpreter if there were no comments at all, right***?

A.   ***It might actually be a little bit faster if there were not comments at all*** --

Q.   All right.  So it would –

A.    -- slightly.

Q.   -- be faster, but it would -- but -- so would it almost in a lot of ways make the program run faster, but not materially affect the program, correct?

A.   It should not, no.

…

Q.   All right.  Who chooses the words of a comment?

A.   The author.

Q.   Okay.  ***So that's basically the -- another part of the artistic expression of the author, what to put in the comment, right?***

A.   ***Okay.  Yes.***

Dep. Lorenso 390:8-391:8, 392:15-393:14,  (emphasis added).

Similarly, Mr. Lorenso testified that this creative expression includes the choice of text used in an error message, Dep. Lorenso 398:7-399:22, and that this creative expression includes the choice of function and variable names. *Id.* 396:19-398:3; *See also* Original Answer ¶14 (Defendants admit that computer source code is copyrightable expression).

Later in the deposition, Mr. Lorenso was asked to compare the creative expression identified in the Accused Code with similar expression in the Copyrighted Code. Mr. Lorenso agreed that Defendants' Code contained comments that were identical or virtually identical to comments found in the Copyrighted Code:

Q.   …Now, look at the comments in front of the function get user sub DIR file at lines -- if you look at E, at Lines 6 through 10, 6 through 10 of Exhibit E.

A.   Okay.

**(Contains References to Highly Confidential Material)**

Q.      Now, do you see those comments?  In fact, what do they say?  Assemble parts of the file name based on the user subdirectory to form the absolute path on disk without verification. Did I read that right?

A.      Okay.

Q.      Okay.  You see that. Now, let's look at the comments -- if we go over to Exhibit D, let's look at -- so pull Exhibit D. Tell me when you have that in front of you.

A.      Okay.

Q.      Now, look at the comments in front of the function get sub DIR files at Lines 59 through 63.

A.      (Witness complies.)

Q.      Are you there?

A.      Uh-huh.

Q.      And if we look at that, it says, Assemble parts of the file name based on the user's subdirectory to form the absolute path on disk without verification. Did I read that right?

A.      Okay.

Q.      ***They're identical comments, correct?***

A.      ***Yeah***.

Dep. Lorenso 403:8-404:9 (emphasis added).

Mr. Lorenso went on to confirm that other comments found in the Defendants' Code were also found in the Copyrighted Code. Dep. Lorenso 404:10-405:20 (comments at lines 17-21); Id. 405:21-407:6 (comments at lines 28-32); Id. 407:7-408:10 (comments at lines 34, 39, 45, 51, and 56); Id. 408:11-409:16 (comments at lines 60-63). Similarly, Mr. Lorenso was asked to compare the text strings in the error messages at lines 42 and 53 of the Defendants' Code with the text strings in the error messages found in the Copyrighted Code; upon comparison, he concluded "the strings themselves are identical." Dep. Lorenso 409:17-411:20. Similarly, Mr. Lorenso agreed that the Accused Code contained functions that bore names that were similar to function names found in the Copyrighted Code. Dep. Lorenso 402:25-403:6.

In short, Defendants have agreed that the Accused Code contains expressive content that is not only substantially similar, but virtually identical to the expressive content found in the Copyright Code. Therefore, there is no question of material fact remaining for the jury to consider, and summary judgment on this issue is appropriate.

**(Contains References to Highly Confidential Material)**

      **2.**      **Dr Laws found substantial similarity between the Accused Code and the Copyrighted Code.**

Dr. Ben Laws opined that certain elements of source code, including its structure and layout, the selection of text for user messages, and the inclusion of embedded comments, evidence expressive content that is unnecessary for the function of the code itself. Decl. Laws §2.2, §4.1.1.  As noted supra, Defendants agree with Dr. Laws on this subject. Dr. Laws examined dozens of files from the Accused Code and compared the expressive content from those files with the Copyrighted Code. Id. §4.1.1. By way of example, Dr. Laws compared two files, both named "FLVTools.php," found in the Accused Code and Copyrighted Code. He found substantially similar comments (including a doubled "the" and a misspelled "begining"), substantially similar instruction format, and substantially similar sequence of instructions. Id. §4.1.1.  This substantial similarity is readily apparent to the casual observer:

| VocalSpace Code | Defendants' Code |
|---|---|
| <pre>//----------------------------------------------
/* Read the duration in seconds of an FLV file using hackery. We seek
 * the the end of the FLV file and read the last 'tag' packet.  The
 * offset marked on that packet is the offset we use for the entire
 * stream.
 * I haven't found any examples of where this isn't good enough --dante
 */
public static function get_duration($file_name) {
    // open the file for reading or bail
    $fp = fopen($file_name, 'r');
    if (!$fp) {
        return (0);
    }

