## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **VOCALSPACE, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 4:09-cv-00350** |
| | § | |
| **DANIEL D. LORENSO and** | § | |
| **LARKSPARK CORPORATION,** | § | |
| | § | |
| **Defendants.** | § | |

## VOCALSPACE'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DEFENDANT LORENSO'S COUNTERCLAIMS

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF ISSUES TO BE DECIDED ............................................... 2

III.  STATEMENT OF UNDISPUTED MATERIAL FACTS ............................. 2

IV.   ARGUMENT AND AUTHORITIES ............................................................... 5

   A.  Summary Judgment Standard ......................................................................... 6

   B.  Lorenso's Time Barred Claims Are Not Subject To Revival ........................ 7

   C.  Lorenso's Breach of Contract Counterclaim Fails as a Matter of Law ......... 8

      1.  Legal Standard Regarding Breach of Contract ........................................ 8

      2.  Lorenso's Breach of Contract Counterclaim Must Fail Because VocalSpace
         Performed Its Obligations. ....................................................................... 8

      3.  Lorenso's Breach of Contract Counterclaim Must Fail Because Lorenso Ratified
         The Contract .............................................................................................. 9

      4.  Lorenso's Breach of Contract Claim Is Barred By Statute of Limitations .............. 10

   D.  Lorenso's Promissory Estoppel Claim Fails as a Matter of Law ................... 11

      1.  Legal Standard Regarding Promissory Estoppel ..................................... 11

      2.  Lorenso's Promissory Estoppel Claim Must Fail Due To The Existence Of An
         Express Contract ...................................................................................... 11

      3.  Lorenso's Promissory Estoppel Counterclaim Is Time Barred ............... 11

   E.  Lorenso's Fraud-Based Claims Fails as a Matter of Law ............................. 12

      1.  Legal Standards Regarding Fraud ........................................................... 12

      2.  Lorenso's Fraud-Based Claims Must Fail For Lack Of A False Statement ............ 12

      3.  Lorenso's Fraud-Based Counterclaims Must Fail Because Lorenso Ratified The
         Contract ................................................................................................... 14

      4.  Lorenso's Fraud-Based Counterclaims Are Time Barred ....................... 15

   F.  Lorenso's Conversion Counterclaim Fails As A Matter Of Law ................... 15

      1.  Legal Standards Regarding Conversion .................................................. 15

      2.  Lorenso's Conversion Counterclaim Must Fail Because Of His Assent ............... 16

      3.  Lorenso's Conversion Claim Is Time Barred. ......................................... 17

   G.  Lorenso's Unjust Enrichment Counterclaim Fails As A Matter Of Law ....... 18

      1.  Legal Standards Regarding Unjust Enrichment ...................................... 18

      2.  Lorenso's Unjust Enrichment Claim Fails For Lack Of Fraud ............... 19

3.   Lorenso's Unjust Enrichment Claim Is Time Barred. ............................................... 19

V.   CONCLUSION ........................................................................................................... 20

DALLAS\107848.1
ID\MRSAI - 106446/0003

# TABLE OF AUTHORITIES

**Page(s)**

**C**ASES

*A.I. Credit Corp. v. Thomas*,
  201 Fed.Appx. 232 (5th Cir. 2006) ............................................................................11

*Beijing Metals & Minerals Imp./Exp. Corp. v. Am. Bus. Ctr. Inc.*,
  993 F.2d 1178 (5th Cir. 1993) ....................................................................................11

*Boudreaux v. Swift Transp. Co. Inc.*,
  402 F.3d 536 ..................................................................................................................6

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).......................................................................................................6

*D'Lux Movers & Storage v. Fulton*,
  No. 2-06-019-CV, 2007 WL 1299400 (Tex. App.—Fort Worth May 3, 2007).....................13

*Elledge v. Friberg-Cooper Water Supply Corp.*,
  240 S.W.3d 869 (Tex. 2007)........................................................................................18

*English v. Fischer*,
  660 S.W.2d 521 (Tex. 1983)........................................................................................10

*Fertic v. Spencer*,
  247 S.W.3d 242 (Tex. App.—El Paso 2007, pet. denied) .......................................10

*Geraghty and Miller, Inc. v. Conoco Inc.*,
  234 F.3d 917 (5th Cir. 2000) ..................................................................................9, 14

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
  313 F.3d 305 (5th Cir. 2002) ......................................................................................11

*In re City of Coppell*,
  219 S.W.3d 552 (Tex. App. Dallas 2007, pet. denied)........................................6, 7

*In re GPR Holdings, L.L.C.*,
  318 B.R. 384 (N.D. Tex. 2004).....................................................................................15

*Jamail v. Thomas*,
  481 S.W. 2d 485 (Tex. Civ. App.-Houston [1st Dist.] 1972, writ ref'd n.r.e.) .........................9

*Mack v. Newton*,
  737 F.2d 1343 (5th Cir. 1984) .....................................................................................15

iii

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)......................................................................................6

*Prescott-Phoenix Oil & Gas Co. v. Gilliland Oil Co.*,
241 S.W. 775 (Tex. Civ. App. 1922) ........................................................13

