UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| VOCALSPACE, LLC | § § § | |
| Plaintiff, | § § | |
| v. | § § | CASE NO. 4-09-CV-00350 |
| DANIEL D. LORENSO and LARKSPARK CORPORATION | § § § § | |
| Defendants. | § § | |

## DEFENDANTS' FIRST AMENDED ANSWER AND LORENSO'S FIRST AMENDED COUNTERCLAIMS

Defendants Daniel D. Lorenso ("Lorenso") and LarkSpark Corporation ("LarkSpark") hereby submit this Answer to Plaintiff's Original Complaint and Counterclaim Plaintiff Lorenso also hereby asserts Counterclaims seeking Declaratory Judgment, damages, and injunctive relief against Plaintiff VocalSpace, LLC ("VocalSpace"), based on VocalSpace's fraudulent behavior, breaches of contract, and misappropriation of Lorenso's software.

Defendants deny each and every allegation and averment of the Complaint, except as expressly admitted or otherwise denied as set forth herein below. In response to the corresponding paragraphs in Plaintiff's Complaint, Defendants answer as follows:

## INTRODUCTION

Defendants deny any misuse or misappropriation of VocalSpace's proprietary or

confidential information. Defendants admit that VocalSpace launches streaming media systems. Defendants lack sufficient knowledge to form a belief as to the truth of the amount that VocalSpace expended developing software and therefore deny this allegation. Defendants admit that Lorenso was a former employee of VocalSpace during the period of his employment, and was paid over $200,000 during the period of his employment, which included developing and maintaining VocalSpace's web services among other duties. Defendants deny any taking advantage of a position of trust. Defendants deny that either created, marketed, or sold any product that is essentially identical to any VocalSpace product. Defendants admit that they offer a web service named PubClip, but deny that it infringes on any VocalSpace product. Defendants deny ever using a fictitious name to solicit VocalSpace's customers. Defendants deny that their conduct has caused any harm to VocalSpace's business or given rise to any claims for relief. Defendants deny every other allegation contained in Plaintiff's introduction that has not been specifically addressed.

## JURISDICTION AND VENUE

1.     Defendants admit that jurisdiction is proper, but deny that Plaintiff has any valid claims for relief.

2.     Defendants admit that venue is proper in the Eastern District of Texas.

## PARTIES

3.     Defendants admit the allegations set forth in Paragraph 3.

4.     Defendants admit the allegations set forth in Paragraph 4.

5.     Defendants admit the allegations set forth in Paragraph 5.

## FACTUAL BACKGROUND

6. Defendants admit that VocalSpace has audio and video blogging products. Defendants otherwise lack sufficient knowledge to form a belief as to the truth of the matters asserted in Paragraph 6 and therefore deny the allegations set forth therein.

7. Defendants admit that VocalSpace's products include Hipcast.com, BYOAudio.com, AudioAcrobat.com, and SalesAgentPro.com. Defendants otherwise lack sufficient knowledge to form a belief as to the truth of the matters asserted in Paragraph 7 and therefore deny the allegations set forth therein.

8. Defendants admit that Lorenso worked for Direct2Prospect and VocalSpace. Defendants lack sufficient knowledge to form a belief as to who started Direct2Prospect and the reasons for starting it and therefore deny the allegations with respect to the founding of Direct2Prospect. Defendants deny all other allegations in Paragraph 8.

9. Defendants lack sufficient knowledge to form a belief as to transference of rights from Direct2Prospect to VocalSpace and the cessation of Direct2Prospect's operations, and therefore deny these allegations. Defendants admit that Lorenso held the titles of Vice President of Technology and Chief Architect, and provided web-development, programming, web service maintenance services to VocalSpace as a full-time employee. Defendants otherwise deny the allegations in Paragraph 9.

10. Defendants deny that they operate any infringing product. Defendants admit that LarkSpark was formed in 2007 and launched its first product in 2008.

11. Defendants admit that PubClip competes with some of VocalSpace's services, but deny that it is infringing. Defendants otherwise deny the allegations set forth in Paragraph 11.

12. Defendants deny the allegations set forth in Paragraph 12.

13. Defendants deny the allegations set forth in Paragraph 13.

14.     Defendants admit that generally source code is the underlying collection of files and algorithms needed to convert computer processes from human-readable to computer- executable form. Defendants admit that computer source code is copyrightable expression, sometimes trade secret, sometimes legally protected assets of a company. Defendants otherwise deny the allegations set forth in Paragraph 14.

15.     Defendants lack sufficient knowledge to form a belief as to the total amount of VocalSpace's investment in developing its products and therefore deny this allegation. Defendants otherwise deny the allegations set forth in Paragraph 15.

16.     Defendants admit that VocalSpace's products allow customers the capability of creating and managing podcasts, posting audio and video clips to personal websites and blogs, and recording audio and video via cell phone or other network-connected device, such as a webcam. Defendants admit that BYOAudio.com gives customers the capability to send personal emails containing audio and video clips and to record conversations, meetings, and conference calls via the telephone or VocalSpace's web-based recorder, or by uploading previously recorded audios in MP3 or WAV formats. Defendants otherwise deny the allegations set forth in Paragraph 16.

17.     Defendants lack sufficient knowledge to form a belief as to whether Hipcast is recognized and recommended by authors or whether Hipcast makes it easier for customers to post and disseminate podcasts, and therefore deny these allegations. Defendants otherwise admit the allegations set forth in Paragraph 17.

18.     Defendants lack sufficient knowledge to form a belief as to whether WOMEN is a valuable client for VocalSpace and provides VocalSpace with significant revenue stream, and therefore deny these allegations. Defendants deny that AudioAcrobat was developed and

released by VocalSpace. Defendants otherwise admit the allegations set forth in Paragraph 18.

19.    Defendants admit that SAP was developed by Lorenso when he worked as an independent contractor with VocalSpace. Defendants admit that SAP combines the functionality of BYO, AudioAcrobat and Hipcast into one bundled code base. Defendants admit that new products can be rolled-out without rewriting the entire existing code using SAP code. Defendants admit that BYO code could not be used to create AudioAcrobat, and that the existing code had to be substantially rewritten. Defendants lack sufficient knowledge to form a belief as to whether VocalSpace has partnered with clients to release numerous competitive ventures, and therefore deny this allegation. Defendants otherwise deny the allegations set forth in Paragraph 19.

