# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| VOCALSPACE, LLC. | § | |
| | § | |
| v. | § | Case No. 4:09cv350 |
| | § | (Judge Mazzant) |
| DANIEL D. LORENSO and | § | |
| LARKSPARK CORPORATION | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is VocalSpace's Motion for Sanctions for Defendants' Spoliation of Evidence (Dkt. #99). Having considered the motion, and the relevant pleadings, the Court finds that the motion should be denied at this time.

### Background

On March 18, 2009, prior to filing this current lawsuit, Plaintiff's counsel sent Defendants a document retention letter specifically informing Defendants of their duty to preserve evidence.[1] On July 23, 2009, Plaintiff filed this action asserting claims of copyright infringement,

---

[1] The letter provided as follows:

"[P]lease be advised that we expect Mr. Lorenso and LarkSpark to continue to honor their obligations to preserve any and all materials that relate to this dispute. We intend to refile the present lawsuit and want to insure that evidence is maintained for discovery. Please note that this obligation to preserve includes any and all materials, of whatever form, including, but not limited to, files, emails, communications, notes, drafts, documents and recordings, and other electronically stored materials (including materials stored in hard-drives and/or shared network servers), concerning or relating to this lawsuit and the events described in VS's current Petition including, without limitation, any and all materials relating to the creation of LarkSpark or PubClip, any of the products offered or in development by LarkSpark, or source code created by Mr. Lorenso, as well as to any other matter relevant to this dispute.

Please advise Mr. Lorenso not to delete, discard, destroy or alter any records of any nature whatsoever, including email and other electronically stored material, that may be relevant to the events described in the Petition. This preservation instruction encompasses any and all materials that Mr. Lorenso may have transferred to archives or to an assistant. If Mr. Lorenso has any materials related to the subject matter of this lawsuit outside of his work area – at home, in other office, on a laptop, palm pilot, or other storage medium, on a Blackberry or other communication device or anywhere else – Mr. Lorenso must preserve those materials, in addition to the materials outlined above. Mr. Lorenso should also take steps to freeze any policy maintained by LarkSpark or Mr. Lorenso that provides for the automatic destruction of materials upon the occurrence of a triggering event or the passage of time."

misappropriation of trade secrets, computer fraud and abuse, breach of fiduciary duty, fraud, and unfair competition. On October 7, 2009, the parties entered their Joint Discovery/Case Management Plan pursuant to the Court's Order (Dkt. #18). Over the course of months, Plaintiff served several discovery requests to Defendants. Plaintiff sought Defendants' source code, the version control system, backup and timestamp history. On July 15, 2010, Plaintiff filed a motion to compel production of source code.

On or about August 6, 2010, Defendants submitted to Plaintiff a computer disk containing 3.35 gigabytes of information which amounted to over one hundred and thirty thousand files of computer code for Defendants' website pubclip.com. Soon after the computer code was produced to Plaintiff, counsel for Plaintiff inquired as to where the "subversion" files for pubclip.com were located, and it was explained to Plaintiff that there were no "subversion" files for pubclip.com.

Defendant's website pubclip.com was started in late summer or fall of 2008. The computers used for the service were owned by Defendant LarkSpark and located in a third-party building. Seven computer servers were purchased to run pubclip.com. In the summer of 2010, Defendants had to reduce costs in order to survive given that the business of pubclip.com was losing money each month. In June 2010, Lorenzo rented a single server from a computer server hosting company called "the Planet," with offices throughout Texas, and was able to consolidate all seven computer servers that he was using to run pubclip.com onto one single server with the Planet. Lorenzo asserts that he personally inputted the commands to transfer every file containing the software code for pubclip.com from the seven servers that he owned to one server housed at the Planet.

Lorenzo asserts that all code used to run pubclip.com, including all databases, schemas,

database content, php web files, all configuration files, all binary files, all phone server files, were copied over from the seven servers owned by LarkSpark to one single server owned by the Planet. The only files not transferred over from the seven servers constituted the actual operating system that ran the servers, which included the "log files."

After the website pubclip.com was up and running on the new single server, Lorenzo prepared for sale the seven servers by deleting all the data that was stored on the seven servers and sold the seven servers for two thousand seven hundred dollars. This occurred in approximately August 2010.

During Lorenzo's deposition he admitted that he did not preserve the seven servers. Plaintiff cites to the following portions of Lorenzo's deposition in support of their position:

