# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

VOCALSPACE, LLC        §
                                 §
v.                                 §        Case No. 4:09-CV-350
                                 §        Judge Mazzant
                                 §
DANIEL D. LORENSO and      §
LARKSPARK CORPORATION    §

## MEMORANDUM OPINION AND ORDER

Pending before the Court are VocalSpace's Motion for Partial Summary Judgment (Dkt. #180), Plaintiff's Motion to Strike the Declaration of Daniel Dante Lorenso (Dkt. #190), Defendants' Motion for Partial Summary Judgment for Copyright Invalidity (Dkt. #182), and Plaintiff's Motion to Strike the Declaration of Daniel Dante Lorenso (Dkt. #184).

## BACKGROUND

Plaintiff VocalSpace, LLC ("VocalSpace") designs web-based internet marketing and streaming media systems. VocalSpace employed Defendant Daniel D. Lorenso ("Lorenso") to help write source code for its products. The parties dispute when Lorenso's employment with VocalSpace began, but agree Lorenso's employment ended in August of 2006. At this time, Lorenso started his own company, Defendant LarkSpark Corporation ("LarkSpark"). Lorenso was an independent contractor of VocalSpace from January 2007 through June of 2008.

Vocalspace contends that Lorenso modified VocalSpace's firewall setting without authorization to allow an unknown computer to access VocalSpace's servers. VocalSpace also contends that Lorenso stole VocalSpace's source code and other trade secrets. VocalSpace further contends that Lorenso is now selling a competing product through LarkSpark that infringes VocalSpace's copyrighted code, and that he has used VocalSpace's trade secret information to help

him do so.

VocalSpace asserts claims of copyright infringement, violations of the Computer Fraud and Abuse Act ("CFAA") and the Texas Theft Liability Act, misappropriation of trade secrets, breach of fiduciary duty, constructive fraud, unfair competition, fraud and fraudulent concealment, and unjust enrichment, and is seeking an accounting of all VocalSpace property that was under Lorenso's control before his departure.

Defendants assert counterclaims for declaratory judgment, injunctive relief (2007 code), breach of contract, promissory estoppel, common law fraud and fraudulent concealment and negligent misrepresentation, statutory fraud, conversion, unjust enrichment, declaratory judgment (copyright invalidity), and injunctive relief (2006 Lorenso Code).

On January 31, 2011, VocalSpace filed VocalSpace's Motion for Partial Summary Judgment (Dkt. #180) seeking summary judgment on Defendants' counterclaims for declaratory judgment and injunctive relief.  On February 7, 2011, Defendants filed a Response (Dkt. #187).  On February 11, 2011, VocalSpace filed a Reply (Dkt. #193) and Plaintiff's Motion to Strike the Declaration of Daniel Lorenso (Dkt. #190).

On January 31, 2011, Defendants filed Defendants' Motion for Partial Summary Judgment for Copyright Invalidity (Dkt. #182).  On February 7, 2011, VocalSpace filed Plaintiff's Motion to Strike the Declaration of Daniel Dante Lorenso (Dkt. #184) and a Response (Dkt. #186).  On February 11, 2011, Defendants filed a Reply (Dkt. #192).

## MOTIONS TO STRIKE

As a preliminary matter, the Court addresses Plaintiff's Motion to Strike the Declaration of Daniel Dante Lorenso (Dkt. #190) and Plaintiff's Motion to Strike the Declaration of Daniel Dante