    // read the size of the last packet in the file
    // size is stored as the last four bytes at the end of the file
    $res = fseek($fp, -4, SEEK_END);
    if ($res) {
        return (0);
    }
    $offset = -abs(self :: ui_read($fp, 4) + 4);

    // jump to the begining of the last packet in the file
    $res = fseek($fp, $offset, SEEK_END);

    // parse the last 'tag' packet of the file
    $pkt = self :: flvtag_read($fp);
    fclose($fp);

    // use the time offset stamped on the last packet as the time
    // for the entire FLV stream
    $seconds = Common :: array_get($pkt, 'time') / 1000.0;
    return ($seconds);
}

//----------------------------------------------</pre> | <pre>//----------------------------------------------
/**
 * Read the duration in seconds of an FLV file using hackery. We seek the
 * the end of the FLV file and read the last 'tag' packet.  The offset
 * marked on that packet is the offset we use for the entire stream. I
 * haven't found any examples of where this isn't good enough --dante */
public static function get_duration($file_name) {
    // open the file for reading or bail
    $fp = fopen($file_name, 'r');
    if (!$fp) {
        return 0;
    }

    // read the size of the last packet in the file
    // size is stored as the last four bytes at the end of the file
    $res = fseek($fp, -4, SEEK_END);
    if ($res) {
        return 0;
    }
    $offset = -abs(self :: uintRead($fp, 4) + 4);

    // jump to the begining of the last packet in the file
    $res = fseek($fp, $offset, SEEK_END);

    // parse the last 'tag' packet of the file
    $pkt = self :: flvtag_read($fp);
    fclose($fp);

    // use the time offset stamped on the last packet as the time
    // for the entire FLV stream
    $seconds = (isset ($pkt['time']) ? $pkt['time'] : 0) / 1000.0;
    return $seconds;
}

//----------------------------------------------</pre> |

**(Contains References to Highly Confidential Material)**

Dr. Laws found substantial similarity of expressive content in over 35 different files within the Accused Code. Decl. §4.1.2.

In short, Dr. Laws has found multiple instances where the Accused Code contains expressive content that is not only substantially similar, but virtually identical to the expressive content found in the Copyright Code. Therefore, inasmuch as Defendants have offered no report by an independent third-party expert rebutting Dr. Laws' opinions, and in light of Defendants' admissions regarding the expressive nature of the Accused Code and Copyrighted Code, there is no question of material fact remaining for the jury to consider, and summary judgment on this issue is appropriate.

### 3.     Other facts related to infringement are not in dispute.

As noted supra in §0, there is no dispute regarding the remaining elements for proving willful copyright infringement by Defendants. First, the existence of the copyright registration is *prima facie* evidence both that VocalSpace's copyright claim is valid and that the VocalSpace owns the copyright. See *General Universal*, 379 F.3d at 141. Second, Defendants admitted that, as of May 2008, Mr. Lorenso had "complete access" to the VocalSpace code. Original Answer ¶110.  Inasmuch as the files in the Copyrighted Code are dated between  April 2003 to January 2007, Decl. Dryburgh ¶ 5, Mr. Lorenso has therefore admitted to having "complete access" to the Copyrighted Code. Mr. Lorenso was an employee and later a contractor of VocalSpace, and so he knew that his actions involved the incorporation of VocalSpace code into the Accused Code. In fact, Mr. Lorenso identified comments found in both the Copyrighted Code and the Accused code as his own. Dep. Lorenso 392:7-11.

Therefore, all elements of willful copyright infringement have been proven and there are no remaining unanswered questions of material fact for the jury to consider, and summary judgment on this issue is appropriate.