*Sandel v. ATP Oil & Gas Corp.*,
243 S.W.3d 749 (Tex. App.—Houston [14th Dist.] 2007, no pet.).........10

*Smith International, Inc. v. Egle Group, LLC*,
490 F.3d 380 (5th Cir.2007) ......................................................................7

*Smith v. Ferguson*,
160 S.W.3d 115 (Tex. App.—Dallas 2005, pet. denied) ............................7

*Taylor Pipeline Const., Inc. v. Directional Road Boring, Inc.*,
438 F.Supp.2d 696 (E.D. Tex. 2006) ........................................................15

*Teders v. Mercantile Nat'l Bank*,
235 S.W.2d 485 (Tex. Civ. App.—Dallas 1950, writ ref'd n.r.e.) ...........12

*Texas Integrated Conveyor Systems, Inc. v. Innovative Conveyor*,
300 S.W.3d 348 (Tex. App.—Dallas 2009, pet. denied).........................17

*U.S. v. Boardwalk Motor Sports, Ltd.*,
No. 4:08-cv-110, 2010 WL 1717994 (E.D. Tex. Jan. 29, 2010) ............14

*Valero Marketing & Supply Company v. Kalama International*,
51 S.W.3d 345 (Tex.App.-Houston [1st Dist.] 2001, no pet.)..............7, 8

## RULES

FED. R. CIV. P. 56(c) ....................................................................................6

## STATUTES

TEX. CIV. PRAC. & REM. CODE ANN. § 16.069 (Vernon 2008).......................6

iv

## I.       INTRODUCTION

Plaintiff's Motion for Summary Judgment should be granted in its entirety because each of Defendant Lorenso's counterclaims fail as a matter of law.  Defendant Lorenso's breach of contract counterclaim is based upon the fallacious premise that VocalSpace never delivered a 10% ownership stake to Lorenso.  The summary judgment evidence, however, establishes that VocalSpace delivered stock options to Lorenso, as promised, and he chose not to exercise them.  Additionally, subsequent to his resignation from VocalSpace, Lorenso ratified the contract.  Similarly, Lorenso's promissory estoppel counterclaim is founded upon an improper premise— that there was no express agreement between the parties.  The summary judgment evidence shows, as a matter of law, that the parties entered into an express contract, negating the promissory estoppel claim.  Defendant Lorenso's common law fraud, fraudulent concealment, negligent misrepresentation and statutory fraud counterclaims (the "fraud-based counterclaims") are, likewise, based upon unfounded misstatements by Lorenso and subject to summary judgment.   The summary judgment evidence establishes that Lorenso has misrepresented the alleged fraud.   Further, it will show that Lorenso's fraud-based counterclaims must fail because Lorenso has ratified the contract.   In addition, Lorenso's conversion claim is based upon the faulty premises that VocalSpace wrongfully exercised dominion over code owned by Lorenso and that Lorenso did not consent to transfer of his purported intellectual property.  The evidence establishes as a matter of law that—assuming Lorenso owned code—he consented and even effectuated in its transfer.  Lastly, Lorenso's unjust enrichment claim must fail because it is not properly based upon and actionable fraud or taking.

Furthermore, summary judgment in favor of VocalSpace should be granted on Lorenso's counterclaims because they are time-barred.  Lorenso was aware of all the facts giving rise to his claims at least as early as January 2006 and, at the latest, on February 8, 2006. Accordingly, since he did not file his counterclaims until February 12, 2010, all applicable statutes of limitations have run and the counterclaims are time barred.

## II.      STATEMENT OF ISSUES TO BE DECIDED

1.   Whether Lorenso can show that VocalSpace breached an agreement between the parties whereby VocalSpace was to deliver options for 10% ownership in the company to Lorenso.

2.   Whether there was an express agreement between the parties whereby VocalSpace was to deliver stock options to Lorenso.

3.   Whether Lorenso can show that there VocalSpace made any misrepresentations to Lorenso regarding the agreement.

4.   Whether Lorenso ratified the agreement.

5.   Whether Lorenso can show that VocalSpace wrongfully exercised dominion over Lorenso's code.

6.   Whether Lorenso consented to any transfer of code.

7.   Whether Lorenso's counterclaims are time-barred.

## III.     STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      VocalSpace was founded in 2003 by James Adams ("Adams"), Randy Dryburgh ("Dryburgh"), and John Otken ("Otken") for the purpose of, among other things, designing,

developing and launching dynamic web-based internet marketing and streaming media systems. Declaration of Randy Dryburgh, attached hereto as Exhibit 1, at 2.

2.       VocalSpace's products include Hipcast.com ("Hipcast"), BYOAudio.com ("BYO"), AudioAcrobat.com ("AudioAcrobat") and SalesAgentPro.com ("SAP") (collectively, the "Products").   *Id*. at 3.   The Products all provide distinct video and audio multimedia capabilities for bloggers and website owners.   *Id*.