20.    Defendants lack sufficient knowledge to form a belief as to the truth of the allegations set forth in Paragraph 20, and therefore deny them.

21.    Defendants admit the allegations set forth in Paragraph 21.

22.    Defendants admit that Lorenso was initially paid by D2P a $60,000 salary that was increased to $100,000, and that he received $25,000 in bonuses from VocalSpace.  Defendants admit that Lorenso was an employee of VocalSpace from July 2005 through August 2006. Defendants otherwise deny the allegations set forth in Paragraph 22.

23.    Defendants deny that Lorenso primarily assisted Dryburgh in creating new code to support VocalSpace's products, but admit that Lorenso created new code to support D2P's and VocalSpace's web services, and performed maintenance on the web services, which included correcting errors in code used by the web services and updating databases. Defendants otherwise admit the allegations set forth in Paragraph 23.

24.    Defendants deny that Lorenso worked for VocalSpace before 2005 and received offers for ownership in VocalSpace before 2005, and therefore deny the allegations as set forth in

Paragraph 24.

25.   Defendants admit that VocalSpace agreed to pay Lorenso a $25,000 bonus, payable with $10,000 up front and $15,000 after 45 days. Defendants admit that VocalSpace agreed to give Lorenso a 10% ownership in the company, and later promised to transfer stock options that were immediately exercisable to Lorenso. Defendants otherwise deny the allegations set forth in Paragraph 25.

26.   Defendants admit that Lorenso asked VocalSpace to fulfill their agreement to give him 10% ownership even if that meant reducing the tax burden associated with exercising any stock options. Defendants otherwise deny the allegations set forth in Paragraph 26.

27.   Defendants deny that Lorenso "used his knowledge of the Code to increase his leverage against VocalSpace" and that he "intended to ignore VocalSpace's exclusive ownership rights in the Code and Products and misappropriate VocalSpace's proprietary trade secrets." Defendants deny that Lorenso's letter itself granted VocalSpace any rights to use any code. Defendants otherwise admit the allegations set forth in Paragraph 27.

28.   Defendants deny that Lorenso held a position of trust in the company and that it threatened to undermine the security of the company. Defendants admit that VocalSpace notified Lorenso that it contended VocalSpace retained exclusive ownership rights to their code and that he could develop blog software if he did not use Code used by VocalSpace or create products in competition with VocalSpace. Defendants lack sufficient knowledge to form a belief as to the truth of the remaining allegations set forth in Paragraph 28, and therefore deny them.

29.   Defendants admit that Lorenso's last date of employment with VocalSpace was August 31, 2006. Defendants otherwise deny the allegations set forth in Paragraph 29.

30.   Defendants deny the allegations set forth in Paragraph 30.

31.   Defendants admit that VocalSpace engaged Lorenso as an independent contractor. Defendants deny that Lorenso ever engaged in unethical business conduct. Defendants lack sufficient knowledge to form a belief as to the truth of the remaining allegations set forth in Paragraph 31, and therefore deny them.

32.   Defendants admit that VocalSpace paid LarkSpark $6,750 per month for Lorenso working twenty-four hours per week on VocalSpace projects, and that later VocalSpace paid LarkSpark $11,250 per month for Lorenso working forty hours per week on VocalSpace projects. Defendants deny the remaining allegations set forth in Paragraph 32.

33.   Defendants deny that the bona fides of the IC Agreement are currently under investigation. Defendants otherwise admit the allegations set forth in Paragraph 33.

34.   Defendants deny the allegations set forth in Paragraph 34.

35.   Defendants admit that VocalSpace's products were established and in use by the general public. Defendants deny the remaining allegations set forth in Paragraph 35.

36.   Defendants deny that Lorenso "went part-time" in April 2008. Defendants otherwise admit the allegations set forth in Paragraph 36.

37.   Defendants deny the allegations set forth in Paragraph 37.

38.   Defendants deny that Lorenso's product is an "Infringing Product," but otherwise admit the allegations set forth in Paragraph 38.

39.   Defendants deny that Lorenso stayed on for an additional two weeks after the announcement. Defendants deny that VocalSpace granted Lorenso remote access to create documentation, and aver that Lorenso already had remote access. Defendants otherwise admit the allegations set forth in Paragraph 39.

40.   Defendants deny that the access log should have contained numerous entries, and that

Lorenso had accessed the network such that logs were not generated or had deleted log entries. Defendants lack sufficient knowledge to form a belief as to the truth of the remaining matters asserted in Paragraph 40, and therefore deny them.

41.    Defendants deny that Lorenso made any modifications without authorization, but admit and aver that any modification made by Lorenso was done with VocalSpace's express authorization. Defendants otherwise deny the allegations set forth in Paragraph 41.

42.    Defendants admit that Lorenso represented that he deleted all of VocalSpace's proprietary information from his personal computers and storage devices. Defendants otherwise deny the allegations set forth in Paragraph 42.

43.    Defendants admit that VocalSpace used active locked-down firewalls as well as other security mechanisms, including access logging, and that physical access to equipment also requires a keycard matched to fingerprint identification, as well as access through an industrial strength lock into the server cage. Defendants otherwise lack sufficient knowledge to form a belief as to the truth of the allegations set forth in Paragraph 43, and therefore deny them.

44.    Defendants deny the allegations set forth in Paragraph 44. Defendants lack sufficient knowledge to form a belief as to the truth of the amount spent overhauling VocalSpace's existing computer systems as asserted in Paragraph 44, and therefore deny it.

45.    Defendants admit that VocalSpace offered Lorenso an ownership interest in Hipcast and Lorenso rejected the offer. Defendants deny the remaining allegations set forth in Paragraph 45.

46.    Defendants admit the allegations set forth in Paragraph 46 to the extent that "the Code" refers to code created or modified by Lorenso while he was an independent contractor with VocalSpace, but otherwise deny these allegations.

47.    As set forth in Paragraph 47, Defendants deny that PubClip is an infringing product. Defendants admit that some of PubClip's functionality is similar to some of VocalSpace's products, as described in the allegations of Paragraph 47. Defendants deny that Lorenso repackaged VocalSpace's products.

48.    Defendants deny that the code posted was VocalSpace's code and that PubClip is an infringing product, and deny that Lorenso changed the code from "VS" to "LS." In actual fact, the original code had an "LS" and was changed to "VS" when Lorenso ported it to VocalSpace as an independent contractor. Otherwise, Defendants admit the allegations set forth in Paragraph 48.