Q: Okay. Does LarkSpark have all of the corporate records that have been generated from its existence to the present time?
A: …--the servers which I sold. They don't exist anymore.
Q: Ok.
A: If you consider everything that was on them to be a corporate record, then the answer would be no, I have not preserved it all.
.....
Q: Okay. Are there are any other locations that I missed where there could be some LarkSpark –
A. Well –
Q: --records located?
A: -- the – the servers which LarkSpark used to control we're no longer in possession of. And all data has been destroyed on those devices.
.....
Q: And you ran DBAN on each of these seven servers to wipe them clean sometime in the June or July of 2010 time frame?
A: Maybe August.
Q: Okay. So just so we're clear, sometime in the June, July, August 2010 time frame, you – you ran the DBAN program on each of these seven servers to wipe them clean?
A: Yes.
---
Q: Okay. Well, I guess what I'm asking for, was – was any information on those seven

servers lost?
A: I'm sure there was data lost.
.....
Q: There – so it's fair to say that there was some data that was contained on those seven servers that is now gone forever?
A: Yes.
Q: Okay. What type of data?
A: Log files. You know, any events that occurred on the machine between, you know, the times that it was in operation.
.....
Q: Okay. Now what happened to the information stored on the servers? Is that something that you would wipe clean before you sold them?
A: Before I sell a computer, I run a software on it called DBAN. It's freely downloadable from the internet. And the purpose is to perform a series of steps on the machine to wipe it clean according to the Department of Justice standards.
.....
Q: All right. And you made no attempt to preserve any – other than the stuff that was transferred – what you've just told me was actually transferred to the new machines, you made no attempt in July or August of 2010 to preserve any information on those seven servers?
A: …I can't say yes, I would have made any attempts [to preserve information on the seven servers].
.....
Q: So it's technologically possible to image everything that's on those servers the last day they're in existence?
A: It may be possible. There may be somebody who is capable of doing that, yes.
.....
Q: Okay. All right. And just to – just to make clear at least with respect to those seven servers, the log files are now likely gone forever?
A: Yes.
A: However, that would be the case regardless.
Q: Why would – what – what – what do you mean by "that would be the case regardless?"
A: The servers that I use, the Linux servers automatically purge logs after perhaps a month of usage, anyway. They keep a log – maybe four logs at most for most services, one for each week…
---
Q: Okay. I guess my question is just after March 18th of 2009, you allowed these Linux servers to continue to automatically purge logs at whatever interval they were doing it at?
A: Yeah. I made no changes to the servers.
Q: Are you aware of any specific communication between your attorney and us, meaning my law firm, where we were given the opportunity to preserve any information on those

4

seven servers before they were wiped clean?
A: I'm not aware of any specific –
Q: Alright.
A: --conversations.
Q: Are you, as we sit here today, are you taking any steps to preserve any information on the lease servers at The Planet or are they continued – continuing to be purged on some sort of periodic basis?
A: Yeah. They still continue to operate as the other ones had.
Q: So that would mean, if I understood you correctly, the servers that you have at The Planet right now are still periodically purging information, correct?
A: I believe they probably are.

Defendants cite the Court to this additional testimony from Lorenzo's deposition:

Q. Okay. So all of the information that was stored on those seven servers has been wiped clean?
A. No.
Q. Okay. What happened to the information that was stored on the seven servers?
A. The web service, pubclip.com that used to run on those machines was transferred to The Planet.

On November 5, 2010, Plaintiff filed its Motion for Sanctions for Defendants' Spoliation of Evidence (Dkt. #99). On November 19, 2010, Defendants filed a response (Dkt. #117). On November 30, 2010, Plaintiff filed a reply (Dkt. #122). On December 9, 2010, Defendants filed a sur-reply (Dkt. #128).

**Legal Standard**

Federal Rule of Civil Procedure 37 authorizes sanctions for failure to comply with discovery orders. This court may bar the disobedient party from introducing evidence, or it may direct that certain facts shall be "taken to be established for purposes of the action." Fed. R. Civ. P. 37(b)(2)(A)(i). Rule 37 also permits this court to strike claims from the pleadings and even to "dismiss the action . . . or render a judgment by default against the disobedient party." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980); *accord* Fed. R. Civ. P. 37(b)(2)(A)(v)–(vi). "Rule

37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent." *Roadway Express*, 447 U.S. at 763–64.

Rule 37(b)(2) requires that any sanction be just and that the sanction must be related to the particular claim that was the subject of the discovery violations. *Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403, 413 (5th Cir. 2004) (citations omitted) (reviewing a sanction, the finding of alter ego liability, based upon party's behavior regarding discovery related to the alter ego issue). Further, the penalized party's discovery violation must be willful. *United States v. $49,000 Currency*, 330 F.3d 371, 376 (5th Cir. 2003). Finally, a severe sanction under Rule 37 is to be employed only where a lesser sanction would not substantially achieve the desired deterrent effect. *Id.*

In addition to Rule 37, this court also has inherent powers to enter sanctions. The inherent powers of this court are those which "are necessary to the exercise of all others." *Roadway Express*, 447 U.S. at 764 (citation omitted). The contempt sanction is the most prominent inherent power, "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court." *Id.* (citation omitted). When inherent powers are invoked, however, they must be exercised with "restraint and discretion." *Gonzalez v. Trinity Marine Group, Inc.*, 117 F.3d 894, 898 (5th Cir. 1997).

Thus, severe sanctions should be confined to instances of "bad faith or willful abuse of the judicial process." *Id.* In any event, when parties exploit the judicial process, a court may sanction conduct beyond the reach of other rules. *Natural Gas Pipeline v. Energy Gathering, Inc.*, 2 F.3d

1397, 1407 (5th Cir. 1993).