Lorenso (Dkt. #184). Generally, VocalSpace argues that Lorenso's affidavit is conclusory and makes legal conclusions. The Court will consider VocalSpace's arguments if the Court relies upon any information or evidence contained in Lorenso's affidavits in making its decision on the summary judgment motions. If the Court does not rely upon statements in the affidavits to which VocalSpace objects, those objections are denied as moot.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden is placed upon the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Stults v. Conoco, Inc.*, 76 F.3d 651, 655-56 (5th Cir. 1996). The movant's burden is only to point out the absence of evidence supporting the non-movant's case. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992). When the moving party has carried its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party bears the burden of presenting "specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the non-movant may not rest on mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial. *Webb v. Cardio-thoracic Surgery Assocs. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998). The Court must

consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

The Court now turns to the parties' motions for summary judgment. The parties' evidence and arguments with regard to copyright invalidity are nearly identical to the evidence and arguments regarding the counterclaims for declaratory and injunctive relief. Therefore, the Court will consider both motions for summary judgment simultaneously.[1]

Defendants seek summary judgment on the issue of copyright invalidity. MOTION-2 at 3. Defendants also seek a declaratory judgment from the Court stating VocalSpace's copyright is invalid. AMENDED ANSWER AND COUNTERCLAIMS at 30. Defendants argue that parts of the copyrighted code are owned by Lorenso and VocalSpace did not have the right to file a copyright on that code. *Id.* Defendants also argue VocalSpace's copyright contains code authored by third-parties and VocalSpace did not have the right to file a copyright on that code. *Id.* Defendants seek a declaratory judgment holding Lorenso created "the 2006 Lorenso Code" outside the scope of his employment with VocalSpace, that Lorenso owns the "2006 Lorenso Code," that the copyrighted code contains code the "2006 Lorenso Code" and code authored by third parties, and that VocalSpace's copyright is invalid because it contains code that does not belong to VocalSpace. *Id.* at 30-31. Defendants also seek injunctive relief enjoining VocalSpace from representing it is the sole owner of the "2006 Lorenso Code," representing it has the power to grant an exclusive license for the "2006 Lorenso Code," disclosing outside of VocalSpace the "2006 Lorenso Code," and

---

[1] The Court refers to VocalSpace's Motion for Partial Summary Judgment (Dkt. #180) as "Motion-1" and Defendants' Motion for Partial Summary Judgment for Copyright Invalidity (Dkt. #182) as "Motion-2."

4

VocalSpace must disclose any declaratory judgment from this case to any person or entity VocalSpace does business with that involves the "2006 Lorenso Code." *Id.* at 31-32.  VocalSpace seeks summary judgment on Defendants' requests for a declaratory judgment and injunctive relief.[2]

### *The Lorenso Code*

Defendants argue that VocalSpace does not have a valid copyright because VocalSpace copyrighted material that belongs to Lorenso.  Defendants contend VocalSpace included code in the copyrighted VocalSpace database code that belonged to Lorenso prior to working for VocalSpace ("Pre-2003 Code") and VocalSpace had no right to copyright the Pre-2003 Code.  MOTION-2 at 12-13.  Defendants also contend VocalSpace copyrighted code Lorenso created in 2006 ("2006 Lorenso Code"), which Defendants contend was only licensed to VocalSpace.  Motion-1 at RESPONSE-1 at 7-8; MOTION-2 at 13.

VocalSpace argues the Defendants have no right to the declaratory judgment or injunctive relief because "there is no material issue of fact regarding ownership of the 2006 Lorenso Code." MOTION-1 at 5.  VocalSpace argues summary judgment should be granted because Lorenso was acting within the scope of his employment when he inserted the 2006 Lorenso Code into the VocalSpace code and there is no written and signed agreement granting Lorenso any ownership right in the 2006 Lorenso Code.  *Id.*  Similarly, VocalSpace argues there is no written and signed agreement between the parties regarding the Pre-2003 Code.  RESPONSE-2 at 13-14.

The Copyright Act of 1976 states that copyright ownership of a work protected thereunder "vests initially in the author or authors of the work."  17 U.S.C. § 201(a).  However, under the "work

---

[2] Defendants' First Amended Answer and Amended Counterclaims refer to the counterclaims at issue here as "Declaratory Judgment: Copyright Invalidity" and "Request for Injunctive Relief: 2006 Lorenso Code."  These claims appear as counterclaims nine and ten.

made for hire" doctrine of the Copyright Act, "the employer or other person for whom the work was prepared is considered the author..., and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b); *see Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989); *see also Massingill v. Stream, LTD.*, No. 3:08-CV-0091, 2009 WL 3163549 *3 (N.D. Tex. Oct. 1, 2009). The Copyright Act provides that a work is a "work made for hire" when it is "a work prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101.[3]

VocalSpace argues that the evidence shows Lorenso was acting in the scope of his employment when he inserted the 2006 Lorenso Code into the VocalSpace code. MOTION-1 at 8. VocalSpace presents evidence that Lorenso acknowledged in a deposition that he was an employee of VocalSpace "from July of 2005 through August of 2006." *See* MOTION-1 EX. C at 5. VocalSpace also presents evidence that Lorenso stated he personally and purposely placed the code into the VocalSpace code base "between May 16th of 2006 and August of 2006." *Id*. at 13. VocalSpace also offers evidence that Lorenso stated some of the work he performed for VocalSpace was writing code. *Id*. at 33.

VocalSpace also argues that the evidence shows there was no written agreement signed by both parties that Lorenso was the owner of the code inserted in the VocalSpace code. MOTION-1 at 8-10. VocalSpace presents Lorenso's deposition testimony where Lorenso states that he sent an email to VocalSpace CEO Randy Dryburgh ("Dryburgh") on May 16, 2006. MOTION-1 EX. C at 3.

---

[3] Under the Copyright Code, a "work made for hire" is either a "work prepared by an employee within the scope of his or her employment" or a "specially ordered or commissioned" work. *See* 17 U.S.C. § 101. VocalSpace only argues that the 2006 Lorenso Code was prepared in the scope of Lorenso's employment, therefore the Court will not consider whether the work was a "specially ordered or commissioned" work.

This email states that Lorenso intends to "develop[ ] projects outside [his] employment," the projects will be owned exclusively by Lorenso, and if Lorenso includes his code in VocalSpace projects, VocalSpace may use the code, but Lorenso retains full rights to the code. RESPONSE-1 EX. B at 2. VocalSpace presents Lorenso's deposition testimony where he states he does not have a written response to the email and no written document showing VocalSpace consented to the agreement. MOTION EX.-1 C at 3-5. VocalSpace contends that this evidence shows no material issues of fact exist because neither an oral agreement nor a written agreement signed by only one party is sufficient to change the ownership of a work for hire from the employer to the employee. MOTION-1 at 9. VocalSpace also offers an email from Dryburgh stating he informed Lorenso that "I need to own the code you write for me, 100%." Therefore, VocalSpace contends the 2006 Lorenso Code was inserted into the VocalSpace code as a work for hire owned by VocalSpace. *Id*.

Defendants argue that Lorenso's May 16, 2006 email put VocalSpace on notice that "Lorenso was going to be starting his own code project and that he would own the rights to that code." RESPONSE-1 at 7-8. Defendants argue that "on May 16, 2006, Lorenso decided to begin development on his own blogging software" and "[a]t the time [VocalSpace] was not engaged in any blogging service." *Id*. at 8; *see* RESPONSE-1 EX. A at 4. Defendants argue that VocalSpace "implicitly and also explicitly accepted that Lorenso was developing his own code" and provide several emails showing discussion by VocalSpace partners regarding Lorenso's side projects. RESPONSE-1 at 9. Defendants argue that "[t]he fact that there is no 'signed' agreement between the parties just does not matter here as...a work made for hire is owned by the employer or other person for whom the work was prepared" and "Lorenso's blogging code was not prepared for [VocalSpace]." *Id*. at 11. Defendants state that "Lorenso was developing code for his own personal blogging project, and bits

and pieces of that code was placed into the VocalSpace code base." *Id*. Defendants argue that VocalSpace "only had a license to use [the] code, but not to own it." *Id*. at 12. Defendants argue that Lorenso has shown he owns the 2006 Lorenso Code and summary judgment should be denied. *Id*.

The Court agrees with VocalSpace that Lorenso was acting within the scope of his employment when he inserted the 2006 Lorenso Code into the VocalSpace code. According to the May 16, 2006 email from Lorenso to Dryburgh, Lorenso states he is developing blogging code. *See* REPLY-1 EX. B at 2. Lorenso goes on to state that in building his side projects, including the blogging code, there will be similarities "in nature (and code) to those I have already developed for VocalSpace projects" and there "may be overlapping needs between the 2 projects which could benefit from collaboration." *Id*. In the opinion of the Court, Lorenso's statements show that the code he planned to develop would be used for VocalSpace projects. The evidence also shows that Dryburgh told Lorenso that "[i]f I ask you to write a blog system, you can use the one you're writing, or rewrite it from scratch, but you need to guarantee me the code is unencumbered" and that "I need to own the code you write for me, 100%." REPLY-1 EX. C at 2. This evidence also shows that any code inserted into the VocalSpace code by Lorenso was intended to be VocalSpace property. Most importantly, according to Lorenso's deposition testimony, the 2006 Lorenso Code was created and inserted into the VocalSpace code during Lorenso's employment at VocalSpace. *See* MOTION-1 EX. C at 5 and 13. Similarly, Defendants state, "Lorenso used [the Pre-2003 Code]...to build [VocalSpace's] web services." MOTION-2 at 13. Defendants present no evidence showing Lorenso was not a VocalSpace employee when he placed the Pre-2003 Code into the VocalSpace code base. Therefore, the Court concludes Lorenso was acting within the scope of his employment when he

inserted the 2006 Lorenso Code and the Pre-2003 Code into the VocalSpace code.

The Court also agrees with VocalSpace that there is no signed and written agreement between the parties giving Lorenso ownership of the code. The May 16, 2006 email from Lorenso to Dryburgh is essentially an offer, which the evidence shows VocalSpace did not accept. Defendants argue at length that VocalSpace was aware that Lorenso was writing his own code. However, Defendants do not cite the Court to any authority, and the Court is aware of none, stating that an employer's awareness of their employee working on side projects negates the requirement under the Copyright Act that a "written instrument" is required to transfer the ownership of a "work made for hire." 17 U.S.C. 201(b). Similarly, Defendants present no evidence that there was a written agreement between the parties governing the Pre-2003 Code. Lorenso was hired to create certain types of code by VocalSpace, and instead of creating new code from scratch, he chose to use the Pre-2003 Code without obtaining a licensing agreement or any other type of written agreement retaining ownership in the Pre-2003 Code. Lorenso's choice to use the existing code without a written agreement retaining ownership rights is not different than being paid to create new code.

Further, the Court finds Defendants' argument unpersuasive that no written agreement was required because "Lorenso's blogging code was not prepared for [VocalSpace]." *See* RESPONSE-1 at 11. Lorenso's May 16, 2006 email states that he planned to develop code that would be beneficial for both his own projects and VocalSpace's projects and would include "nature (and code) [similar] to those I have already developed for VocalSpace." REPLY Ex. B at 2. These statements show that there was intention to "prepare" code for VocalSpace. Further, Defendants cite the Court to no authority, and the Court is aware of none, stating that an employee can avoid the written instrument requirement under the Copyright Code simply by stating that the work is intended for both his use

9

and the use of his employer. Therefore, the Court concludes that no material questions of fact exist with regard to the non-existence of a signed agreement.

Based upon the foregoing, the Court finds Lorenso was acting within the scope of his employment when he placed the Pre-2003 Code and the 2006 Lorenso Code into the VocalSpace database. The Court also finds there is no written agreement between the parties giving Lorenso ownership of the code he placed into the VocalSpace database. Therefore, the Court finds that the use of code written by Lorenso does not invalidate VocalSpace's copyright, and summary judgment is granted in the favor of VocalSpace.

### *Third-Party Code*

Defendants also argue VocalSpace's copyright is invalid because it contains code that "was authored by others and [VocalSpace] did not have the right to file a copyright on that code." AMENDED ANSWER AND COUNTERCLAIMS at 30. VocalSpace argues Defendants have no right to the declaratory judgment sought because "there is no unresolved issue of material fact regarding the presence of third-party code in the VocalSpace code." MOTION-1 at 10.

"'A certificate of registration, if timely obtained, is prima facie evidence both that a copyright is valid and that the registrant owns the copyright.'" *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010 WL 4366990 *20 (S.D. Tex. Oct. 27, 2010) (quoting *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004)); *see* 17 U.S.C. § 410(a) (a certificate of registration shall issue "[w]hen, after examination, the Register of Copyright determines that...the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met"). "A defendant may rebut the presumption of validity by showing errors in the registration." *Interplan Architects*, 2010 WL 4366990 at *20 (citing *Berg v. Symons*, 393

10

F.Supp.2d 525, 539 (S.D. Tex. 2005)). "'Only the knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitute[s] reason for holding the registration invalid and thus incapable of supporting an infringement action.'" *Wood v. BL Building Co.*, No. H-03-713, 2004 WL 5866352 *6 (S.D. Tex. June 22, 2004) (quoting *Eckes v. Card Prices Update*, 736 F.2d 859, 861-62 (2d Cir. 1984)). "Inadvertent or innocent omissions generally will not invalidate the copyright." *Id*. (citing *Fonar Corp. v. Domenick*, 105 F.3d 99, 105 (2d Cir. 1997)).

The Court concludes that Defendants have failed to rebut the presumption of validity that is attached to VocalSpace's copyright application that was accepted by the Copyright Office. *See* 17 U.S.C. § 410(c). Defendants argue that VocalSpace does not have a valid copyright because "there is code that [VocalSpace] [has] filed in their copyright which is in fact public domain." RESPONSE-1 at 12. Defendants allege that two specific public domain files were placed into the VocalSpace code by Dryburgh.[4] *See* RESPONSE-1 Ex. A at 7. Defendants also allege VocalSpace and Dryburgh were aware that Lorenso used third-party code and inserted it into the VocalSpace database. MOTION-2 at 10. The Court agrees with Defendants that VocalSpace cannot obtain a valid copyright in public domain or third-party code. However, VocalSpace has admitted the VocalSpace code contains some elements that were developed by third-parties and are publicly available. *See* MOTION-1 at 12; *see also* REPLY-1 at 6. In fact, VocalSpace expressly stated to the Copyright Office during the application process that VocalSpace did not claim a copyright on the entirety of the VocalSpace database.

---

[4] VocalSpace objects to Defendants' evidence as lacking foundation. MOTION TO STRIKE at 4. The Court overrules the objection. Lorenso's statements are based upon his own knowledge and Lorenso states he and Dryburgh talked about using public domain code. Foundation is proper.

The Copyright Office sets forth guidelines for valid copyright registration for computer programs. *See* Circular 61: Copyright Registration for Computer Programs, *available at* http://www.copyright.gov/circs/circ61.pdf. Under the heading "Limitation of copyright claim," in response to the "Material excluded from this claim" blank, VocalSpace indicated "computer program." *See* Motion-1 Ex. A-3 at 3. The instructions from the Copyright Office do not require a list of each item of third-party code and state, "[c]omplete this part of the application if the computer program contains a substantial amount of previously published, registered, or public domain material..." *See* Circular 61 at 2. Defendants cite the Court to the Copyright Office's website where instructions state that "[y]ou ***may*** use the Other space to specifically identify a preexisting work or to give a more detailed description of the material excluded from this claim. Reply-2 Ex. B at 2 (emphasis added). VocalSpace completed this section, which indicates their computer program did contain third-party or public domain material.

The Court also disagrees with Defendants' contention that marking "computer program" for "Material excluded" and "New material" on the copyright registration is only appropriate if the program is an "updated version." *See* Reply-2 at 2-3. The website cited by Defendants does not state marking "computer program" is only appropriate when the program is a revised version of an earlier copyrighted work. *See* Reply-2 Ex. B at 3. The example cited by Defendants is the only example listed for computer programs. *Id.* There is no evidence or authority supplied by Defendants, or that is known to the Court, stating that marking a copyright application in this manner is only appropriate when updating an earlier copyrighted work. Following Defendants' logic, the examples listed on this website are the only acceptable entries for biographies, phone books, collections of recipes, college text books, anthologies of poetry, and so on. *See Id.* at 3-5. The

website only lists examples and is not an exclusive list.  Therefore, the Court concludes there is no evidence that  VocalSpace failed to comply with the requirements outlined by the Copyright Office and there is no evidence that VocalSpace was attempting to obtain a copyright in the third-party code contained in the VocalSpace codebase.

Even if VocalSpace's disclosures to the Copyright Office during the application process were somehow insufficient, a failure to disclose information to the Copyright Office only invalidates the copyright if the applicant knowingly failed to disclose.  *See Wood*, 2004 WL 5866352 at *6.  There is no evidence that VocalSpace knowingly failed to disclose that third-party and/or public domain code was included in the copyright application.  As discussed above, the evidence shows that VocalSpace acknowledged the VocalSpace code contained third-party and/or public domain code and disclosed this fact to the Copyright Office on the application.  Defendants point to deposition testimony where Dryburgh states, "[m]y understanding is that all of the code that's contained in the copyright was authored under the direction or was developed under the direction of VocalSpace." RESPONSE-1 Ex. M at 7.  The Court agrees with VocalSpace that the copyright application speaks for itself and the application acknowledges VocalSpace used third-party and/or public domain code.[5] Dryburgh's opinion of what is copyrighted and who owns that material has no bearing on what information was provided to the Copyright Office.  In fact, Dryburgh's testimony tends to show that VocalSpace did not knowingly conceal or fail to disclose the presence of the third-party code.  Therefore, the Court concludes there is no evidence VocalSpace knowingly failed to make

---

[5] The Court notes that Dryburgh's testimony that "all of the code that's contained in the copyright was authored under the direction or was developed under the direction of VocalSpace" does not state VocalSpace copyrighted third-party or public domain code.  Dryburgh's testimony states that the code that is covered by the copyright belonged to VocalSpace.  The testimony is not that all code submitted in the application belonged to VocalSpace.  Therefore, the Court is not persuaded by Defendants' argument that Dryburgh's testimony shows VocalSpace claimed ownership of all the materials submitted to the Copyright Office.  *See* RESPONE at 13-14.

13

disclosures to the copyright office.

Based upon the foregoing, the Court concludes that Defendants have not rebutted the presumption that VocalSpace's copyright is invalid based upon the disclosures made to the Copyright Office.  Therefore, the Court finds summary judgment should be granted in favor of VocalSpace.

*Conclusion*

Based upon the Court's findings discussed above, the Court concludes there are  no material questions of fact with regard to the ownership of the Pre-2003 Code and 2006 Lorenso Code and no material questions of fact exist with regard to VocalSpace's disclosures to the copyright office. Therefore, no material questions of fact exist with regard to the validity of VocalSpace's copyright. It is hereby **ORDERED** that VocalSpace's Motion for Partial Summary Judgment (Dkt. #180) is **GRANTED** and Defendants' Motion for Partial Summary Judgment for Copyright Invalidity (Dkt. #182) is **DENIED**.  Defendants' counterclaims for "Declaratory Judgment: Copyright Invalidity" and "Request for Injunctive Relief: 2006 Lorenso Code" are dismissed.

**SIGNED this 7th day of March, 2011.**

AMOS L. MAZZANT
UNITED STATES MAGISTRATE JUDGE