**(Contains References to Highly Confidential Material)**

B. **Misappropriation of Trade Secrets**

The Court should grant summary judgment on Plaintiff's misappropriation of trade

secrets claim because there is no genuine issue of material fact regarding whether Defendants

misappropriated Plaintiff's trade secrets.  The elements of a misappropriation of trade secrets

claim in Texas are that (1) the plaintiff owned a trade secret; (2) the defendant used or disclosed

the trade secret in violation of a confidential or contractual relationship with the plaintiff, after

acquiring the trade secret by improper means, or after acquiring the trade secret with notice that

disclosure was improper; and (3) the plaintiff suffered injury.  *K & G Oil Tools & Serv. v. G & G*

*Fishing Tool Serv.,* 314 S.W. 2d 782, 787-88 (Tex. 1958); *Trilogy Software Inc. v. Callidus*

*Software, Inc.,* 143 S.W.3d 452, 463 (Tex. App.—Austin 2004, pet. denied).  Further, an

employee has a duty not to use or disclose an employer's trade-secret information in a manner

adverse to the employer, both during and after employment, if the employee knows or should

realize under the circumstances that the employer wants the information to be kept secret.

*American Derringer Corp. v. Bond,* 924 S.W.2d 773, 777 (Tex. App.—Waco 1996, no writ).

Each of the elements has been sufficiently established such that the Court must find

misappropriation of Plaintiff's trade secrets by Defendants as a matter of law.

1. **VocalSpace owned a trade secret.**

VocalSpace, owned confidential, trade secret information, including both copyrighted

and non-copyrighted proprietary source code, that was misappropriated by Defendants.

VocalSpace's confidential, trade secret information was not known to any persons outside of the

company.  Decl. Dryburgh ¶ 8.  In fact, access to the confidential, trade secret information was

restricted to only those necessary to maintain the operations of the business, and those employees

who did not need access to the information to maintain business operations are excluded.  Decl.

Dryburgh ¶ 9.  Further, VocalSpace went to great lengths to protect its confidential, trade secret

**(Contains References to Highly Confidential Material)**

information.  Decl. Dryburgh ¶ 10.  For example, it kept its servers containing the confidential, trade secret information in a locked cage in a secure facility.  Decl. Dryburgh ¶ 10.  Access to the servers was restricted by a firewall.   Decl. Dryburgh ¶ 10.  Further, server logins were password protected, and server communications were encrypted.  Decl. Dryburgh ¶ 11.  Also, the office housing the information had a monitored alarm system.  Decl. Dryburgh ¶ 11.  VocalSpace's confidential, trade secret information was central to operating its business, and the information was and is—by far—VocalSpace's most valuable asset.  Decl. Dryburgh ¶ 12.  In light of this, the confidential, trade secret information was also highly valuable to VocalSpace's competitors.  Decl. Dryburgh ¶ 12.  In fact, VocalSpace invested over $1 Million to develop its confidential, trade secret information, including paying Defendant Lorenso over $600,000 to assist in building the working code for VocalSpace's products.   Decl. Dryburgh ¶ 13.  As such, it would be extremely unlikely—for all practical purposes, impossible—for another competitor to duplicate or acquire the confidential, trade secret information.  Decl. Dryburgh ¶ 14.  VocalSpace even required its employees to acknowledge "Conflict of Interest Guidelines," which, among other things, state:

> Revealing confidential information to outsiders or misusing confidential information.  Unauthorized divulging of information is a violation of this policy whether or not for personal gain and whether or not harm to the Company is intended.

Decl. Dryburgh ¶ 14.  These guidelines were provided to Defendant Lorenso by VocalSpace's predecessor-in-interest, Direct2Prospect.  Decl. Dryburgh ¶ 15.  Defendant Lorenso initialed and signed the guidelines on April 7, 2003.  Accordingly, VocalSpace certainly maintained confidential, trade secret information.

**(Contains References to Highly Confidential Material)**

>    2.    **Defendants used and disclosed the trade secret information in violation of their obligations after acquiring it by improper means with notice that the use and disclosure was improper.**

Defendants used and disclosed VocalSpace's misappropriated trade secret information in violation of their obligations to VocalSpace.  As stated *supra* in III.A, Defendants have used and are using VocalSpace's confidential, trade secret information.  Rather than repeat the descriptions of those uses provided above verbatim, they are incorporated by reference as if fully set forth herein.  Further, Defendant Lorenso has disclosed VocalSpace's confidential, trade secret information on his website.  Decl. Dryburgh ¶ 16.  Blatantly disregarding his obligation to keep VocalSpace's proprietary information in confidence, Mr. Lorenso  went so far as to publish it on the internet for all to see.  Decl. Dryburgh ¶ 17.  For example, the documents attached as Exhibit B5, show one posting of trade secret information.  Decl. Dryburgh ¶ 17.  It is readily apparent that the posted code is substantially identical to VocalSpace's trade secret code.  Decl. Dryburgh ¶ 17.  The changes made are utterly trivial (such as adding the LS Prefix to a few variable function names). Decl. Dryburgh ¶ 17.  Thus, Defendants—without question—used and disclosed VocalSpace's trade secret information.

Prior to the improper use and disclosure, Defendants acquired the confidential, trade secret information in violation of their obligations to VocalSpace.  Upon Defendant Lorenso's departure from VocalSpace, he was instructed to delete all of VocalSpace's confidential, trade secret information from his computers.  Decl. Dryburgh ¶ 18.  Further, in statements to Defendant Lorenso, it was made explicitly clear that VocalSpace's code was not to be used in other non-VocalSpace applications.  Decl. Dryburgh ¶ 18.  Further, Defendant had an obligation not to disclose the confidential, trade secret information since he was an employee and VocalSpace had made it unequivocally clear that it wanted the information to be kept secret.

**(Contains References to Highly Confidential Material)**

*See, e.g, American Derringer*, 924 S.W. 2d at 777.  Thus, VocalSpace has established, without question, that Defendants have used and disclosed its misappropriated trade secret information.

### 3.    VocalSpace suffered injury.

VocalSpace has suffered injury as a result of Defendants' misappropriation of its trade secrets.  As stated above, VocalSpace invested over $1 million to create its proprietary source code.  VocalSpace has, essentially, been deprived of the benefits of this $1 million investment because Defendants have misappropriated the proprietary source code and used it to create a competing business.  Furthermore, VocalSpace has been injured because it has lost revenues due to competition from Defendants using its proprietary source code as also described above.  Decl. Dryburgh ¶ 19.  In addition, VocalSpace has been injured because Defendants have used the trade secret information to mimic VocalSpace in the marketplace. Harm may be established by evidence that disclosure of confidential information could enable competitors to mimic the marketing plans and strategies of the applicant and avoid the less successful strategies, resulting in a "substantial competitive injury."  Thus, the injury element has been satisfied.

Therefore, all elements of misappropriation of trade secrets have been proven and there are no remaining unanswered questions of material fact for the jury to consider.  Summary judgment on this issue is appropriate.

### 4.    Breach Of fiduciary duty

The elements of a claim for breach of fiduciary duty are: (1) a fiduciary relationship exists between the plaintiff and the defendant; (2) the defendant breached its fiduciary duty to the plaintiff, and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant.  *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W. 3d 193, 199 (Tex. 2002).  Here the evidence has established each of these elements.  Therefore, summary judgment should be granted against Defendants for breach of fiduciary duty.

**(Contains References to Highly Confidential Material)**

### 5.    A fiduciary relationship existed between lorenso and vocalspace

Lorenso had access to a substantial amount of VocalSpace's confidential, proprietary, and trade secret information in his position as one of VocalSpace's lead programmers. Lorenso occupied positions of extreme sensitivity within VocalSpace and VocalSpace reposed significant trust and confidence in Lorenso. VocalSpace's confidential, proprietary, and trade secret information that Lorenso had access to is not generally known outside of VocalSpace, and because this information has great value to VocalSpace and its competitors, measures must be taken to insure that such information remains confidential. As such, Lorenso had a fiduciary relationship with VocalSpace.

### 6.    Lorenso breached his fiduciary duty to vocalspace

As set forth above in Sections IV.A and IV.B Lorenso misappropriated VocalSpace's trade secrets and used them to engage in a competing business. Rather than repeat those arguments verbatim, they are incorporated by reference as if fully set forth herein. As such, Lorenso breached his fiduciary duty to VocalSpace.

### 7.    VocalSpace has been injured as a result of the breach

As set forth above in Sections IV.A and IV.B Lorenso injured VocalSpace by misappropriating its trade secrets and engaging in a competing business. Rather than repeat those arguments verbatim, they are incorporated by reference as if fully set forth herein. As such, Lorenso's breach has resulted in injury to VocalSpace.

Accordingly, the evidence establishes all of the elements of breach of fiduciary duty by Lorenso. Therefore, summary judgment in favor of VocalSpace on this claim is appropriate.

### 8.    Computer Fraud and Abuse Act ("CFAA")

To establish a civil violation under the CFAA, the plaintiff must establish three elements: 1) the knowing "transmission" of a "program, information, code, or command;" 2) the

**(Contains References to Highly Confidential Material)**

transmission is "to a protected computer;" and 3) the transmission causes intentional "damage without authorization." 18 U.S.C. § 1030(a)(5)(A) (2000).  Furthermore, the definition of the term 'exceeds authorized access' from § 1030(e)(6) implies that an employee can violate employer-placed limits on accessing information stored on the computer and still have authorization to access that computer.  *U.S. v. John*, 597 F.3d 263, 273 (5th Cir. 2010).

C.     **Lorenso knowingly transmitted a program to a protected computer**

Lorenso knowingly transmitted program to a protected computer by adding a rule to the protected VocalSpace servers that allowed him to access them from Larkspark servers.  In fact, Lorenso practically admitted as much in his deposition.  He stated:

> Q.  Did you add a rule to their server that you could access the VocalSpace server from LarkSpark's server?
>
> A.  I can't even confirm whether that's true. But it does sound like something I would have done.

Dep. Lorenso at 271:5-9.  Furthermore, Dryburgh found the rule and removed it himself.  Decl. Dryburgh ¶ 22.  Thus, evidence establishes that Lorenso knowingly transmitted at program to a protected computer.

D.     **The transmission caused intentional damage without authorization**

Lorenso's addition of the rule to VocalSpace's servers was intentionally used to cause damage to VocalSpace without authorization.  Lorenso, used the rule to copy VocalSpace's protected information to Larkspark's servers.  This is established in Section I above.  Further, by doing so he exceeded any authorization from VocalSpace.  Thus, Lorenso violated the computer fraud and abuse act as a matter of law.

E.     **Theft Liability Act**

Lorenso is liable under the Texas Theft Liability Act as a matter of law.  Pursuant to the Act "a person who commits theft is liable for the damages resulting from the theft."  TEX. CIV.

**(Contains References to Highly Confidential Material)**

PRAC. & REM. CODE § 134.003-134.004 (Vernon 1997).  As established above, Defendant's have essentially obtained VocalSpace's code as a result of theft.  Furthermore, VocalSpace has been damaged as a result of the theft.  Accordingly, summary judgment against Defendants on VocalSpace's Theft Liability Act claim is proper.

## V.  Summary Judgment Evidence

VocalSpace submits the following summary judgment evidence, which is attached to and incorporated into this pleading.

Declaration of Dr. Ben Laws ........................................................................ Exh. A
    Expert Report of Dr. Ben Laws ................................................. Exh. A1
Declaration of Randy Dryburgh............................................................... Exh. B
    Copyright Application and Deposit Material.............................. Exh. B1
    "UserDir.php" Printout…………………………………… ................... Exh. B2
    "UserDir.php" Prinout…………………………………… ..................... Exh. B2
Excerpts from 30(b)(6) Deposition of Dante Lorenso ............................... Exh. C

In addition, VocalSpace asks the Court to take judicial notice of all pleadings on file in this matter.

## VI.  Request for Relief

VocalSpace respectfully asks this Court to set this Motion for hearing, and after consideration of the evidence, briefs, and arguments of counsel, to:

a)    Grant judgment in favor of VocalSpace and against Defendants on Count 1 of the Original Complaint (copyright infringement).

b)    Grant judgment in favor of VocalSpace and against Defendants on Count 3 of the Original Complaint (misappropriation of trade secrets).

c)    Grant judgment in favor of VocalSpace for Defendants' on Count 4 of the Original Complaint (breach of fiduciary duty).

d)    Grant judgment in favor of VocalSpace for Defendants' on Count 2 of the Original Complaint (Computer Fraud and Abuse Act).

**(Contains References to Highly Confidential Material)**

e)    Grant judgment in favor of VocalSpace for Defendants' on Count 9 of the

Original Complaint (Texas Theft Liability Act).

f)    Grant VocalSpace such other relief as it may deem necessary and appropriate.


Respectfully submitted,

/s/ Brian A. Colao
Brian A. Colao
Texas Bar No. 00793528
bcolao@dykema.com
Neal Massand
Texas Bar. No. 24039038
nmassand@dykema.com
Mina R.  Saifi
Texas Bar No. 24066801
msaifi@dykema.com
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 4000
Dallas Texas 75201
(214) 462-6400 - Telephone
(214) 462-6401 – Facsimile
**ATTORNEYS FOR PLAINTIFF**



## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on November 5, 2010.  Any other counsel of record will be served by First Class U.S. Mail on this same date.

/s/ Brian A. Colao

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that a Motion to Seal the foregoing document has been filed pursuant to the Local Rules.

/s/ Brian A. Colao