3.       Defendant Lorenso is a former employee of VocalSpace.   *Id*. at 4.   Before joining VocalSpace, Lorenso was employed by Direct2Prospect.com ("D2P"), a company started by Dryburgh, Adams and Enrique Garibay to develop web-based tools for network marketing companies.   *Id*.   Lorenso originally assisted D2P with developing source code for a lead generation website that sold marketing leads to network marketers.   *Id*.   Lorenso later helped Dryburgh, a software developer with more than twenty-five years experience writing source code, with developing AudioMarketer.com, a streaming media product and the precursor to what would eventually become BYO.   *Id*.   D2P transferred the rights to its multimedia source code from D2P to VocalSpace.   *Id.*   Lorenso continued as an employee with VocalSpace, serving as its Vice President of Technology and Chief Architect and providing web-development and programmer services to VocalSpace as a full-time employee.   *Id.*   At all times during the development of the Products VocalSpace paid Lorenso a salary and issued W-2s on his wages.   *Id*.

4. During his initial project for D2P, Lorenso began working with Dryburgh on the source code that eventually became BYO.   *Id*. at 5.   Following the transfer between D2P and VocalSpace, Lorenso began working as an employee for VocalSpace.   *Id*.

5. Lorenso received substantial monies and benefits as an employee of D2P and later VocalSpace. *Id.* at 6. Specifically, D2P paid Lorenso a salary ranging from $60,000 to $100,000 per year for his development services. *Id.* At all pertinent times, Lorenso's salary was significantly greater than that of any of the founders, Dryburgh, Adams and Garibay. *Id.* Moreover, during his time with VocalSpace, Lorenso earned bonuses totaling $25,000, received substantial employee benefits, and was given access to VocalSpace's proprietary and confidential trade secrets. *Id.* VocalSpace issued W-2s and paid payroll taxes in connection with Lorenso's employment with VocalSpace. *Id.* VocalSpace also controlled the scope, focus and extent of Lorenso's projects and the Code he developed for VocalSpace. Lorenso worked as an employee of VocalSpace at all times that VocalSpace was developing the Products and underlying Code.

6. Prior to 2005, during VocalSpace's early years of operation and before VocalSpace began earning significant profits, Lorenso was content earning a sizeable salary and providing programming services to the company. *Id.* at 7. On numerous occasions, VocalSpace offered Lorenso the opportunity to reduce his salary and take an ownership interest in VocalSpace, but Lorenso repeatedly declined. *Id.*

7. This suddenly changed in June 2005 when VocalSpace received significant interest from outside investors. *Id.* at 8. Days after committing to a major transaction that would allow a significant foreign investor to acquire an ownership stake in the company and purchase a license to use one of VocalSpace's Products, Lorenso used his position to pressure VocalSpace into an agreement to pay him a considerable bonus and give him a percentage ownership in the

company.  *Id*.  VocalSpace had no choice but to pay Lorenso $25,000 in bonuses and agree to offer Lorenso stock options equaling a ten percent interest in VocalSpace.  *Id*.

8. The agreement between the parties was memorialized in a July 29, 2005 "Commitment Letter").  *Id*. at 9.

9. Furthermore, VocalSpace performed its obligations under the agreement by providing Lorenso with the stock options at least by January 26, 2006.  *Id*. at 10.

10. During the period in which Lorenso claims he was an independent contractor with VocalSpace, Lorenso was personally responsible for any transfer code that he authored to any third party.  *Id.* at 11.

11. In each instance that code or any work product authored by Lorenso was sent to a third party, Lorenso delivered it himself.  *Id.* at 12.

## IV.    ARGUMENT AND AUTHORITIES

Defendant's counterclaims fail because at least one essential element of the counterclaims is missing as a matter of law.  Throughout Defendant Lorenso's dealings with VocalSpace, he consistently attempted to extract the benefits of ownership without any of the risks.  In fact, at all pertinent times to this action, Defendant Lorenso was the highest paid individual at VocalSpace.  *Id*. at 6.  His salary was significantly greater than the salaries of VocalSpace's founders.  *Id*.  Lorenso was even offered partnership early on—with a corresponding pay cut—and he rejected this offer.  *Id.* at 7. Lorenso then resorted to using his position of trust within the company to hold it hostage and extract an offer of shares by threatening to quit his employment.  *Id.* at 8.  However, when he was offered the shares, pursuant to the agreement, he arrived at the mistaken belief that he would incur large tax

liabilities if he exercised the them.   Under the misimpression that the tax liabilities would thwart his plan to get something for nothing, Lorenso refused to exercise the options.  *Id*. at 10. Now he asserts counterclaims in furtherance of his effort to obtain a windfall.   These counterclaims, however, each fail as a matter of law.   At least one element of each of the asserted claims cannot be maintained as a matter of law.   Further, the claims are time-barred and not subject to revival.  Therefore, summary judgment should be granted against Defendant Lorenso.

### A. Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment procedure is designed to isolate and dispose of factually-unsupported claims or defenses, and so a court may properly grant summary judgment in any case where the pleadings, discovery products on file, and affidavits show that there is no genuine issue of material fact.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The moving party has no burden to produce *any* evidence showing the absence of a genuine issue of material fact.  *Boudreaux v. Swift Transp. Co. Inc.*, 402 F.3d 536, 544 (relying on *Celotex Corp.*, 477 U.S. at 325, in rendering its decision to grant summary judgment to defendant).  Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

**B. Lorenso's Time Barred Claims Are Not Subject To Revival**

Lorenso's time barred claims of breach of contract, promissory estoppel, fraud, conversion and unjust enrichment are not subject to revival because they do not arise out of the same transaction or occurrence that provides the basis for VocalSpace's claims.  Section 16.069 of the Texas Civil Practices & Remedies Code provides that a counterclaim may be filed within thirty days after the answer date when it arises out of the same transaction or occurrence that is the basis of an action, that statute is inapplicable here.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.069 (Vernon 2008).  To determine what constitutes a transaction under Section 16.069, courts in Texas employ the relationship test.  *In re City of Coppell*, 219 S.W.3d 552 (Tex. App. Dallas 2007, pet. denied) (citing *Smith v. Ferguson*, 160 S.W.3d 115, 120 (Tex. App.—Dallas 2005, pet. denied).  To be logically related, the essential facts on which the claims are based "must be significantly and logically relevant to both claims."  *Id.*; *see also Smith v. Ferguson*, 160 S.W.3d 115 (Tex. App.—Dallas 2005, pet denied) (finding that where a counterclaim was based on a provision of the parties' settlement agreement resolving various post-divorce disputes, and not on the agreement incident to divorce, the ex-wife's untimely counterclaim against her ex-husband did not arise out of the "same transaction or occurrence" because the facts essential to counterclaim were not significantly or logically related to ex-husband's claims).

Plaintiff's and Defendant's claims do not arise out of the same transaction or occurrence.  In the present case, Plaintiff's claims arise out of Lorenso's misappropriating its confidential, proprietary, and copyrighted source code.  All of Lorenso's counterclaims are based upon entirely different facts and circumstances.  They are based upon either a 2005

agreement between the parties regarding stock options or purported transfer of source code by VocalSpace. Because Lorenso's counterclaims do not arise out of the same transaction or occurrence as VocalSpace's claims, the statute does not revive them.

### C. Lorenso's Breach of Contract Counterclaim Fails as a Matter of Law

#### 1.    Legal Standard Regarding Breach of Contract

Under Texas law, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Valero Marketing & Supply Company v. Kalama International*, 51 S.W.3d 345, 351 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (emphasis and citations omitted); *Smith International, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir.2007) (citations omitted). "When the evidence is undisputed regarding a person's conduct under a contract, the court as a matter of law determines whether the conduct shows performance or breach of a contract obligation." *Valero*, 51 S.W.3d at 351 (citing *Lafarge Corporation v. Wolff*, Inc., 977 S.W.2d 181, 186 (Tex. App.—Austin 1998, pet. denied)).

#### 2.    Lorenso's Breach of Contract Counterclaim Must Fail Because VocalSpace Performed Its Obligations.

Lorenso's breach of contract counterclaim fails because VocalSpace performed its obligations under the contract. The terms of the agreement were as follows:

> This letter shall serve as our commitment to issue to you an option to purchase a percentage of membership interest in Vocal Space, LLC. The terms of the option will be as follows:
>
> 1.    The option will be for 1,000,000 of the currently outstanding (including the Transcosmos interest to be issued) 10,000,000 units of interest in the LLC with a strike price of $0.001 per unit;

2.     The first 500,000 will be exercisable immediately subject only to a forfeiture provision should you leave the LLC of your own volition within 2 years;

3.     The remaining 500,000 will be issued pursuant to the soon to be created Employee Stock Option Plan. Pursuant to this Plan, your options will vest 25% per year for 4 years, however, in the event the company goes public or is sold, they will vest immediately.

Commitment Letter, attached hereto as Exhibit 1-A.  VocalSpace delivered on its promise by providing Lorenso with stock options according to these terms.  *See* Membership Unit Option Plan, Notice of Grant, attached hereto as Exhibit 1-B.  The Membership Unit Option Plan provides an option for 1,000,000 of the 10,000,000 units of interest in VocalSpace.  *Id.* at p. 1. It further provides a vesting schedule whereby the first 500,000 units are exercisable immediately—as of the date issued.  *Id.* Further, it provides the remaining 500,000 units will vest over a 4 year period at 25% per year.  *Id.* pp. 1-2.  The terms of the Membership Unit Option Plan are not in dispute, and even Lorenso has admitted that "the plan as currently offered adheres to the specifics outlined in the commitment letter dated July 29th, 2005."  *See* February 8, 2006, email from Lorenso to Dryburgh, attached hereto as Exhibit 2.  Thus, there is no genuine issue of material fact regarding VocalSpace's performance under the terms of the agreement. There can, therefore, be no breach of contract and Lorenso's claim must fail as a matter of law.

### 3.     Lorenso's Breach of Contract Counterclaim Must Fail Because Lorenso Ratified The Contract

Lorenso's breach of contract fails because he ratified the contract subsequent to learning of all the facts that provide the basis of his counterclaims.  Under Texas Law, the elements of ratification are: (1) approval by act, word, or conduct; (2) with full knowledge of

the facts of the earlier act; and (3) with the intention of giving validity to the earlier act. *See Jamail v. Thomas*, 481 S.W. 2d 485, 490 (Tex. Civ. App.-Houston [1st Dist.] 1972, writ ref'd n.r.e.).  In this case, each of these elements has been satisfied and, thus, Lorenso's breach of contract claim must fail.

Lorenso ratified the contract with full knowledge of the facts providing the basis of his counterclaim for breach by attempting to exercise the options on August 7, 2010. *See*, August 7, 2010, Ratification, attached hereto as Exhibit 3  Although his being an employee of VocalSpace was a condition of the stock options (making his attempt to exercise them ineffectual), he cannot now assert fraud-based counterclaims.  Lorenso ratified the contract attempt to exercise the options nullifying any claim for breach.

### 4.    Lorenso's Breach of Contract Claim Is Barred By Statute of Limitations

Defendant Lorenso's breach of contract counterclaim should be dismissed because it is time barred.  The statute of limitations for the breach of contract is four years. *Geraghty and Miller, Inc. v. Conoco Inc.*, 234 F.3d 917, 931 (5th Cir. 2000) (breach of contract).  The counterclaim is based upon VocalSpace's alleged promise to provide Lorenso 10% ownership in the company.  Doc No. 26, ¶¶ 33 and 38.  The counterclaim therefore accrued, at the latest, in January 2006, when Defendant Lorenso claims he was provided documents related to the exercise of options for stock in VocalSpace that did not conform to the alleged promise.  Doc. No. 26 at 10.  In fact, the email dated February 8, 2006, shows that Lorenso was aware of the facts providing the basis of his claims as early that date. *See* Ex. 2.  Since the Counterclaims were not filed until February 12, 2010, the breach of contract counterclaim was, without a doubt, untimely filed.  Further, the claim is not subject to revival as it does not arise out of the

same transaction or occurrence that provides the basis for VocalSpace's claims.  Therefore, the Court should grant summary judgment in favor of VocalSpace on Lorenso's breach of contract claim.

### D. Lorenso's Promissory Estoppel Claim Fails as a Matter of Law

#### 1. Legal Standard Regarding Promissory Estoppel

The elements of a promissory estoppel claim are a promise, the promisor foreseeing that the promisee will rely on it, and detrimental reliance by the promisee.  *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2007, no pet.).  The existence of an express contract between the parties "bars recovery ... under the theory of promissory estoppel as a matter of law."  *Fertic v. Spencer*, 247 S.W.3d 242, 250 (Tex. App.—El Paso 2007, pet. denied).

#### 2. Lorenso's Promissory Estoppel Claim Must Fail Due To The Existence Of An Express Contract

Here, the existence of an express contract negates Lorenso's promissory estoppel claim.  The parties do not dispute the existence of an express contract regarding stock options in VocalSpace.  Accordingly, Defendant Lorenso's promissory estoppel claim related to the stock options fails as a matter of law because the existence of an express contract bars recovery for promissory estoppel.

#### 3. Lorenso's Promissory Estoppel Counterclaim Is Time Barred.

Defendant Lorenso's promissory estoppel counterclaim should also be dismissed because it is time barred.  The statute of limitations for promissory estoppel is four years.  *A.I. Credit Corp. v. Thomas*, 201 Fed.Appx. 232, 235 (5th Cir. 2006).  The counterclaim is based upon VocalSpace's alleged promise to provide Lorenso 10% ownership in the company.  The

counterclaim therefore accrued, at the latest, in January 2006, when Defendant Lorenso claims he was provided documents related to the exercise of options for stock in VocalSpace that did not conform to the alleged promise.  In fact, the email dated February 8, 2006, shows that Lorenso was aware of the facts providing the basis of his claims as early as that date. Ex. 2. Since the Counterclaims were not filed until February 12, 2010, the promissory estoppel counterclaim was, without a doubt, untimely filed.  Further, the claim is not subject to revival as it does not arise out of the same transaction or occurrence that provides the basis for VocalSpace's claims.   Therefore, the Court should grant summary judgment in favor of VocalSpace on Lorenso's promissory estoppel counterclaim.

### E. Lorenso's Fraud-Based Claims Fails as a Matter of Law

#### 1.	Legal Standards Regarding Fraud

To maintain a fraud cause of action, Defendant Lorenso must allege that VocalSpace (1) made a material representation, (2) was false when made, (3) knew the representation was false, or made it recklessly without knowledge of its truth and as a positive assertion, (4) made the representation with the intent that plaintiffs should act upon it, and (5) Lorenso acted in reliance upon it and suffered injury as a result.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 322 (5th Cir. 2002); *Beijing Metals & Minerals Imp./Exp. Corp. v. Am. Bus. Ctr. Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993).  When a party ratifies an agreement that has been induced by fraud, the ratification generally vitiates the fraud, precluding rescission or recovery of fraud damages. *See, e.g., Teders v. Mercantile Nat'l Bank*, 235 S.W.2d 485, 488 (Tex. Civ. App.—Dallas 1950, writ ref'd n.r.e.).

#### 2.	Lorenso's Fraud-Based Claims Must Fail For Lack Of A False Statement

Lorenso's fraud-based claims must fail because each of the statements upon which it is based were true when they were made.  Lorenso alleges as follows:

43. In early July 2005, to prevent Lorenso from leaving VocalSpace, Dryburgh promised Lorenso 10% ownership in VocalSpace. In alternative to the breach of contract claim, Dryburgh and VocalSpace did not intend to follow through on this promise at the time the promise was made.

44. Dryburgh falsely represented in the July 29 Commitment Letter that options for 5% ownership in VocalSpace would be immediately exercisable. However, Dryburgh and VocalSpace delayed giving Lorenso the opportunity to exercise any options until four months after the Commitment Letter was first presented, long after the Transcosmos deal had closed. VocalSpace never intended to grant Lorenso immediately exercisable options.

45. Dryburgh falsely represented in the July 29 Commitment Letter that VocalSpace would have its attorney begin work on agreements for the option for 10% ownership stake. VocalSpace never intended to comply with this promise at the time it was made. Alternatively, Dryburgh failed to disclose that the attorney would take months to complete the agreements or that the agreements would have materially different terms than the Commitment Letter. Dryburgh and VocalSpace had a duty to disclose this information because they discovered new information that made the prior representation (that the attorney was drafting the agreements) false or misleading and Lorenso did not know and did not have an equal opportunity to discover that status of the drafting.

46. VocalSpace withheld the timing of the Transcosmos deal and failed to disclose that Lorenso would incur a large tax burden if he was given a 10% ownership interest after the Transcosmos deal closed. Dryburgh and VocalSpace had a duty to disclose this information because they knew that Lorenso did not know the timing or the tax burden issue and that Lorenso did not have an equal opportunity to discover the truth. In January 2006, when VocalSpace first purported to give Lorenso an opportunity to exercise options, Dryburgh hinted at the large tax burden and actively discouraged Lorenso from exercising the options by describing ways that majority shareholders can manipulate earnings to exclude minority shareholders from receiving distributions.

(Def. Answer p. 30.).  The allegations in paragraph 43 cannot support the fraud-based claims because VocalSpace, in fact, did follow through with its promise to provide 10% ownership to Defendants.  The allegations in paragraph 44, likewise, do not support Defendant's fraud-based

claims because VocalSpace provided immediately exercisable options as agreed.   Lorenso admitted as much in his February 8, 2006, email.   The allegations in paragraph 45 do not provide the requisite support because VocalSpace, in fact, did have its attorney prepare the requisite documents.   Further, Lorenso has absolutely no evidence showing that VocalSpace knew how long it would take to prepare the agreements.   Also, the allegations in paragraph 46 provide no support for the fraud allegations because Lorenso has not shown that there would be a large tax burden in connection with his exercising the options.   In fact, the tax burden would have been nominal.

### 3.   Lorenso's Fraud-Based Counterclaims Must Fail Because Lorenso Ratified The Contract

Lorenso's fraud-based counterclaims must fail because he ratified the contract from which they arise subsequent to learning of all the facts that provide the basis of his counterclaims.   Under Texas Law, if a party ratifies an alleged fraud, he cannot thereafter repudiate it.   *See Prescott-Phoenix Oil & Gas Co. v. Gilliland Oil Co.*, 241 S.W. 775, 779 (Tex. Civ. App. 1922).   In this case, it is clear that Lorenso attempted to ratify the contract. Therefore, he cannot now maintain his fraud claims.

Lorenso ratified the contract with full knowledge of the facts providing the basis of his fraud-based counterclaims by attempting to exercise the options on August 7, 2010.   *See*, August 7, 2010, Ratification, attached hereto as Exhibit 3.   Although his ratification was ineffectual, he cannot now assert fraud-based counterclaims.

Notably, if the contract in this case is deemed valid, then Defendant's fraud claim immediately fails.   *See, e.g*., *D'Lux Movers & Storage v. Fulton*, No. 2-06-019-CV, 2007 WL 1299400 (Tex. App.—Fort Worth May 3, 2007) (finding that the claim for fraud was barred by

the existence of a contract because the claim for fraud "sounds only in contract") (citing *Formosa Plastics Corp. v. Presido Engrs. & Contractors, Inc.*, 960 S.W.2d 41, 46-47 (Tex. 1998).

### 4.     Lorenso's Fraud-Based Counterclaims Are Time Barred.

Defendant Lorenso's fraud-based counterclaims, including his common law fraud, fraudulent concealment, negligent misrepresentation and statutory fraud counterclaims, should are time barred.  The statute of limitations for these claims is also four years, excepting the negligent misrepresentation claim which bears a two year statute of limitations.  *Geraghty and Miller, Inc.*, 234 F.3d at 931.  Like the breach of contract and promissory estoppel claims, these claims are based upon representations surrounding VocalSpace's alleged provision of a 10% ownership stake to Lorenso.  Doc. No. 26, ¶¶ 45 and 52.  Therefore, they also accrued, at the latest, in January 2006, when Defendant Lorenso received the documents related to the stock options.  Doc. No. 26 ¶ 10.  Further, the claims are not subject to revival as they do not arise out the same transaction or occurrence as VocalSpace's claims.  Since the Counterclaims were not filed until February 12, 2010, the fraud-based counterclaims are time barred as a matter of law.

### F.  Lorenso's Conversion Counterclaim Fails As A Matter Of Law.

#### 1.     Legal Standards Regarding Conversion

Under Texas law, a claim of conversion consists of the following elements: (1) Plaintiff legally possessed the property or was entitled to it; (2) Defendant wrongfully exercised dominion and control over the property, excluding Plaintiff; (3) Plaintiff demanded the property's return; and (4) Defendant refused the plaintiff's demand for the return of property.

*U.S. v. Boardwalk Motor Sports, Ltd.*, No. 4:08-cv-110, 2010 WL 1717994, (E.D. Tex. Jan. 29, 2010) (citing *Arthur v. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009).

Importantly, conversion involves taking of property without the owner's consent. *In re GPR Holdings, L.L.C.,* 318 B.R. 384, 390 (N.D. Tex. 2004) (citing *Pan E. Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1125 (5th Cir. 1988)). Under Texas law, a party cannot recover for conversion if the party making the claim agreed or assented to the act which he later claims amounted to conversion. *Taylor Pipeline Const., Inc. v. Directional Road Boring, Inc.*, 438 F.Supp.2d 696, 709 (E.D. Tex. 2006) (sub-subcontractor could not recover unpaid invoices based on conversion by the subcontractor, where the sub-subcontractor agreed to the payment plan pursuant to which the prime contractor would compensate the contractor); *see also Mack v. Newton*, 737 F.2d 1343, 1354 (5th Cir. 1984) (explaining that a party is barred from pursuing a conversion claim in instances where assent is given). Even if the owner impliedly consented to the disposition of the property, the owner may not maintain a claim for conversion. *Id.* (finding no conversion where the creditor claiming conversion consented to the transfer of gas in exchange for a receivable). *GPR Holdings, L.L.C.,* 318 B.R. 384, 390.

### 2.      Lorenso's Conversion Counterclaim Must Fail Because Of His Assent

In this case, assuming *arguendo* that Defendant is the owner of the code he claims VocalSpace converted, Defendant clearly assented to its transfer. Ex. 1 at 11. The crux of Lorenso's conversion claim is the transfer of code he authored while he contends he was an independent contractor at VocalSpace. *See generally*, Doc. No. 26. However, all code authored by Lorenso during the time he contends he was an independent contractor was transferred by Lorenso himself. Ex. 1 at 12. For example, Defendant sent the email including

the allegedly converted information to Transcosmos himself.  Therefore, it is impossible that he did not assent to the transmission of the information sent to Transcosmos.  In addition, even if Defendant did not explicitly consent to the transmission of the information, Defendant implicitly – emailing the allegedly converted information to third parites – consented to the transmission of the information he now claims was converted by VocalSpace.

In the alternative, assuming that the Independent Contractor Agreement is a valid agreement and that Defendant is the owner of the code he purports VocalSpace to have converted, Defendant's claim for conversion still fails.  Defendant cannot successfully maintain his claim for conversion against VocalSpace because he granted to VocalSpace a "non-exclusive, worldwide, **transferable**, royalty-free, and fully paid up right and license to any software, code, and/or technology developed by Independent Contractor [Lorenso, for purposes of this argument] in the performance of services hereunder."  *See* LarkSpark 66360 (emphasis added).  Therefore, even under the Independent Contractor Agreement, VocalSpace's use of the alleged "Lorenso code" was entirely proper.

### 3.    Lorenso's Conversion Claim Is Time Barred.

Furthermore, Defendant Lorenso's conversion counterclaim should be dismissed to the extent it is time barred.  The statute of limitations for a conversion claim is two years.  *Clower v. Wells Fargo Bank*, N.A., No. 2:07-CV-510 (TJW), 2009 WL 3083814, *2 (E.D. Tex. Sept. 23, 2009).  Defendants' claim is based upon the broad allegation that:

> VocalSpace wrongfully exercised dominion over the Lorenso Code by entering into contracts with other entities purporting to transfer certain exclusive rights to use the Lorenso Code. VocalSpace has also represented that it is the sole owner of portions of Lorenso Code.

Doc. No. 26, ¶ 54.  Therefore, the claim for conversion accrued when Defendant Lorenso

learned of the alleged contracts and representations.  Since the Counterclaims were not filed

until February 12, 2010, any conversion counterclaim based upon contracts or representations

Lorenso learned of prior to February 12, 2008, is time barred and should be dismissed.

### G. Lorenso's Unjust Enrichment Counterclaim Fails As A Matter Of Law

#### 1.     Legal Standards Regarding Unjust Enrichment

Unjust enrichment is an equitable principle holding that one who receives benefits

unjustly should make restitution for those benefits.  *Texas Integrated Conveyor Systems, Inc. v.*

*Innovative Conveyor*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied) (citing

*Villarreal v. Grant Geophysical, Inc*., 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004,

pet. denied).  Unjust enrichment occurs when the person sought to be charged has wrongfully

secured a benefit or has passively received one which it would be unconscionable to retain.  *Id.*

A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the

taking of an undue advantage.  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39,

41 (Tex. 1992).  Unjust enrichment characterizes the result or failure to make restitution of

benefits received under such circumstances as to give rise to an implied or quasi-contract to

repay.  *Villarreal*, 136 S.W.3d at 270.  "It has also been said that recovery under unjust

enrichment is an equitable right and is not dependent on the existence of a wrong."  *Texas*

*Integrated Conveyor Systems*, 300 S.W.3d at 367.  And before a constructive trust can be

imposed, there must be strict proof of unfair conduct or unjust enrichment on the part of the

wrongdoer.  *Hanblet v. Coveney*, 714 S.W.2d 126, 128 (Tex. App.—Houston [1st Dist] 1986,

writ ref'd n.r.e.).  Texas district courts consistently grant summary judgment motions and

dismiss claims for unjust enrichment when there is not "sufficient evidence that would enable a reasonable jury to find that a defendant has used the plaintiff's trade secret." *See, e.g., AMX Corp. v. Pilote Films*, 2007 WL 2254943 (N.D. Tex. Aug. 7, 2007) ) (finding that "evidence of sales of AMX products to TVSAT2 Design does not alone permit the reasonable finding that AMX 'used' Pilote's customer list, given that AMX never disclosed its customer list to Pilote and in fact introduced AMX to TVSAT2 Design during AMX's visit to France.").

### 2. Lorenso's Unjust Enrichment Claim Fails For Lack Of Fraud

None of the requisite elements of unjust enrichment can be established and the claim, therefore, fails as a matter of law.  Here, Lorenso has not offered any evidence, much less sufficient evidence, to prove that VocalSpace "has been unjustly enriched by representing to others that it is the sole owner of Lorenso's intellectual property" or that "VocalSpace has been unjustly enriched by its failure to convey 10% ownership in VocalSpace to Lorenso." *See* Defendants' Original Answer and Lorenso's Counterclaims (Doc. 26). Further, as discussed more fully above, the fraud-based claims that provide the basis of Lorenso's unjust enrichment claims fail as a matter of law.  Therefore, summary judgment on the unjust enrichment claim is proper.

### 3. Lorenso's Unjust Enrichment Claim Is Time Barred.

In addition, Defendant Lorenso's unjust enrichment counterclaim should be dismissed to the extent it is time barred.  The statute of limitations for this claim is two years. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869 (Tex. 2007).  The counterclaim is based upon VocalSpace's alleged failure to provide a 10% interest in the company.  Doc. No. 26, ¶ 61.  The counterclaim is also based upon VocalSpace's representations that it is the owner of

"Lorenso's intellectual property."  *Id.*, ¶ 60.  Therefore, it accrued, at the latest, in January 2006—when Defendant Lorenso received the documents related to the stock options—or when Lorenso learned of the alleged representations.  Since the Counterclaims were not filed until February 12, 2010, any unjust enrichment counterclaim based upon representations Lorenso learned of prior to February 12, 2008, is time barred and should be dismissed.  Further, any unjust enrichment counterclaim is not subject to revival because it is not based on the same transaction or occurrence as VocalSpace's claims.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant summary judgment in favor of Plaintiff on all of Defendant's counterclaims because, as a matter of law, Defendant cannot prove any of its claims.  Specifically, Plaintiff should be granted summary judgment as a matter of law on Defendant's breach of contract counterclaim because Defendant cannot show Plaintiff breached a contract with Defendant.  In addition, Plaintiff should be granted summary judgment as a matter of law on Defendant's promissory estoppel counterclaim because Defendant cannot disprove the existence of an express contract.  Further, Plaintiff should be granted summary judgment as a matter of law on Defendant's fraud counterclaim because Defendant cannot show that Plaintiff made any false misrepresentations to Defendant.  Plaintiff should also be granted summary judgment as a matter of law on Defendant's conversion counterclaim because Defendant cannot prove that Plaintiff converted anything of Defendant's.  Finally, Plaintiff should be granted summary judgment as a matter of law on Defendant's unjust enrichment counterclaim because Defendant cannot prove that

Plaintiff has been unjustly enriched by anything of Defendant's.  Plaintiff further requests such other and further relief to which it may be justly entitled.

Respectfully submitted,

/s/ Brian A. Colao
Brian A. Colao
Lead Attorney
Bar No. 007933278
Neal G. Massand
Bar No. 24039038
**DYKEMA GOSSETT PLLC**
1717 Main Street, Suite 4000
Dallas, Texas  75201
(214) 462-6400 (Telephone)
(214) 462-6401 (Facsimile)

**ATTORNEYS FOR PLAINTIFF
FIBER SYSTEMS INTERNATIONAL, INC.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record are deemed to have consented to electronic service and are being served with a copy of this document via email on November 5, 2010.

/s/Brian A. Colao
Neal G. Massand