49.    Defendants deny the allegations set forth in Paragraph 49.

50.    Defendants admit that Lorenso contacted WOMEN, but deny that he used a fictitious name or advertised his services. Defendants otherwise deny the allegations set forth in Paragraph 50.

51.    With respect to the allegations contained in Paragraph 51, Defendants admit that Lorenso contacted WOMEN using his real name and writing that he was working on his own projects and wanted to set up a meeting. Defendants deny that Lorenso ever used any name other than his real name.

52.    Defendants lack sufficient knowledge to form a belief as to the truth of the allegation that Charles McKeever is a VocalSpace business associate and close friend of Dryburgh's as asserted in Paragraph 52, and therefore deny it. Defendants deny that PubClip is an infringing product. Defendants admit that Lorenso contacted Charles McKeever and stated that PubClip integrated the features of some of VocalSpace's products. Defendants otherwise deny the allegations set forth in Paragraph 52.

53.     Defendants deny that Lorenso and LarkSpark needed VocalSpace's authorization to use code created by Lorenso as an independent contractor. Defendants otherwise admit the allegations set forth in Paragraph 53.

54.     Defendants deny the allegations set forth in Paragraph 54.

55.     Defendants deny the allegations set forth in Paragraph 55.

56.     Defendants deny the allegations set forth in Paragraph 56.

## IV. COUNT 1: COPYRIGHT INFRINGEMENT

57.     Defendants repeat and reassert the answers with respect to the allegations set forth in Paragraphs 1-56 of this Answer.

58.     Defendants deny the allegations set forth in Paragraph 58.

59.     Defendants admit that part of the Code was authored as work made for hire, but deny that all the code was work made for hire.  In fact, part of the code was authored by the defendant while outside the scope of his employment with plaintiff during the time period of May 16, 2006 until the termination of Dante Lorenso's employment in Summer or Fall of 2006.

60.     Defendants deny the allegations set forth in Paragraph 60.

61.     Defendants lack sufficient knowledge to form a belief as to the truth of the matters asserted in Paragraph 61, and therefore deny the allegations set forth therein.

62.     Defendants lack sufficient knowledge to form a belief as to the truth of the matters asserted in Paragraph 62, and therefore deny the allegations set forth therein.  Defendants are not aware if plaintiff published the code.

63.     Defendants deny the allegations set forth in Paragraph 63.

64.     Defendants deny the allegations set forth in Paragraph 64.

65.     Defendants deny the allegations set forth in Paragraph 65.

66.     Defendants admit that they received a cease and desist letter from VocalSpace, but deny having used "the Code and its derivatives" as alleged in Paragraph 66.

67.     Defendants deny the allegations set forth in Paragraph 67.

68.     Defendants deny the allegations set forth in Paragraph 68.

69.     Defendants deny the allegations set forth in Paragraph 69.

## COUNT 2: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030

70.     Defendants repeat and reassert the answers with respect to the allegations set forth in Paragraphs 1-69 of this Answer.

71.     Defendants lack sufficient knowledge to form a belief as to the truth of the matters asserted in Paragraph 71, and therefore deny the allegations set forth therein.

72.     Defendants deny the allegations set forth in Paragraph 72.

73.     Defendants deny the allegations set forth in Paragraph 73.

74.     Defendants deny the allegations set forth in Paragraph 74.

75.     Defendants deny the allegations set forth in Paragraph 75.

76.     Defendants deny the allegations set forth in Paragraph 76.

77.     Defendants deny the allegations set forth in Paragraph 77.

## COUNT 3: MISAPPROPRIATION OF TRADE SECRETS AND INEVITABLE DISCLOSURE

78.     Defendants repeat and reassert the answers with respect to the allegations set forth in Paragraphs 1-69 of this Answer.

79.     Defendants lack sufficient knowledge to form a belief as to the truth of the matters asserted in Paragraph 79, and therefore deny the allegations set forth therein.

80.     Defendants admit that Lorenso served as a lead programmer, had the title Vice President of Technology and Chief Architect, and had access to code used by VocalSpace and computer systems. Defendants otherwise deny the allegations set forth in Paragraph 80.

81.     Defendants deny the allegations set forth in Paragraph 81.

82.     Defendants deny the allegations set forth in Paragraph 82.

83.     Defendants deny the allegations set forth in Paragraph 83

84.     Defendants deny the allegations set forth in Paragraph 84

85.     Defendants deny the allegations set forth in Paragraph 85

86.     Defendants deny the allegations set forth in Paragraph 86

87.     Defendants admit the allegations set forth in Paragraph 87.

88.     Defendants deny the allegations set forth in Paragraph 88

89.     Defendants deny the allegations set forth in Paragraph 89.

## COUNT 4: BREACH OF FIDUCIARY DUTY

90.     Defendants repeat and reassert the answers with respect to the allegations set forth in Paragraphs 1-89 of this Answer.

91.     Defendants deny the allegations set forth in Paragraph 91

92.     Defendants deny the allegations set forth in Paragraph 92

93.     Defendants deny the allegations set forth in Paragraph 93.

94.     Defendants deny the allegations set forth in Paragraph 94.

## COUNT 5: CONSTRUCTIVE FRAUD

95.     Defendants repeat and reassert the answers with respect to the allegations set forth in Paragraphs 1-89 of this Answer.

96.   Defendants deny the allegations set forth in Paragraph 96.

97.   Defendants deny the allegations set forth in Paragraph 97.

98.   Defendants deny the allegations set forth in Paragraph 98.

## COUNT 6: UNFAIR COMPETITION

99.   Defendants repeat and reassert the answers with respect to the allegations set forth in Paragraphs 1-98 of this Answer.

100.  Defendants deny the allegations set forth in Paragraph 100.

101.  Defendants deny the allegations set forth in Paragraph 101.

102.  Defendants deny the allegations set forth in Paragraph 102.

103.  Defendants deny the allegations set forth in Paragraph 103.

104.  Defendants deny the allegations set forth in Paragraph 104.

## COUNT 7: FRAUD AND FRAUDULENT CONCEALMENT

105.  Defendants repeat and reassert the answers with respect to the allegations set forth in Paragraphs 1-104 of this Answer.

106.  Defendants deny the allegations set forth in Paragraph 106.

107.  Defendants admit that VocalSpace granted Lorenso broad access to its systems. Defendants otherwise deny the allegations set forth in Paragraph 107.

108.  Defendants deny the allegations set forth in Paragraph 108.

109.  Defendants deny the allegations set forth in Paragraph 109.

110.  Defendants admit that VocalSpace agreed in May 2008 to Lorenso reducing his hours to work twenty-four hours per week, and that at that time Lorenso had complete access to the code used by VocalSpace and its computer systems. Defendants deny that such access was

granted at a later date or based on Lorenso's representations that he was working on products unrelated to VocalSpace's business, as alleged in Paragraph 110. Defendants otherwise deny the allegations set forth in Paragraph 110.

111.   Defendants admit that Lorenso worked the last three weeks of his time as an independent contractor documenting VocalSpace code and products. Defendants otherwise deny the allegations set forth in Paragraph 111.

112.   Defendants deny the allegations set forth in Paragraph 112.

113.   Defendants deny the allegations set forth in Paragraph 113.

114.   Defendants deny the allegations set forth in Paragraph 114.

115.   Defendants deny the allegations set forth in Paragraph 115.

116.   Defendants deny the allegations set forth in Paragraph 116.

117.   Defendants deny the allegations set forth in Paragraph 117.

118.   Defendants deny the allegations set forth in Paragraph 118.

## COUNT 8: UNJUST ENRICHMENT

119.   Defendants repeat and reassert the answers with respect to the allegations set forth in Paragraphs 1-118 of this Answer.

120.   Defendants deny the allegations set forth in Paragraph 120.

121.   Defendants deny the allegations set forth in Paragraph 121.

## COUNT 9: TEXAS THEFT LIABILITY ACT

122.   Defendants repeat and reassert the answers with respect to the allegations set forth in Paragraphs 1-121 of this Answer.

123.   Defendants deny the allegations set forth in Paragraph 123

124.  Defendants deny the allegations set forth in Paragraph 124

125.  Defendants deny the allegations set forth in Paragraph 125.

## COUNT 10: ACCOUNTING

126.  Defendants repeat and reassert the answers with respect to the allegations set forth in Paragraphs 1-125 of this Answer.

127.  Defendants deny the allegations set forth in Paragraph 127.

128. Defendants admit that VocalSpace seeks the relief requested, but deny any wrongdoing as alleged in Paragraph 128.

## DAMAGES/PUNITIVE DAMAGES

129.  Defendants repeat and reassert the answers with respect to the allegations set forth in Paragraphs 1-128 of this Answer.

130.  Defendants deny the allegations set forth in Paragraph 130.

131.  Defendants deny the allegations set forth in Paragraph 131.

132.  Defendants deny the allegations set forth in Paragraph 132.

## JURY DEMAND

133.  No response is required to the allegations of Paragraph 133.

## PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to the relief sought or any other relief whatsoever.

## AFFIRMATIVE DEFENSES

*First Affirmative Defense*

1.    The claims of the Complaint are barred in whole or in part by the doctrine of scenes a faire.

## Second Affirmative Defense

2.    The claims of the Complaint are barred in whole or in part by the merger doctrine.

## Third Affirmative Defense

3.    The claims of the Complaint are barred in whole or in part by the public domain doctrine.

## Fourth Affirmative Defense

4.    The claims of the Complaint are barred in whole or in part by the independent discovery doctrine.

## Fifth Affirmative Defense

5.    The claims of the Complaint are barred in whole or in part by preemption.

## Sixth Affirmative Defense

6.    The claims of the Complaint are barred in whole or in part by the doctrine of unclean hands.

## Seventh Affirmative Defense

7.    The claims of the Complaint are barred in whole or in part by the doctrines of laches,

waiver and/or estoppel.

*Eighth Affirmative Defense*

8.      The claims of the Complaint are barred in whole or in part by fraud on the Copyright Office.

*Ninth Affirmative Defense*

9.      The claims of the Complaint are barred in whole or in part by copyright misuse.

*Tenth Affirmative Defense*

10.    The claims of the Complaint are barred in whole or in part by statutes of limitations.

*Eleventh Affirmative Defense*

11.    The claims of the Complaint are barred in whole or in part by fraud.

*Twelfth Affirmative Defense*

12.    The damages claimed in the Complaint are limited in whole or in part by failure to mitigate damages.

*Thirteenth  Affirmative Defense*

13.    The claims of the Complaint are barred in whole or in part by invalidity of Copyright. Plaintiff is not the owner of all the code that they filed with the Copyright office.    Some of the Copyrighted code was authored by Lorenso while outside the scope of his employment with

plaintiff and other parts of the copyrighted code were authored by third parties.

## COUNTERCLAIM PLAINTIFF LORENSO'S COUNTERCLAIMS

Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendants, as Counterclaim Plaintiffs, hereby counterclaim against Plaintiff and allege as follows:

### I. PARTIES

1. Defendant and Counterclaim Plaintiff Daniel Lorenso, an individual, is already properly before the Court in this case.

2. Plaintiff and Counterclaim Defendant VocalSpace, LLC, a limited liability company, is already properly before the Court in this case.

### II. JURISDICTION AND VENUE

3. This Court has ancillary, supplemental, and/or federal jurisdiction over the counterclaims, and venue is proper in this judicial district and division.

### III. FACTS UNDERLYING THE COUNTERCLAIMS

4. Lorenso was an employee of VocalSpace from July 2005 through August 2006, and held the title of Chief Architect. As an employee, Lorenso created, developed, and maintained web services.

5. In June 2005, a vice-president of a gaming company expressed interest in Lorenso and began recruiting him for a high-salaried position in Florida. The company arranged for Lorenso to fly down at its expense for a series of interviews.

6. Lorenso informed VocalSpace about this opportunity and told VocalSpace that he

would stay in return for an ownership interest in the company. Around this time, VocalSpace was also negotiating with a Japanese company, Transcosmos, Inc., for about a $1,250,000 capital investment in exchange for 10% ownership interest in VocalSpace. Although Lorenso was generally aware of the pending deal, VocalSpace did not disclose to Lorenso any specific information about the deal or its timing.

7.     Because Lorenso was the only person at VocalSpace with the requisite technical expertise at the time, VocalSpace wanted Lorenso to internationalize its services and to add other features in preparation for the Transcosmos deal. Lorenso and Randy Dryburgh met in July to discuss Lorenso's future with VocalSpace. To keep Lorenso at VocalSpace and working to improve the web services, at least until the Transcosmos deal closed, VocalSpace promised Lorenso a salary increase, bonus, and 10% ownership interest in VocalSpace. In exchange for the 10% interest in VocalSpace, Lorenso agreed to cancel his interview with the Florida company, and to stay at VocalSpace developing new features for the web services requested by Transcosmos. VocalSpace instructed Lorenso not to tell Transcosmos about the 10% ownership interest that he had been promised.

8.     On or about July 29, 2005, VocalSpace sent Lorenso a letter acknowledging its commitment to issue options to Lorenso for 10% ownership interest in the company (the "Commitment Letter"). The letter, however, attempted to change the terms of VocalSpace's agreement with Lorenso, and stated that Lorenso could immediately exercise an option for 500,000 shares (or 5% ownership interest) in VocalSpace. The remaining 5% ownership would be issued pursuant an employee stock option plan and would vest over four years or upon the company being sold or going public. These terms were not included in the simple 10% ownership interest agreement originally reached by Lorenso and VocalSpace.

9.     The Commitment Letter represented that the company attorney would begin the process of drafting agreements. Despite its representation, VocalSpace never delivered the 10% interest in the company to Lorenso. Instead, VocalSpace delayed, stringing Lorenso along so that he would continue working for the company. In early September 2005, the Transcosmos deal closed, netting VocalSpace and its principals a large sum of cash. But VocalSpace never fulfilled its agreement to convey to Lorenso a 10% ownership stake in the company.

10.     Moreover, despite sending the Commitment Letter on July 29, 2005, VocalSpace did not give Lorenso documents relating to the exercise of options until January 2006. VocalSpace's delay made it impossible for Lorenso to exercise these options. By delaying the exercise of options until after the Transcosmos deal had closed, VocalSpace ensured that a large tax burden would be incurred by the exercise of the options. In addition, the option documents did not conform to the terms outlined in the Commitment Letter. By this time, VocalSpace had received all it needed from Lorenso.

11.     Because of the enormous tax burden and the fact that the options documents delivered to him in January did not conform to the Commitment Letter, Lorenso was precluded from exercising the options right away, which had been VocalSpace's intent all along.

12.     In mid to late 2006, Lorenso decided that he would start a blog service that would not compete with VocalSpace, but that would likely contain software that would be helpful to VocalSpace. Out of an abundance of caution, Lorenso told VocalSpace of his intentions to start a blog service and offered VocalSpace an agreement ensuring that any software that he created for the service remained his intellectual property while allowing VocalSpace to also use the software for its services.

13.     Specifically, on May 16, 2006, Lorenso sent an email to Randy Dryburgh informing

that Lorenso was going to be developing projects outside his employment with plaintiff at nights and weekends and on his own time.   The email made it clear that any of these personal projects would be 100% owned by Lorenso.   Lorenso did in fact create some personal  computer code projects between May 16, 2006 and August 2006 (the "2006 Lorenso Code").   Upon information and belief, some of that code from Lorenso's personal projects in that May through August 2006 time period was taken by plaintiff and filed with the copyright office in Copyright registration Txu001607950.   The plaintiff represented to the copyright office that it was the owner of the 2006 Lorenso Code, when in fact plaintiff did not have ownership of that personal code created by Lorenso outside the scope of his employment.   The actions by the plaintiff invalidate the copyright that it filed with the Copyright office.

14.   In early August 2006, VocalSpace demanded that Lorenso sign non-compete and non-disclosure agreements or have his employment with VocalSpace terminated. Lorenso refused to sign these agreements and VocalSpace terminated his employment. At this time, other than Lorenso, no one at VocalSpace had expertise on how to maintain and operate the web services that Lorenso had created and developed. So, at VocalSpace's request and with its express approval, Lorenso spent his final weeks creating documentation to enable VocalSpace to operate without him. Lorenso's employment with VocalSpace terminated at the end of August 2006.

15.   In late December 2006, VocalSpace, lacking the requisite expertise in maintaining its services, contacted Lorenso and asked him to return as an independent contractor. Lorenso accepted and entered into an independent contractor agreement with VocalSpace on January 8, 2007 (the "Independent Contractor Agreement").

16.   The Independent Contractor Agreement granted VocalSpace a non-exclusive license

to intellectual property belonging to Lorenso (the "2007 Lorenso Code") that he incorporated into VocalSpace products and services. Lorenso did not grant VocalSpace any exclusive rights to the 2007 Lorenso Code or the right to represent to others that VocalSpace owned or had the right to exclusively license the 2007 Lorenso Code.

17.   Lorenso worked for VocalSpace as an independent contractor from January 2007 until his departure in June 2008. During this time, he incorporated the 2007 Lorenso Code into VocalSpace's products. He also changed VocalSpace's software by incorporating his proprietary "DICron" module, a "PDO" (PHP Data Object) layer, as well as modifying the "Content Snippet" system, the "Action," "Pager," "Order," and "Filter" objects, the "Folder Number Counts," and the "Config File Loader." Lorenso modified VocalSpace web services to interface with "Red5," and overhauled VocalSpace's "Transcoder" module. Some of the 2007 Lorenso Code incorporated into VocalSpace web services came directly from Lorenso's LarkSpark projects. When he ported certain library files from LarkSpark to VocalSpace, Lorenso changed the prefix from "LS_" (for LarkSpark) to "VS_" (for VocalSpace).

18.   In June 2008, almost two years after VocalSpace terminated his employment, Lorenso notified VocalSpace that he intended to develop a competing service. Upon the announcement, VocalSpace again asked  Lorenso to document VocalSpace web  services.  He agreed and worked for about three weeks creating this documentation to enable VocalSpace to operate without him.

19.   Near the end of July 2008, Lorenso and LarkSpark launched the beta version of PubClip.com web service ("PubClip").

20.   In late August 2008, VocalSpace sent Lorenso a cease and desist letter threatening him with legal action if he did not terminate his competing service, PubClip. But because

Lorenso had not executed any non-compete agreement with VocalSpace, he lawfully continued the operations of PubClip.

21.   In mid-September 2008, in an attempt to prevent Lorenso from competing with it, VocalSpace served Lorenso with a temporary restraining order, issued by the District Court of Collin County, Texas, 416th Judicial District (the "State Court"), restraining Lorenso and LarkSpark from: "a. Communicating to the public that it is the developer of the Software; b. Utilizing the Software; and c. Engaging in any business activity for or on behalf of partners of Plaintiff which utilizes the Software.'" The State Court dissolved this restraining order after a hearing on the matter, and denied VocalSpace a temporary injunction. VocalSpace refused to participate in discovery after that point in the State Court action and ultimately non-suited its case the day of trial when the State Court banned VocalSpace from calling any witnesses because of its inexcusable refusal to comply with its discovery obligations. VocalSpace was sanctioned for its discovery abuses.

## COUNT 1: Declaratory Judgment

22.   Lorenso incorporates paragraphs 1-20 of the Counterclaims as though fully set forth herein.

23.   Lorenso petitions the Court pursuant to the Declaratory Judgments Act, Chapter 37 of the Civil Practice and Remedies Code of Texas, for construction of the Independent Contractor Agreement and a declaration that the contract is enforceable, that Lorenso owns the 2007 Lorenso Code, that VocalSpace is merely a non-exclusive licensee of the 2007 Lorenso Code, and that PubClip does not infringe any copyright held by VocalSpace.

24.   A justiciable controversy exists because VocalSpace fails to acknowledge the Independent Contractor Agreement and the rights that Lorenso has in the 2007 Lorenso Code.

VocalSpace has represented to others that it is the sole owner of the 2007 Lorenso Code, and has purported to grant an exclusive license to use the 2007 Lorenso Code. VocalSpace also continues to assert that the PubClip service infringes VocalSpace's copyright in its code.

25.   Lorenso requests the Court declare:

a)  Lorenso owns code that he developed as an independent contractor with VocalSpace.

b)  VocalSpace is a non-exclusive licensee of code that Lorenso developed as an independent contractor with VocalSpace.

c)  PubClip does not infringe any copyright held by VocalSpace. VocalSpace has no right in code that LarkSpark and Lorenso use in its PubClip service. Lorenso has the right, without the permission of VocalSpace, to license, use, and sell world-wide the code used in the PubClip service.

### COUNT 2: Request for Injunctive Relief - 2007 Lorenso Code

26.   Lorenso incorporates paragraphs 1-24 of the Counterclaims as though fully set forth herein.

27.   VocalSpace has wrongfully exercised dominion over the 2007 Lorenso Code by entering into contracts with other entities purporting to transfer certain exclusive rights to use the 2007 Lorenso Code. VocalSpace has also represented that it is the sole owner of portions of 2007 Lorenso Code. VocalSpace has also shared use of the 2007 Lorenso Code beyond the scope of its non-exclusive license.

28.   Lorenso did not consent to VocalSpace's grant of exclusive rights to his intellectual property, nor did he consent to VocalSpace misrepresenting itself as the owner of the 2007 Lorenso Code. VocalSpace's conduct is without right or entitlement.

29.   VocalSpace's past and continued assertion of itself as owner of the 2007 Lorenso Code threatens irreparable harm to the rights of Lorenso in the 2007 Lorenso Code.

30.   Lorenso has and will continue to be damaged and injured by VocalSpace's conduct by loss of and permanent injury to the value of the Lorenso Code, and Lorenso's ability to appropriate the 2007 Lorenso Code.

31.   Lorenso has no adequate remedy at law for the injuries just described. The injuries and losses are continuing. The property and rights involved are unique and irreplaceable, so that it will be impossible to accurately measure, in monetary terms, the damages caused by VocalSpace's conduct.

32.   For the reasons stated in this pleading, Lorenso requests that, after trial, this Court grant permanent injunctive relief enjoining VocalSpace, its principals, and agents as follows:

a)   VocalSpace is enjoined from representing to others that it is the sole owner of code incorporating software developed by Lorenso as an independent contractor.

b)   VocalSpace is enjoined from representing to others that it has the power to grant an exclusive license for code incorporating software developed by Lorenso as an independent contractor.

c)   VocalSpace, its owners, principals, and agents are enjoined from disclosing, outside of VocalSpace, the code incorporating software developed by Lorenso as an independent contractor.

d)   VocalSpace must disclose any declaratory judgment issued in this case to its licensees, partners, and any other person or entity with whom VocalSpace has disclosed code incorporating software developed by Lorenso as an independent contractor.

**COUNT 3: Breach of Contract**

Defendants First Amended Answer and First Amended Counterclaim                    25

33.   Lorenso incorporates paragraphs 1-31 of the Counterclaims as though fully set forth herein.

34.   VocalSpace and Lorenso had a valid, enforceable contract whereby VocalSpace promised Lorenso 10% interest in VocalSpace in exchange for Lorenso's cancellation of his interview with the Florida company and his continued work developing VocalSpace's web services.

35.   Lorenso fulfilled his promise by continuing his employment with VocalSpace through the Transcosmos deal and continued for a year thereafter until VocalSpace terminated his employment.

36.   VocalSpace never delivered the 10% stake in VocalSpace to Lorenso.

37.   As a result, VocalSpace breached its contract with Lorenso, and Lorenso did not obtain the benefit of his bargain with VocalSpace, thereby Lorenso suffered loss and damage.

## **COUNT 4: Promissory Estoppel**

38.   Lorenso incorporates paragraphs 1-36 of the Counterclaims as though fully set forth herein.

39.   In the alternative to the breach of contract claim, VocalSpace promised Lorenso a 10% ownership interest in VocalSpace and this promise is enforceable.

40.   It was foreseeable that Lorenso would rely upon the promise because Lorenso wanted an ownership stake in VocalSpace.

41.   Relying on this promise, Lorenso continued to work for VocalSpace and declined to pursue other opportunities to his detriment.

## **COUNT 5: Common law Fraud and Fraudulent Concealment and Negligent Misrepresentation**

42.   Lorenso incorporates paragraphs 1-40 of the Counterclaims as though fully set forth herein.

43.   Randy Dryburgh, in his capacity as CEO of VocalSpace, made a number of material misrepresentations to Lorenso with respect to the promised 10% ownership in VocalSpace.

44.   In early July 2005, to prevent Lorenso from leaving VocalSpace, Dryburgh promised Lorenso 10% ownership in VocalSpace. In alternative to the breach of contract claim, Dryburgh and VocalSpace did not intend to follow through on this promise at the time the promise was made.

45.   Dryburgh falsely represented in the July 29 Commitment Letter that options for 5% ownership in VocalSpace would be immediately exercisable. However, Dryburgh and VocalSpace delayed giving Lorenso the opportunity to exercise any options until four months after the Commitment Letter was first presented, long after the Transcosmos deal had closed. VocalSpace never intended to grant Lorenso immediately exercisable options.

46.   Dryburgh falsely represented in the July 29 Commitment Letter that VocalSpace would have its attorney begin work on agreements for the option for 10% ownership stake. VocalSpace never intended to comply with this promise at the time it was made. Alternatively, Dryburgh failed to disclose that the attorney would take months to complete the agreements or that the agreements would have materially different terms than the Commitment Letter. Dryburgh and VocalSpace had a duty to disclose this information because they discovered new information that made the prior representation (that the attorney was drafting the agreements) false or misleading and Lorenso did not know and did not have an equal opportunity to discover that status of the drafting.

47.   VocalSpace withheld the timing of the Transcosmos deal and failed to disclose that

Lorenso would incur a large tax burden if he was given a 10% ownership interest after the Transcosmos deal closed. Dryburgh and VocalSpace had a duty to disclose this information because they knew that Lorenso did not know the timing or the tax burden issue and that Lorenso did not have an equal opportunity to discover the truth. In January 2006, when VocalSpace first purported to give Lorenso an opportunity to exercise options, Dryburgh hinted at the large tax burden and actively discouraged Lorenso from exercising the options by describing ways that majority shareholders can manipulate earnings to exclude minority shareholders from receiving distributions.

48.   All of these false statements and fraudulent concealments made by VocalSpace and/or Dryburgh concerned material facts because, had he known the truth, Lorenso would not have continued to work for VocalSpace and would have pursued other opportunities.

49.   All of these false statements and fraudulent concealments made by VocalSpace and/or Dryburgh were made with the intent of inducing Lorenso to continue working for them and to forego other opportunities in the reasonable belief encouraged by VocalSpace and Dryburgh that he would be able to become a part owner of VocalSpace.

50.   Lorenso had no reason to believe that VocalSpace did not intend to follow through on its promises or that VocalSpace and Dryburgh were making misrepresentations and concealing information. Lorenso relied on these misrepresentations and fraudulent concealments to his detriment by continuing to work for VocalSpace, and by declining to pursue another opportunity in Florida. VocalSpace's fraud thereby caused injury to Lorenso in an amount within the jurisdictional limits of the Court.

## COUNT 6: Statutory Fraud

51.   Lorenso incorporates paragraphs 1-49 of the Counterclaims as though fully set forth

herein.

52.    VocalSpace is a joint stock company.

53.    Because the fraud by Dryburgh and VocalSpace, described in Count 5, involved stock in VocalSpace, VocalSpace has also committed statutory fraud.

## COUNT 7: Conversion

54.    Lorenso incorporates paragraphs 1-52 of the Counterclaims as though fully set forth herein.

55.    VocalSpace wrongfully exercised dominion over the Lorenso Code by entering into contracts with other entities purporting to transfer certain exclusive rights to use the Lorenso Code. VocalSpace has also represented that it is the sole owner of portions of Lorenso Code.

56.    VocalSpace has also shared use of the 2007 Lorenso Code beyond the scope of its non- exclusive license.

57.    Lorenso did not consent to VocalSpace's grant of exclusive rights to his intellectual property. Indeed, Lorenso granted VocalSpace only a non-exclusive license to certain portions of his intellectual property.

58.    VocalSpace's actions are a clear repudiation of Lorenso's rights, and VocalSpace has thus unlawfully appropriated Lorenso's intellectual property causing injury to Lorenso.

## COUNT 8: Unjust Enrichment

59.    Lorenso incorporates paragraphs 1-57 of the Counterclaims as though fully set forth herein.

60.    Lorenso owns the 2007 Lorenso Code to which VocalSpace has a non-exclusive license.

61.     VocalSpace has been unjustly enriched by representing to others that it is the sole owner of Lorenso's intellectual property.

62.     VocalSpace has been unjustly enriched by its failure to convey 10% ownership in VocalSpace to Lorenso.

63.     Lorenso seeks disgorgement of all amounts by which VocalSpace has been unjustly enriched.

### COUNT 9: Declaratory Judgment : Copyright Invalidity

64.     Lorenso incorporates paragraphs 1- 64 of the Counterclaims as though fully set forth herein.

65.     Lorenso petitions the Court for a declaration that Plaintiff's copyright is invalid. Specifically, the plaintiff does not own all the computer code that it has claimed in Copyright registration Txu001607950.     Parts of the code that makes up Copyright registration Txu001607950 is owned by Lorenso and plaintiff did not have the right to file a copyright on that code.    Other parts of the code that make up Copyright Txu001607950 was authored by others and plaintiff did not have the right to file a copyright on that code  As such, the copyright is invalid.

66.     Lorenso requests the Court declare:

a)    Lorenso created the 2006 Lorenso Code outside the scope of his employment with plaintiff from May 16, 2006 until August 2006;

b)    That the 2006 Lorenso Code is owned by Lorenso.

c)    That Copyright registration Txu001607950 contains 2006 Lorenso Code and Code authored by third parties.

d)    That Copyright registration Txu001607950 is invalid due to the fact that it

contains code that belongs to someone other than the plaintiff.

### COUNT 10: Request for Injunctive Relief : 2006 Lorenso Code

67.    Lorenso incorporates paragraphs 1- 66 of the Counterclaims as though fully set forth herein.

68.    VocalSpace has wrongfully exercised dominion over the 2006 Lorenso Code by entering into contracts with other entities purporting to transfer certain exclusive rights to use the 2006 Lorenso Code.   VocalSpace has also represented that it is the sole owner of the 2006 Lorenso Code.

69.    Lorenso did not consent to VocalSpace's grant of exclusive rights to his intellectual property, nor did he consent to VocalSpace misrepresenting itself as the owner of the 2006 Lorenso Code. VocalSpace's conduct is without right or entitlement.

70.    VocalSpace's past and continued assertion of itself as owner of the 2006 Lorenso Code threatens irreparable harm to the rights of Lorenso in the 2006 Lorenso Code.

71.    Lorenso has and will continue to be damaged and injured by VocalSpace's conduct by loss of and permanent injury to the value of the Lorenso Code, and Lorenso's ability to appropriate the 2006 Lorenso Code.

72.    Lorenso has no adequate remedy at law for the injuries just described. The injuries and losses are continuing. The property and rights involved are unique and irreplaceable, so that it will be impossible to accurately measure, in monetary terms, the damages caused by VocalSpace's conduct.

73.    For the reasons stated in this pleading, Lorenso requests that, after trial, this Court grant permanent injunctive relief enjoining VocalSpace, its principals, and agents as follows:

        a)    VocalSpace is enjoined from representing to others that it is the sole owner of

2006 Lorenso Code.

b)   VocalSpace is enjoined from representing to others that it has the power to grant an exclusive license for 2006 Lorenso code.

c)   VocalSpace, its owners, principals, and agents are enjoined from disclosing, outside of VocalSpace, the 2006 Lorenso code.

d)   VocalSpace must disclose any declaratory judgment issued in this case to its licensees, partners, and any other person or entity with whom VocalSpace has done business with that involved the 2006 Lorenso Code.

## IV. CONDITIONS PRECEDENT

74.   All conditions precedent to the causes of action asserted above have occurred or have been waived.

## V. REMEDIES

### Damages

75.   Lorenso incorporates paragraphs 1-63 of the Counterclaims as though fully set forth herein.

76.   As a result of Counterclaim Defendants' conduct, Counterclaim Plaintiff has suffered general and special damages, including lost profits, lost business opportunities, lost royalties and licensing fees, and loss of the value of 10% ownership in VocalSpace. Counterclaim Plaintiff requests an award of actual damages as determined by the Court and/or jury in this case.

### Exemplary Damages

77.   Lorenso incorporates paragraphs 1-65 of the Counterclaims as though fully set forth herein.

78.   Counterclaim Defendant's conduct was malicious and/or fraudulent and entitles Lorenso to exemplary damages to punish and deter such future violations of the law in an amount to be determined at trial.

## Constructive Trust

79.   Lorenso incorporates paragraphs 1-67 of the Counterclaims as though fully set forth herein.

80.   Lorenso has been injured and has been deprived of his promised 10% ownership interest in VocalSpace, because he relied on the promises and representations of VocalSpace and Dryburgh. In contrast, VocalSpace has been unjustly enriched by being allowed to retain Lorenso's promised 10% ownership interest in VocalSpace. A constructive trust on the 10% ownership interest in VocalSpace is the only remedy that will prevent the unjust enrichment of VocalSpace at Lorenso's expense.

81.   Lorenso has been injured and has been deprived of his rights in his intellectual property, because of the misappropriation by VocalSpace. In contrast, VocalSpace has been unjustly enriched by being allowed to misappropriate Lorenso's intellectual property. A constructive trust on the profits that VocalSpace made by misappropriating Lorenso's intellectual property is the only remedy that will prevent the unjust enrichment of VocalSpace at Lorenso's expense.

## Attorneys Fees

82.   Lorenso incorporates paragraphs 1-70 of the Counterclaims as though fully set forth herein.

83.   In addition to other damages or costs, Lorenso is entitled to an award of reasonable

and necessary attorneys fees under Tex. Bus. & Com. C. §27.01(e), the Tex. Civ. Prac. Rem. Code §§ 37.009 and 38.001. Lorenso requests reasonable and necessary attorney's fees for handling this matter through trial and, in the event of an appeal, through appeal of this action in an amount to be determined by the Court.

## VI. DEMAND FOR JURY TRIAL

Defendant most respectfully demands a trial by jury on all issues so triable.

## VII. PRAYERS FOR RELIEF

WHEREFORE, Defendant and Counterclaim Plaintiff Lorenso claims damages and pray that Judgment be entered in the favor and against Plaintiff and Counterclaim Defendant, and that Defendant and Counterclaim Plaintiff Lorenso be granted the following relief:

1.    VocalSpace take nothing by its claims;

2.    The Court enter a declaratory judgment declaring:

    a)  Lorenso owns code that he developed as an independent contractor with VocalSpace;

    b)  Lorenso owns the 2006 Lorenso code that he developed outside his employment with plaintiff from May 16, 2006 until August 2006.

    c)  VocalSpace is a non-exclusive licensee of 2007 code that Lorenso developed as an independent contractor with VocalSpace; and

    d)  PubClip does not infringe any copyright held by VocalSpace. VocalSpace has no right in code that LarkSpark and Lorenso use in its PubClip service. Lorenso has the right, without the permission of VocalSpace, to license, use, and sell world- wide the code used in the PubClip service;

3.   The Court issue an order enjoining VocalSpace, its principals, and agents as follows:

    a)   VocalSpace is enjoined from representing to others that it is the sole owner of code incorporating software developed by Lorenso either as an independent contractor or while outside the scope of this employment with plaintiff;

    b)   VocalSpace is enjoined from representing to others that it has the power to grant an exclusive license for code incorporating software developed by Lorenso as an independent contractor or while outside the scope of this employment with plaintiff;

    c)   VocalSpace, its owners, principals, and agents are enjoined from disclosing, outside of VocalSpace, the code incorporating software developed by Lorenso as an independent contractor or while outside the scope of this employment with plaintiff;

    d)   VocalSpace must disclose any declaratory judgment issued in this case to its licensees, partners, and any other person or entity with whom VocalSpace has disclosed code incorporating software developed by Lorenso as an independent contractor or while outside the scope of this employment with plaintiff;

4.   Lorenso be awarded judgment against VocalSpace for all of Lorenso's compensatory damages, general, special, and/or statutory, as described herein;

5.   Lorenso be awarded exemplary damages for VocalSpace's malicious and fraudulent conduct;

6.   Lorenso be awarded reasonable and necessary attorney's fees, together with conditional award of attorney's fees in the event of an appeal;

7.   Lorenso be awarded pre- and post- judgment interest at the highest rate allowed by law on sums awarded;

8.   A constructive trust, for the benefit of Lorenso, on the profits that VocalSpace made

by misappropriating Lorenso's intellectual property and on profits from VocalSpace's retention of the 10% ownership owed to Lorenso; and

9.      Lorenso and LarkSpark recover such other and further relief, at law or in equity, to which they may be entitled.

Respectfully submitted,

  /s/ Ernest P. Nycz
ERNEST P. NYCZ
  State Bar No. 24005547
  2300 McDermott, Suite 200-369
  Plano, Texas 75025
  Email:  ernie@nycz.com
  Phone (972) 377 8191
  Fax (214) 853 5905
  ATTORNEY FOR DEFENDANTS

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2010 a true and correct copy of the foregoing first amended answer and counterclaims has been electronically filed on the CM/ECF system, and sent via fax to:

Neal G. Massand  (Attorney for Plaintiff)
Fax : 214 462 6401

  /s/ Ernest P. Nycz
  ERNEST P. NYCZ