Spoliation is a longstanding doctrine which applies to "the destruction of evidence [or] [t]he destruction, or the significant and meaningful alteration of a document or instrument." *Andrade Garcia v. Columbia Med. Ctr. of Sherman*, 996 F. Supp. 605, 615 (E.D. Tex. 1998) (quoting *Brewer v. Dowling*, 862 S.W.2d 156, 158 n.2 (Tex. App.—Fort Worth 1993, writ denied)). "If a party with a duty to preserve evidence fails to do so and acts with culpability, a court may impose appropriate sanctions . . . . The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 890 (S.D. Tex. 2010) (quoting *Smith v. Am. Founders Fin. Corp.*, 365 B.R. 647, 681 (S.D. Tex. 2007)). The harmed party is entitled to "an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.'" *Condrey v. SunTrust Bank of Ga.*, 431 F.3d 191, 203 (5th Cir. 2005).

**Analysis**

Plaintiff seeks sanctions, including death penalty sanctions, for Defendants' destruction of relevant evidence from the seven servers. Plaintiff asserts that this evidence was destroyed after Defendants were well aware of their duty to preserve such evidence. Plaintiff further asserts that "[b]y destroying this evidence, Defendants have ensured that what may have been the most damning evidence against them is out of VocalSpace's reach, as it has been irretrievably destroyed."

Defendants assert that no source code of pubclip.com was lost in the transfer to the new server and that every relevant file that was used to run the website and every database field was copied over and running on the new server before the old servers were prepared for sale. Defendants

further assert that the discovery production to Plaintiff in August 2010 contained all source code for the website. Defendants do admit that Lorenzo wiped the hard drives of the seven servers to ready them for sale, but only after all pubclip.com source code was transferred to the new server at the Planet.

Plaintiff further argues that Defendants spoliated certain relevant evidence. In evaluating this argument, the first question is whether Defendants were under a duty to preserve relevant evidence. If so, the Court inquires into what evidence Defendants should have preserved. Finally, the Court inquires into whether the failure to produce the evidence was done in bad faith. The duty to preserve evidence in this case is not seriously questioned and Defendants were well aware, even before litigation started, that there was a duty to preserve relevant evidence. Defendants do not contest this issue. Thus, Defendants were under a duty to preserve evidence related to the source code.

Although the existence of a duty to preserve is not seriously challenged by Defendants, the more difficult question is whether and to what extent Defendants failed to preserve relevant, material evidence, and whether any such failure to preserve occurred in bad faith. Plaintiff contends and Defendants concede that the seven servers that hosted the original source code were wiped clean and sold. The parties dispute the importance of this fact. Plaintiff asserts that Defendants destroyed the best evidence to establish Plaintiff's copyright infringement claims because the evidence would have provided source code as it existed closest to the time it was alleged to have been misappropriated. Furthermore, the deleted information would have been relevant to how and when the source code

was changed. Defendants assert that no source code was destroyed and it was all transferred to the one server.

There is no dispute that Lorenzo wiped clean the seven servers that hosted the source code. What is disputed is whether the evidence was discarded under circumstances that were designed to obscure the truth—the predicate for a spoliation instruction or the other extreme sanctions Plaintiff seeks. Although the undersigned finds that the information was arguably relevant to Plaintiff's claims, and that Lorenzo therefore sold the servers under circumstances in which he had a duty to preserve them, the evidence falls short of persuading the Court that Lorenzo sold the servers under circumstances evidencing bad faith. It has not been shown that Lorenzo took these actions in bad faith knowing that relevant evidence was being destroyed. After considering all of the evidence submitted on this issue, and absent more concrete proof of bad faith, the undersigned is not persuaded that Lorenzo erased the seven servers in bad faith. However, although a finding of bad faith would not be proper based upon the record before the Court, the issue of bad faith is a contested issue by the parties. The question for the Court is how to handle a situation where Defendants should have preserved documents relevant to the litigation but where the Court cannot find bad faith. Thus, the Court finds that the introduction of evidence concerning Defendants' evidence preservation efforts and evidence destruction is appropriate. *See BCE Emergis Corp. v. Cmty. Health Solutions of Am., Inc.*, 148 F. App'x 204, 219 (5th Cir. 2001)("Moreover, the district court gave both parties the freedom to put forward evidence about document destruction; thus, the jury was free to consider BCE's contentions and punish Appellees accordingly."). The Court will allow the introduction of

evidence of the circumstances surrounding the destruction of the servers.  The admission of this evidence is consistent with Fifth Circuit law, and it would enable the Court the opportunity to further consider giving a spoliation instruction should the Court determine it is warranted.

It is therefore ORDERED that VocalSpace's Motion for Sanctions for Defendants' Spoliation of Evidence (Dkt. #99) is hereby DENIED at this time. However, the Court will allow the introduction of the evidence surrounding the seven servers.

**SIGNED this 16th day of December, 2010.**

_____
AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE